**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| In the Matter of I.D., N.D., and C.D. ) | | |
| ) | | |
| CASIMIRO JOSE CANHA CAVACO DIAS ) | | |
| ) | | |
| Petitioner, ) | CIVIL ACTION | |
| ) | | |
| v. ) | NO. _____ _____ | |
| ) | | |
| RULA NABIL KHOURY CAVACO DIAS ) | | |
| MICHEL NABIL KHOURY ) | | |
| NABIL KHOURY ) | | |
| MAGGIE NABIL KHOURY ) | | |
| ) | | |
| Respondents. ) | | |
| ) | | |

**VERIFIED PETITION FOR RETURN OF THE CHILDREN TO ARMENIA**

**The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980; International Child Abduction Remedies Act, 22 U.S.C. 9001 *et seq*.**

### I. Preamble

1. This petition is brought by Casimiro Jose Canha Cavaco Dias ("Mr. Dias" or "Petitioner"), to secure the return of his nine-year-old daughter, I.D., eight-year-old daughter, N.D., and six-year-old son, C.D. (the "Children"), who were, without Petitioner's consent or acquiescence, wrongfully removed and retained from Armenia in the Northern District of Georgia by the Children's mother, Respondent Rula Nabil Khoury Cavaco Dias ("Ms. Dias"), Respondent Michel Nabil Khoury ("Mr. Michel Khoury"), Respondent Nabil Khoury ("Mr. Nabil Khoury"), and/or Maggie Nabil Khoury ("Ms. Khoury") (collectively "Respondents").

2. This petition is filed pursuant to the Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980[1] (hereinafter the "Hague Convention" or "Convention") and the International Child Abduction Remedies Act (hereinafter "ICARA") 22 U.S.C. § 9001 *et seq*. The Convention came into effect in the United States on July 1, 1988 and entered into force between the United States and Armenia on March 1, 2018. A copy of the Hague Convention and ICARA are annexed hereto as **Exhibit A** and **B,** respectively.

3. The Convention is a treaty between sovereign states, and theretofore entitled to the same weight and deference as the Constitution of the United States.

4. The objects of the Convention are as follows: (1) to secure the immediate return of children wrongfully removed to or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States. Convention, art. 1.

5. The Hague Convention applies to cases in which a parent or a person wrongfully removes or retains a child, who is under the age of 16 years, from the child's "habitual residence" in breach of a parent's custodial rights, which were being exercised at the time of the wrongful removal or retention of the child. Hague Convention, Art. 3.

6. Petitioner respectfully requests that pursuant to Articles 1(a) and 12 of the Convention, this Court order that the subject Children be returned to Armenia, the Children's habitual residence.

## II. Jurisdiction and Venue

7. This Court has jurisdiction pursuant to 22 U.S.C. § 9003(a) (jurisdiction under the Hague Convention) and 28 U.S.C. § 1331 (federal question jurisdiction).

---

[1] T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10493 (1986), a copy of which is attached hereto as Exhibit A.

8.     Venue is proper pursuant to 22 U.S.C. § 9003 and 28 U.S.C. § 1391(b) because, upon information and belief, the Children and Respondents are residing at 1075 Peachtree Walk Ne, Unit A414, Atlanta, GA 30309 or 1080 W Peachtree Street NW, Unit 808, Atlanta, GA 30309 in the Northern District of Georgia; and because this case involves the removal and/or retention of children under the age of 16 from their habitual residence of Armenia to the United States of America.

### III.  History of the Case and Status of Petitioner and Child

9.     Mr. Dias and Ms. Dias are the parents of the subject Children.

10.    Mr. Dias and Ms. Dias were married in Lisbon, Portugal on or about August 17, 2013.

11.    I.D. was born in October 2014 in Denmark.

12.    N.D. was born in April 2016 in Portugal.

13.    C.D. was born in October 2017 in Barbados.

14.    The parties are both employees of the World Health Organization ("WHO"). Mr. Dias is on the staff of the WHO and is relocated approximately every five years to different locations, while Ms. Dias is a consultant who is able to work remotely. As a result of Mr. Dias' employment, the parties and the Children have moved around to different countries. They lived in Denmark from January 1, 2009 to December 31, 2014. Then they lived in Angola from January 1, 2015 to June 15, 2016. Then they lived in Barbados from June 16, 2016 to December 31, 2018. Then they lived in Jamaica from January 1, 2019 to December 27, 2023. Lastly, Mr. Dias was offered a position in Armenia and the family moved there on December 27, 2023.

15.    The parties spent the majority of their holidays in Portugal, where Petitioner is a citizen and where he owns two homes. They typically spent approximately two months per year in Portugal. The family never resided in the United States and have only visited infrequently and for short durations.

16. Mr. Dias' assignment to Armenia was scheduled to last from 2023 to 2028. The parties discussed the move to Armenia prior to accepting the position and were excited at the prospect of being closer to Europe and the vacation home in Portugal.

17. The parties' three Children were enrolled at the International School QSI in Yerevan, Armenia. They had a home with a garden and would walk to school. The Children made friends almost immediately in the community and were engaged in social activities such as going to birthday parties for their friends. The Children participated in extracurricular activities, including Track & Field, Soccer Club, Gymnastics Club, Robotics, Creative Lab, Crafts Club and others. The parties and Children had health insurance in Armenia and received medical care, including physiotherapy and dental care.

18. The family rented a home with a lease of one year, renewal up to five years, the length of time they agreed to live in Armenia before another eventual move. The family moved all their belongings in Jamaica to Armenia where all of the Children's toys and clothes are located. Mr. Dias' job provides him with health insurance for the family, child allowance, and a school allowance, which contributes partially to the cost of the Children's school tuition.

19. Mr. Dias has diplomatic status and everyone in the family has diplomatic cards and Armenian residency cards.

20. After living in Armenia for approximately four months, on or around April 20, 2024, Petitioner became aware of conversations between Ms. Dias and Mr. Michel Khoury, her brother, planning an abduction of the Children to the United States. After discovering this plan, on or around April 21, 2024, Petitioner informed Ms. Dias of his plan to separate and end their relationship. Shortly afterwards, initially unbeknownst to Mr. Dias, Ms. Dias filed a police report of domestic violence against Petitioner based on abuse she allegedly suffered a few days earlier when the family was playing

soccer and jumping on the trampoline. To be clear, Petitioner, at no time, abused Ms. Dias. Having spent the last days together with Ms. Dias with no issue until he discovered her plan to abduct the Children, Mr. Dias was caught surprised by any allegation of abuse and believes it was a reaction to the end of their relationship and part of Ms. Dias' plan to abduct the Children.

21. On the night of April 21, 2024, after returning from a child's birthday party at a park and discovering that Ms. Dias was not at home, Petitioner called her phone. He ended up speaking with the police who informed him that Ms. Dias was in the hospital due to the alleged injuries she had sustained a few days earlier.

22. For the following few days, Petitioner cared for the Children and took them to school as normal while Ms. Dias stayed away from the marital home. On April 25, 2024, after dropping the Children off at school, Petitioner was informed by the Children's school that Ms. Dias had picked up the Children early and would be keeping them for a few days.

23. Upon information and belief, Ms. Dias then went to the airport and took the Children to the United States at around April 26, 2024 at 2am with the assistance of Mr. Michel Khoury. Since then, Petitioner has had no information about the Children or their safety and has had no contact with them.

24. Petitioner was able to confirm that Ms. Dias and the Children are in Georgia as a result of the assistance of the United States Department of State and private investigators. Upon information and belief, Ms. Dias and the Children are either living at Mr. Michel Khoury's home at 1075 Peachtree Walk Ne, Unit A414, Atlanta, GA 30309 or at Mr. Nabil Khoury's and Ms. Khoury's (Ms. Dias' parents) home at 1080 W Peachtree Street NW, Unit 808, Atlanta, GA 30309

25. Petitioner never consented to the Children traveling to or residing permanently in the United States. The parents never shared an intent to abandon Armenia, where the Children have their home.

26. The Children are acclimated, involved, and integrated in all aspects of daily life in Armenia.

27. Petitioner has rights of custody to the Children in Armenia as fully set forth below, and he had those same rights of custody on the date Respondents wrongfully removed and/or retained the Children from their habitual residence of Armenia in the United States beginning on or about April 26, 2024.

## IV. Wrongful Removal and Retention of Children by Respondent: Claim for Relief Under the Hague Convention

28. A removal or retention of a child is wrongful under Article 3 of the Hague Convention if: (a) the removal or retention is in breach of custody rights attributed to a person, institution, or other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and (b) at the time of the removal or retention, those custody rights were actually exercised, or would have been exercised, but for the removal or retention of the child. *See* Hague Convention, Arts. 3 and 5.

29. The Children's country of "habitual residence," as defined in Article 3 of the Hague Convention is Armenia, which is where the Children habitually resided prior to their wrongful removal and retention to the United States on or about April 26, 2024.

30. Petitioner has rights of custody of the Children within the meaning of Articles 3 and 5 of the Convention.

31. "Custody rights" under the Hague Convention are defined to include "rights relating to the care of the person of the child, and in particular, the right to determine the child's place of residence." See Hague Convention, Art. 5(a).

32. "Custody rights" "may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State." *See* Hague Convention, Art. 3.

33. At the time of Respondents' wrongful removal and/or retention of the Children from Armenia in the United States, the Petitioner had and continues to have rights of custody under Armenian law, such that the removal and/or retention of the Children from Armenia is in violation of Armenian law and is a wrongful removal within the meaning of Articles 3 and 5 of the Hague Convention.

34. To determine whether the removal and/or retention of the Children from Armenia in the United Sates constitutes wrongful retention, the inquiry centers on the existence of a right of custody under Armenian law.

35. Pursuant to Armenian law, specifically the Family Code of the Republic of Armenia[2] (hereinafter the "Family Code") Article 35, paternity of a child is determined, inter alia, by the state registration of a marriage if a person is married to the child's mother. It stems from the above-cited regulation that Family Code, namely Article 35 § 2, recognizes Mr. Dias as Children's father due to his marriage to the Children's mother – Ms. Dias. Moreover, his paternity is not contested by another party. Besides, the Ministry of Foreign Affairs of the Republic of Armenia issued International Organization Employee/ Expert IDs to the Children as Mr. Dias's daughters and son.

---

[2] A copy of the relevant provisions of the Armenian Family Code are attached hereto as Exhibit C.

36. Mr. Dias has joint parental rights and responsibilities towards the Children along with his wife. Particularly, Article 49 of the Family Code stipulates that the parents have equal rights and bear equal responsibilities toward their children. Article 49 entails the absolute equality of the rights and responsibilities of both parents. The domestic legislation provides no restriction on or preference of the rights and responsibilities on the part of one parent towards a child, except for cases when the rights of a parent(s) are restricted as provided for by law.

37. The equality of the rights and responsibilities supposes the parent's mutual decision-making in any question affecting the children, including their place of residence. It follows from the aforementioned that given the existence of the parents' equal rights under Armenian law, neither parent can take a child outside the country and transfer that child to another location for permanent residence (in the instant case, to the United States of America) without other parent's consent.

38. Article 53 of the Family Code provides that both parents, with equal rights and responsibilities, should resolve all disagreements about their children's upbringing through mutual agreement, based on the children's interests. If the parents cannot agree, they may resort to the help of judicial and non-judicial bodies to seek a resolution of the existing disputes (court or custody and guardianship body).

39. There is no separate concept of a custody right under Armenian law. On the contrary both parents enjoy a "parental" right as long as they are not deprived of them by a court order.

40. In the present case, Mr. Dias has not been deprived of his parental rights towards the Children. There is no existing agreement having legal effect or judicial decision that in any way alters the parties' custody rights. Consequently, he holds a custody right.

41. In conclusion, there can be no doubt that removing and/or retaining the Children to and in the United States by Respondents without Petitioner's consent constitutes wrongful removal.

42. Notice is given in this pleading that the Petitioner is relying upon foreign law. Fed.R.Civ.P. 44.1.

43. At the time of the Respondents' wrongful removal of the Children, the Petitioner was actually exercising custody rights within the meaning of Articles Three and Five of the Convention, in that he is the father of the Children and has exercised custody rights over the Children since they were born.

44. The Children were born in 2014, 2016, and 2017, respectively, and will be 16 years of age in 2030, 2032, and 2033, respectively. At the time immediately before the wrongful removal and/or retention of the Children from Armenia in the United States, the Children habitually resided in Armenia within the meaning of Article 3 of the Convention.

45. During the last five years, the parties and the Children resided in Jamaica (from January 1, 2019 to December 27, 2023) and Armenia (December 27, 2023 to the present).

46. Petitioner does not know of any person or institution not a party to the proceedings who has physical custody of the Children or claims to have rights of parental responsibilities or legal custody or physical custody of, or visitation or parenting time with, the Children.

47. Following the Respondents' wrongful removal and/or retention of the Children to and in the United States, the Children are being illegally held in custody, confinement and/or restraint by the Respondent in the Northern District of Georgia. Upon information and belief, Respondent is keeping the Child at 1075 Peachtree Walk Ne, Unit A414, Atlanta, GA 30309 or 1080 W Peachtree Street NW, Unit 808, Atlanta, GA 30309.

48. The Children are now ages 9, 8, and 6, respectively. The Hague Convention applies to children under 16 years of age, and thus applies to these Children. Petitioner has never consented or

acquiesced to Respondents' wrongful removal and/or retention of the Children to and in the United States.

49. Petitioner invokes Article 18 of the Convention, which grants this Court plenary power to order the Children's return at any time.

50. In accordance with the Article 18 equitable return factors set forth in Justice Alito's concurring opinion in *Lozano v. Montoya Alvarez*, 134 S.Ct. 1224 (2014), Petitioner requests that this Court exercise its equitable discretion to return the Children to Armenia under Article 18, even if the Respondents establish one of the Convention's five narrow discretionary exceptions to return under the Convention.

51. The Children have an interest in returning to Armenia, their country of habitual residence. Petitioner has an interest in exercising his Armenian rights of custody in Armenia.

52. The governments of Armenia and the United States both have an interest in discouraging inequitable conduct and deterring international child abductions.

## V.  Provisional Remedies

53. Petitioner requests that the Court issue a Show Cause Order forthwith, ordering the appearance of Respondents before this Court on the first available date on the Court's calendar.

54. Petitioner further requests that this Court issue a Scheduling Order setting an expedited hearing on the Verified Petition for Return of the Children to Armenia.

## VI. Attorney's Fees and Costs

55. Petitioner has incurred attorneys' fees and costs resulting from the Respondents' wrongful removal and/or retention of the Children.

56. Petitioner respectfully requests that this Court award him all costs and fees, including transportation costs, incurred to date as required by 22 U.S.C. § 9007.

57. Petitioner will submit a copy of all expenditures as soon as practicable and possible, and will amend these costs from time to time, according to proof and in light of further expenditures resulting from Respondents' wrongful removal and/or retention of the Children.

### VII. Notice of Hearing

58. Pursuant to 22 U.S.C. § 9003(c), Respondents will be given notice of any hearing pursuant to Georgia and any other applicable law.

### VIII. Relief Requested

**WHERETOFORE**, it is respectfully requested that the following relief be granted:

a. Set an expedited hearing on the petition and communicate that hearing date and time to petitioner so that petitioner may provide notice of these proceedings and the hearing pursuant to ICARA Section 9003(c);

b. Issue an order following the hearing, directing that the Children shall be returned to their Habitual Residence of Armenia, pursuant to Article 12 of the Convention;

c. Issue an order directing Respondent to pay Petitioner for all costs and fees incurred to date by reason of the Children's wrongful removal pursuant to 22 U.S.C. § 9007; and

d. Any such further relief as justice and its cause may require.

Dated:  June 24, 2024

Respectfully submitted,

*/s/ William T. Davis*
William T. Davis
Georgia Bar No. 868025
NAGGIAR & SARIF
One Ameris Center
3490 Piedmont Road NE, Suite 1450
Atlanta, Georgia 30305
Tel: (404) 816-2004
Fax: (404) 816-2005
will@nsfamilylawfirm.com

Richard Min (*pro hac vice* forthcoming)
GREEN KAMINER MIN & ROCKMORE LLP
420 Lexington Avenue, Suite 2821

New York, New York 10170
Telephone: (212) 681-6400
Fax: (212) 681-6999
rmin@gkmrlaw.com

*Attorneys for Petitioner*
*Casimiro Jose Canha Cavaco Dias*

## **VERIFICATION**

I, Casimiro Jose Canha Cavaco Dias, solemnly declare and affirm under the penalties of perjury and the laws of the United States of America, that I am the Petitioner in the within action and have read the foregoing Petition and know the contents of the foregoing Petition are true, to the best of my knowledge, except as to those matters alleged upon information and belief.

Dated: June 24, 2024

_____
Casimiro Jose Canha Cavaco Dias