*Unofficial translation*

Adoption: 09.11.2004
Signature: 08.12.2004
Entry into force: 19.04.2005

THE LAW OF THE REPUBLIC OF ARMENIA


**FAMILY CODE**


PART I


GENERAL PROVISIONS


CHAPTER 1


FAMILY LEGISLATION


ARTICLE 1. MAJOR PRINCIPLES OF FAMILY LEGISLATION

1. Family, maternity, paternity and childhood are under the safeguard and protection of the society and the state in the Republic of Armenia.

The state guarantees the primary protection of children's rights.

The family legislation proceeds from the requirement of family strengthening, building of family relations on the basis of mutual love and respect, the mutual assistance and responsibility of all the family members, inadmission of self-willed interference into the family's issues, provision of free realization of family members' rights, necessity of judicial protection of these rights.

2. Only the marriage registered in Civic Status Registration Department is recognized lawful.

3. Men and women enjoy equal rights at the moment of marriage conclusion, during the marriage and in case of marriage cancellation.

4. Legal regulation of family relations is realized in accordance with the principles of free will of a man's and woman's marital union, the equality of spouses' rights in family, solution of family issues by mutual consent, taking care about mutual well-being, primary provision of the rights and best interests of minor and incapable family members.

5. Any restriction of citizens' rights on the basis of social status, race, nationality, language or religion during marriage conclusion and in family relations is prohibited.

The rights of the citizens during marriage conclusion and in family relations may be restricted only by law and to the extent of necessary protection of persons' reputation and dignity, as well as health, freedom, rights and lawful interests of family members and other persons.

## ARTICLE 2. RELATIONS REGULATED BY FAMILY LEGISLATION

The family legislation establishes the conditions and procedure of the marriage, marriage cancellation and recognition invalid, regulates personal non-property and property relations between family members: spouses, parents and children (adopters and adopted), and in cases and within the framework stipulated by family legislation, between other relatives and persons, as well as establishes the alternatives and procedure of family placement of children deprived of parental care.

## ARTICLE 3. THE LEGISLATION OF THE REPUBLIC OF ARMENIA REGULATING FAMILY RELATIONS

1. Family relations in the Republic of Armenia are regulated by the Constitution of the Republic of Armenia, the given Code, The Civic Code of the Republic of Armenia, other laws, international treaties of the Republic of Armenia, as well as other legal acts.
2. If the international treaties of the Republic of Armenia stipulate different norms than the ones established by family legislation, the norms of international treaties are implemented.

## ARTICLE 4. APPLICATION OF CIVIC LEGISLATION WITH REGARD TO THE FAMILY RELATIONS

The civic legislation is applicable with regard to property and personal non-property relations between the family members stipulated by Article 2 of the given Code and not regulated by family legislation, to the extent that it does not contradict to the essence of family relations.

## ARTICLE 5. APPLICATION OF FAMILY LEGISLATION AND CIVIC LEGISLATION WITH REGARD TO THE FAMILY RELATIONS BY ANALOGY

If the relations between family members are not regulated by family legislation or the parties' consent, and there are no norms directly regulating the mentioned relations, the norms of family and/or civic law regulating similar relations (if they do not contradict their essence) are applicable with regard to such relations (law analogy). In case of impossibility of law analogy application, the rights and responsibilities of family members are established proceeding from the principles of family or civic rights (rights analogy).

CHAPTER 2


REALIZATION AND PROTECTION OF FAMILY RIGHTS


ARTICLE 6. IMPLEMENTATION OF FAMILY RIGHTS AND REALIZATION OF FAMILY RESPONSIBILITIES

1. Citizens implement the rights stipulated by family relations and granted by legislation (family rights and the protection of these rights) at their discretion if nothing else is stipulated by the given Code.
2. The implementation of rights and realization of responsibilities of the family members should not violate the rights, freedoms and lawful interests of other family members and other persons.
3. The family rights are protected by the law, except for the cases when they are implemented contrary to the meaning of these rights.


ARTICLE 7. THE PROTECTION OF THE RIGHTS OF FAMILY MEMBERS

The protection of the rights of family members is realized by judicial procedure, and in cases and procedure established by the given Code in accordance with the state organs or the departments of custody and guardianship.


ARTICLE 8. APPLICATION OF SUIT RETROACTIVITY IN FAMILY RELATIONS

Suit retroactivity is not applied with regard to the requirements proceeding from family relations, except for the cases stipulated by the given Code. In these cases suit retroactivity is applied in accordance with the procedure established by the Civic Code.


PART II


MARRIAGE CONCLUSION AND CANCELLATION


CHAPTER 3

THE CONDITIONS AND PROCEDURE OF MARRIAGE CONCLUSION
AND CANCELLATION

### ARTICLE 9. THE PROCEDURE OF MARRIAGE CONCLUSION

1. The marriage is concluded in the state Civic Status Registration Departments in accordance with the procedure established by the RA Legislation with obligatory presence of the persons who conclude marriage.

2. The rights and obligations of the spouses emerge after the state registration of marriage in the Civic Status Registration Departments.

### ARTICLE 10. CONDITIONS OF MARRIAGE CONCLUSION

1. The mutual voluntary consent of a man and a woman and the marital age of them (17 for women and 18 for men) are necessary for marriage conclusion.

2. The conclusion of marriage under the circumstances stipulated by Article 11 of the given Code is prohibited.

### ARTICLE 11. BARRIER CONDITIONS FOR MARRIAGE CONCLUSION

Marriage conclusion is prohibited:

a) if at least one of the persons is in a marriage, registered by the procedure established by the law;

b) between close relatives (direct relatives: parents and children, grandparents and grandchildren, as well as siblings and siblings with common mother or common father, aunts, uncles and cousins);

c) between the adopters and adopted;

d) between the persons, at least one of who is recognized incapable by court.

### ARTICLE 12. MEDICAL EXAMINATION OF THE PERSONS CONCLUDING MARRIAGE

1. The medical examination of the persons concluding marriage as well as the consultation on medical-genetic issues and family planning is conducted by medical institutions with the consent of the persons concluding marriage within the framework of the annual health care programs guaranteed by the state.

2. The results of the medical examination of a person concluding marriage are considered medical secret. A person who the examined person is going to conclude marriage with may be informed about the results of the examination with his/her consent.

3. If the married person at the moment of state registration of the marriage in the Civic Status Registration Department concealed the fact of sex virus (including HIV/AIDS), as well as the fact of drag addiction and toxic addiction from his/her spouse, the spouse has the right to apply to court for the recognition of the marriage invalid.

### CHAPTER 4

MARRIAGE CANCELLATION


## ARTICLE 13. THE GROUNDS FOR MARRIAGE CANCELLATION

1. The marriage is cancelled as a result of the death of one of the spouses or his/her recognition dead by court.

2. The marriage may be cancelled by divorce on the basis of the application of the spouses or one of the spouses, as well as on the basis of the application of the guardian of the spouse recognized incapable by court.

3. Without the consent of the wife the husband is forbidden to submit application for divorce during the pregnancy of the wife.


## ARTICLE 14. THE PROCEDURE OF DIVORCE

The divorce is realized in the Civic Status Registration Departments in cases stipulated by the given Code and by the procedure established by the Legislation, as well as by judicial procedure.


## ARTICLE 15. DIVORCE IN THE CIVIC STATUS REGISTRATION DEPARTMENTS

1. In case of a mutual consent of the spouses to divorce their divorce is realized in the Civic Status Registration Departments.

2. On the basis of the application from one of the spouses the divorce is realized in the Civic Status Registration Department if the second spouse:

a) is recognized missing by court;

b) is recognized incapable by court;

c) is convicted to imprisonment for the period of no less then 3 years.

3. The disputes on the share of the common property of the spouses, on meeting the living expenses of an incapable vulnerable spouse, as well as the disputes on children are considered by judicial procedure irrespective of the marriage cancellation in the Civic Status Registration Department in accordance with the procedure established by Article 17 of the given Code.


## ARTICLE 16. DIVORCE BY JUDICIAL PROCEDURE

1. The divorce is realized by judicial procedure if:

a) there is no agreement on divorce by one of the spouses;

b) despite the absence of reservations against divorce one of the spouses avoids the divorce realization in the Civic Status Registration Departments;

c) the spouses wish to divorce by judicial procedure by mutual consent.

2. While the consideration of divorce cases by the application of one of the spouses the court may undertake measures to reconcile the spouses and has the right to adjourn the case consideration providing the spouses with the period up to three months to reconcile.

In this case the divorce is realized if the spouses (one of them) insist on the divorce.

3. If there is a mutual consent of the spouses to get divorced, the court cancels the marriage within a period of one month after the spouses submit the application for divorce.

## ARTICLE 17. THE PROCEDURE OF CONSIDERATION OF DISPUTES ARISING BETWEEN THE SPOUSES DURING THE MARRIAGE CANCELLATION

1. While getting divorced by judicial procedure or in the Civic Status Registration Departments the spouses may present to the court an agreement on who the children will live with, the procedure of meeting the living expenses of children and/or vulnerable incapable spouse, the amount of these expenses or the distribution of the common property of the spouses.

2. In case if there is no agreement between the spouses the court is obliged to:

a) decide who the children will live with after the divorce;

b) which parent will pay alimony and what will be the amount;

c) implement the distribution of the common property of the spouses by the requirement of one/both of them;

d) establish the amount of the assistance with the requirement of the spouse who has the right to get assistance from the other spouse.

3. If the property distribution touched the interests of the third party, the court can separate the requirement on property distribution as a separate case.

## ARTICLE 18. THE MOMENT OF MARRIAGE CANCELLATION IN CASE OF DIVORCE

1. The marriage which is being cancelled in the Civic Status Registration Departments is considered cancelled after the state registration of divorce.

2. The marriage which is being cancelled by judicial procedure is considered cancelled after the court verdict's entry into force.

Within three days after the entry into force of the court verdict on divorce the court is obliged to send the extract of the verdict to the Civic Status Registration Department of the state registration of the marriage.

The marriage cancellation by judicial procedure is subject to state registration in accordance with the procedure established by the RA Legislation.

3. The state registration of the new marriage of the divorced spouses is not implemented without the divorce certificate.

ARTICLE 19. MARRIAGE RESTORATION IN CASE OF THE RETURN OF THE SPOUSE RECOGNIZED MISSING OR DEAD

In case of the return of the spouse recognized missing or dead and the reconsideration of the court verdict on the basis of the common application of the spouses, the marriage can be restored by the Civic Status Registration Department except for the cases when the other spouse has concluded a new marriage in accordance with the established procedure.

CHAPTER 5

MARRIAGE INVALIDITY

ARTICLE 20. RECOGNITION OF THE MARRIAGE INVALID

1. The marriage is recognized invalid by court.
2. The marriage concluded with the barrier conditions stipulated by Articles 10, 11 and Provision 3, Article 12 of the given Code is recognized invalid, as well as the marriage in case of which the spouses or one of them registered the marriage without an intention to make a family (false marriage).
3. Within three days after the entry into force of the court verdict on recognition of the marriage invalid the court is obliged to send the extract of the verdict to the Civic Status Registration Department of the state registration of the marriage.
4. The marriage is considered invalid after the state registration.

ARTICLE 21. PERSONS WHO HAVE RIGHT TO PRESENT REQUIREMENTS TO RECOGNIZE THE MARRIAGE INVALID

Persons who have the right to submit an application for recognition of the marriage invalid:
a) a minor spouse, his/her parents (authorized representatives), departments of custody and guardianship, if the marriage has been conducted with a minor person. When the minor spouse reaches the age of 18, only the spouse has the right to apply for the recognition of the marriage invalid;
b) a spouse whose rights were violated by marriage conclusion, if the marriage was concluded without voluntary consent of one of the spouses as a result of compellation, lie, confusion or impossibility to realize and lead his/her activities during the state registration of the marriage;
c) the spouse who was unaware of the barrier conditions for marriage conclusion, the guardian of a spouse recognized invalid by court, a spouse who has a former non-cancelled marriage, other persons whose rights have been violated by the marriage

concluded with the violation of the requirements of Article 11 of the given Code, as well as the departments of custody and guardianship;

d) the spouse unaware of the false marriage;

e) the spouse whose rights have been violated by the presence of facts stipulated by Provision 3, Article 12 of the given Code.


### ARTICLE 22. CIRCUMSTANCES ELIMINATING MARRIAGE INVALIDITY

1. The court can recognize the marriage valid if at the time of the consideration of the case on recognition the marriage invalid the barrier conditions for marriage conclusion were removed.

2. In case of a woman's pregnancy or birth of a child, or if the interests of the minor spouse require marriage validity, as well as in case of the absence of the minor spouse's consent to recognize the marriage invalid, the court can reject the suit to recognize the marriage invalid.

3. The court cannot recognize the marriage false if the persons who registered such a marriage before the case consideration by the court virtually made a family.

4. After marriage cancellation the marriage cannot be recognized invalid, except for the cases when the spouses are relatives, which is prohibited by law, or the cases when at the moment of state marriage registration one of the spouses was in another non-cancelled marriage.


### ARTICLE 23. CONSEQUENCES OF THE RECOGNITION OF A MARRIAGE INVALID

1. The marriage recognized invalid by court does not create rights and obligations stipulated for the spouses by the given Code, except for the cases stipulated by Provisions 4 and 5 of the given Article.

2. The norms of the Civic Code on shared property are applied to the commonly obtained property of the persons whose marriage is recognized invalid.

3. The marriage contract concluded by the persons whose marriage is recognized invalid is recognized invalid as a rule.

4. The recognition of a marriage invalid does not affect the rights of children born in such marriage or within 300 days after the recognition of the marriage invalid.

5. While making a verdict to recognize the marriage invalid the court can recognize the right of a decent spouse, whose rights were violated by the conclusion of such a marriage, to receive living means from the other spouse, and during distribution of the property obtained before the recognition of the marriage invalid can apply the norms of Article 26 of the given Code, as well as recognize the marriage contract completely or partly valid.

The decent spouse can require compensation of the property detriment in accordance with the procedure established by the Civic Code.

6. In case of recognition of the marriage invalid the decent spouse can keep the family name chosen during the state registration of the marriage.

PART III

RIGHTS AND OBLIGATIONS OF SPOUSES

CHAPTER 6

PERSONAL RIGHTS AND OBLIGATIONS OF SPOUSES

ARTICLE 24. EQUALITY OF SPOUSES' RIGHTS IN FAMILY

1. Both of the spouses are free in choosing job, occupation, profession and residence.

2. The spouses deal with the issues of maternity, paternity, rearing and education of a child, as well as other issues of family life proceeding from the principle of equality of spouses' rights.

3. The spouses are obliged to build their relations on the basis of mutual assistance and respect, contribute to the firmness of the family, and take care about the well-being and development of their children.

ARTICLE 25. THE RIGHT OF SPOUSES TO CHOOSE A FAMILY NAME

1. The spouses by their will may choose the family name of one of the spouses as a common family name or keep the family name prior to marriage.

The common family name may be the family name of one of the spouses or such a family name that simultaneously includes the family names of both spouses. The common family name cannot include more than 2 family names.

2. The alternation of one of the spouse's family name does not create the alternation of the other spouse's family name.

3. During divorce spouses may keep their common family name or recover their prior to marriage family name.

CHAPTER 7

PROPERTY RIGHTS AND OBLIGATIONS OF SPOUSES

ARTICLE 26. COMMON SHARED PROPERTY OF SPOUSES

The relations connected to the common shared property of spouses are regulated by the Civic Code, as well as the marriage contract concluded between spouses.

### ARTICLE 27. MARRIAGE CONTRACT

The marriage contract is the agreement or consent of the spouses, which regulates property rights and obligations of the spouses during the marriage and/or its cancellation.

### ARTICLE 28. CONCLUSION OF MARRIAGE CONTRACT

1. The marriage contract can be concluded as prior to the state registration of the marriage as in any period of the marriage.

The marriage contract concluded prior to the state registration of marriage enters into force after the state registration.

2. The marriage contract is concluded in writing and is subject to notary ratification.

### ARTICLE 29. CONTENTS OF MARRIAGE CONTRACT

1. The spouses may change the scope of the common property, establish common, shared or personal property towards all the property of the spouses, its separate types and personal property of the spouses by the marriage contract.

The marriage contract can be concluded on both the present property and the property to be obtained.

Through the marriage contract the spouses may establish mutual rights and obligations of meeting each other's living expenses, ways of participation in each other's income, the procedure of making family expenses by each of them, the property which should be given to each of them in case of divorce, as well as the spouses can stipulate any other norms of their property relations by marriage contract.

2. Rights and obligations stipulated by marriage contract can be restricted for a certain period or depend on emergence of certain circumstances or vice versa.

3. Marriage contract cannot restrict the rights or capability of the spouses, their right to apply to court for protection of their rights, regulate personal non-property relations between spouses, rights and obligations of spouses with regard of children, stipulate a provision restricting the right of the incapable spouse to require living means, include other stipulations that create unfavorable conditions for one of the spouses or contradict the major principles of family legislation.

ARTICLE 30. REVISION AND CANCELLATION OF MARRIAGE CONTRACT

1. With the spouses' consent the marriage contract can be alternated or cancelled at any time. Marriage contract is alternated and cancelled by the procedure established for the conclusion of marriage contract.

Unilateral refusal of marriage contract is prohibited.

2. With the requirement of one of the spouses marriage contract can be alternated or cancelled by judicial procedure under the basis and procedure established by Civic Code for alternation and cancellation of treaties.

3. The validity term of marriage contract expires with marriage cancellation, except for the obligations that are stipulated for the period after the marriage cancellation.


ARTICLE 31. RECOGNITION OF MARRIAGE CONTRACT INVALID

1. The court can recognize marriage contract invalid completely or partly on the basis established by Civic Code for invalidity of deals.

2. The court can also recognize marriage contract completely or partly invalid upon the requirement of one of the spouses, if the provisions of the contract create extremely unfavorable conditions for the given spouse. Other conditions that violate the requirements of Provision 3, Article 29 of the given Code are invalid.


CHAPTER 8


THE RESPONSIBILITY OF SPOUSES IN ACCORDANCE WITH THEIR OBLIGATIONS


ARTICLE 32. EXACTION ON SPOUSES' PROPERTY

1. By the obligations of one of the spouses property exaction can be applied only with regard to the property of that spouse. If the property is insufficient the creditor can require the alienation of the borrower-spouse's property from the common property of the spouses for exaction application.

2. Exaction on common property of the spouses is applied according to the common obligations of the spouses. If it has been established by the judicial procedure that the common property of the spouses was obtained or enlarged by criminal deeds of one of the spouses, the exaction can be applied correspondingly to the common property of the spouses or the part of it.

3. The responsibility of parents with regard to the damage caused by their children is determined by the procedure established by the Civic Code. In that case the exaction on spouses' property is applied in accordance with Provision 2 of the given Article.

ARTICLE 33. GUARANTEES OF CREDITOR'S RIGHTS IN CASE OF CONCLUSION, ALTERNATION AND CANCELLATION OF MARRIAGE CONTRACT

1. The spouse is obliged to inform his/her creditor on conclusion, alternation or cancellation of the marriage contract. In case of not fulfillment of this requirement the spouse is responsible in accordance with his/her obligations irrespective of the contents of the contract.

2. The creditor of the borrower-spouse can require alternation of the provisions of the agreement concluded by them or cancel the agreement for the reason of the essential changes in conditions, by the procedure established by the Civic Code.

PART IV

RIGHTS AND OBLIGATIONS OF PARENTS AND CHILDREN

CHAPTER 9

DETERMINATION OF THE FACT OF CHILD'S ORIGIN

ARTICLE 34. BASIS FOR THE RIGHTS AND OBLIGATIONS OF PARENTS AND CHILDREN

The rights and obligations of parents and children are based on the fact of child's origin stipulated by law.

ARTICLE 35. DETERMINATION OF THE FACT OF CHILD'S ORIGIN

1. Child's origin by mother (maternity) is determined on the basis of the documents proving the fact of the child's being born from the given mother in the medical institution, and if the child was not born in a medical institution, on the basis of medical documents, statements of witnesses or other proves.

2. If the child is born from the married persons, the husband of the child's mother is recognized the child's father if nothing else is proven. The paternity of the husband of the child's mother is determined by the state registration of their marriage.

If the child is born within 300 days after the divorce, recognition of the marriage invalid or the death of the husband of the child's mother, the paternity of the child is determined on the basis of the mother's application.

3. The paternity of the person not married to the child's mother is determined in the state Civic Status Registration Departments on the basis of the common application of

the child's mother and father. In case of the mother's death, recognition incapable by court or impossibility to determine the place of residence, or being deprived of the parental rights the child's paternity is determined on the basis of the father's application with the consent of the departments of custody and guardianship, and in case of the absence of such consent, by the court verdict.

Under the circumstances which lead to assume that after the child's birth the submission of a common application is impossible or difficult, the unmarried parents of a future child can submit the application to the state Civic Status Registration Departments during the mother's pregnancy. In this case the registration of the child's parents is realized after the child's birth.

4. The determination of paternity towards a person who has attained his/her majority is allowed only with his/her consent, and if the person is recognized incapable by court, with the consent of his/her guardian or the departments of custody and guardianship.


ARTICLE 36. DETERMINATION OF PATERNITY THROUGH JUDICIAL PROCEDURE

In case of a child being born from unmarried persons, if there is no common application of parents or the father's application the fact of origin from a certain person (paternity) is determined by the judicial procedure on the basis of the application from correspondingly one of the parents or the mother, the guardian of a child, and after the child attains the majority, on the basis of the application of the latter. In this case the court takes into consideration any prove that definitely states that the given child is of this certain person's origin.


ARTICLE 37. JUDICIAL DETERMINATION OF PATERNITY RECOGNITION

In case of the death of a person who recognized himself as the father of the child, but not married to the child's mother, the paternity of the latter can be determined by the judicial procedure by the provisions stipulated by the Civic Procedure Code.


ARTICLE 38. REGISTRATION OF PARENTS IN THE STATE BIRTH REGISTER

Registration of parents in the state birth register is implemented in accordance with the procedure established by the RA Legislation.

ARTICLE 39. CONTESTING OF PATERNITY (MATERNITY)

1. According to Article 38 of the given Code the registration of parents in the state birth register can be contested only by the judicial procedure upon the requirement of the person registered as the child's mother or father or, virtually, the child's mother or father, as well as the requirement of the guardian, the guardian of a parent recognized incapable by court, and the child who has attained the majority.

2. The requirement to contest the paternity of a person registered in the state birth register as a father of a child born from unmarried parents cannot be satisfied, if it is proven that at the moment of registration as the child's father the person was aware that he is not in fact the father of the child.

3. The spouse who in accordance with the procedure established by law has given written consent to apply the methods of artificial impregnation or foetus introduction cannot contest the paternity of the child born this way after the registration of the child's birth.

The spouses who have agreed to apply foetus introduction and development through other woman as well as the substitute mother cannot refer to this fact after the registration of the child's birth.

ARTICLE 40. RIGHTS AND OBLIGATIONS OF THE CHILDREN BORN FROM THE UNMARRIED PERSONS

In cases and procedure stipulated by the given Code during paternity determination the children have equal rights and obligations with regard to their parents and relatives to the rights and obligations of the children born from the married parents.

CHAPTER 10

RIGHTS OF CHILDREN

ARTICLE 41. RIGHT OF A CHILD TO LIVE AND BE REARED IN A FAMILY

1. A person under 18 years old is considered a child.

2. Each child has the right to live and be reared in a family, know his/her parents, feel their care, live with them, except for the cases when it is contrary to their best interests.

A child also has the right to be reared by his/her parents, right of guarantees of his/her interests, multisided development, respect of his/her human dignity, as well as being provided with the necessary living conditions for full physical, mental and spiritual development.

In case of parents' absence, their being exempted from parental rights and other cases of the lack of parental care the right of a child of being reared in a family is provided by the departments of custody and guardianship in accordance with the provisions established by Chapter 17 of the given Code.


ARTICLE 42. RIGHT OF A CHILD TO COMMUNICATE WITH PARENTS AND OTHER RELATIVES

1. A child has a right to communicate with his/her parents, grandparents, siblings and other relatives. The cancellation of parents' marriage, recognition of the marriage invalid or separate living does not affect a child's rights.
In case of separate living (in different states) of the parents a child has the right to communicate with both of them.
2. Under the emergency conditions (arrest, imprisonment, being in a medical institution etc.) a child has the right to communicate with the parents and relatives, as well as the parents have the right to communicate with a child under similar conditions in accordance with the procedure established by law.


ARTICLE 43. RIGHT OF A CHILD'S PROTECTION

1. A child has a right of protection of his/her lawful rights and interests.
The protection of child's rights and interests is realized by parents (lawful representatives), and in cases stipulated by the given Code, by the departments of custody and guardianship.
A minor recognized completely capable by the procedure established by law has a right to realize his/her rights (in particular the protection right) and obligations independently.
2. A child has the right to be protected from the abuse of his/her parents (lawful representatives).
In case of violation of a child's rights and interests (in particular, violation or partial realization of the obligation of parents or one of them to rear and educate the child, as well as the abuse of the parental rights) a child has a right to apply for help independently to the departments of custody and guardianship.
3. The officials and other citizens, who became aware of the threats to live and health of a child, as well as the cases of violation of child's rights and interests, should inform about that the departments of custody and guardianship of the virtual residence of a child. After getting such information the department of custody and guardianship should undertake necessary means for protection of a child's rights and interests.


ARTICLE 44. RIGHT OF A CHILD TO EXPRESS PERSONAL OPINION

1. A child has the right to be present at any consideration of the issues touching his/her interests and express personal opinion in family, judicial and other bodies.

2. Taking into consideration the opinion of the child above 10 is obligatory with regards to freedom of conscience, participation in particular events, rejection of extracurricular education, living with one of the parents, communication with relatives and other issues stipulated by law.

3. In cases stipulated by the given Code the courts and departments of custody and guardianship can make a decision concerning a child above 10 only with his/her consent.


ARTICLE 45. RIGHT OF A CHILD TO HAVE NAME, FAMILY NAME AND PATRONYMIC

1. A child has the right to have a name, family name and patronymic.

2. A name is given to the child with the consent of the parents, and patronymic is given by the father's name in accordance with the procedure established by the given Code.

3. A child's family name is determined by the family name of the parents. If the parents bear different family names, with the parents' consent the child is given the father's or mother's family name.

4. The disputes caused by the disagreement of parents on the child's name and family name are solved by the department of custody and guardianship.

5. If the child's paternity is not determined he/she is given name by the mother's decision, patronymic by the name of a person registered as a child's father, and family name by the mother's family name.


ARTICLE 46. ALTERNATION OF A CHILD'S NAME AND FAMILY NAME

1. The name of a child under 10 years old is changed by the state Civic Status Registration Departments on the basis of the parents' common application, as well as the family name – by the name of the other parent.

2. If the parents live separately, and the parent who the child lives with wants to give the child his/her family name, the issue is solved taking into consideration the opinion of the other parent.

Taking into consideration of the other parent's opinion is not obligatory if:

1) it is impossible to ascertain his/her place of residence;

2) he/she is deprived of parental rights;

3) he/she is recognized incapable by court;

4) he/she avoids rearing and taking care of a child without justifiable reasons.

3. The alternation of the name and/or family name of a child over 10 years old can be realized taking into consideration his/her opinion.

ARTICLE 47. PROPERTY RIGHTS OF A CHILD

1. A child has the right to require living means from his/her parents and other family members in accordance with the procedure and the amount established by Part V of the given Code.

2. With the requirement of the parent obliged to pay alimony to the child the court can make a decision to transfer not more than 50% of the alimony to the child's account in banks.

3. The right of a child to maintain his/her property is established by the Civic Code.

While the realization of the authorities to maintain child's property the parents act under the provisions established by the Civic Code on the maintenance of the guardian's property.

4. A child has no property rights with regard to the property of the parents, and the parents have no property rights towards the property of a child. Children and parents living together can maintain and use each other's property by mutual consent.

5. The procedure and conditions of maintenance, usage and handling of the property belonging to children and parents by the common property right are established by the Civic Code.


ARTICLE 48. OTHER RIGHTS OF A CHILD

A child has other rights stipulated by law and other legal acts.


CHAPTER 11


RIGHTS AND OBLIGATIONS OF PARENTS


ARTICLE 49. EQUALITY OF PARENTS' RIGHTS AND OBLIGATIONS

1. Parents have equal rights and obligations with regard to their children (parental rights).

2. Parental rights stipulated by the given Chapter terminate when a child becomes 18 years old, as well as in case of children's marriage by the established procedure and recognition completely capable before attaining the majority by the procedure stipulated by law.


ARTICLE 50. RIGHTS OF THE UNMARRIED MINOR PARENTS

1. Unmarried minor parents have the rights to live together with their children and participate in their rearing.

2. In case of a child being born form the unmarried minor parents, as well as during the recognition of their maternity and/or paternity the parents can realize parental rights independently after attaining the marriage age.

Before the minor parents attain the marriage age a guardian can be appointed for their child, who will realize rearing of the child together with the parents. The disputes between the child's guardian and parents are resolved by the department of custody and guardianship.

3. Unmarried minor parents have the right to accept or contest their paternity and maternity by the common principles.

ARTICLE 51. PARENTS' RIGHTS AND OBLIGATIONS TO REAR AND EDUCATE CHILDREN

1. Parents have right and are obliged to rear their children.

Parents are responsible for rearing and development of their children. They are obliged to take care of the health, physical, mental, spiritual and moral development of their children.

Parents have the priority to rear their children over all the other persons.

3. Parents are obliged to provide the education of their children.

Parents, along with taking into consideration children's opinion, have the right to choose the educational institution and the way of children's education before the basic general education of the children.

ARTICLE 52. PARENTS' RIGHTS AND OBLIGATIONS TO PROTECT THE RIGHTS AND INTERESTS OF CHILDREN

Parents bear the protection of the rights and lawful interests of their children.

Parents are considered lawful representatives of their children and without an authorization defend the rights and interests of their children in any relations with natural and juridical persons, as well as in court.

ARTICLE 53. REALIZATION OF PARENTAL RIGHTS

1. Parental rights cannot be realized contrary to children's interests.

The provision of the interests of children should be the primary concern of the parents.

While the realization of the parental rights the parents are not allowed to damage the physical and mental health of the children, their ethical development. The ways of children's rearing should exclude ignorant, cruel, violent attitude towards them, humiliating human dignity, offence or exploitation.

Parents who realize parental rights against the rights and interests of the children are accountable by the procedure established by law.

2. All the issues of rearing and education of children the parents solve by mutual consent proceeding from the best interests of children and taking into consideration the opinion of a child above 10. In case of impossibility to achieve mutual consent the parents (one of them) can apply to the department of custody and guardianship or court to resolve the dispute.

3. In case of separate living of parents the residence place of children is decided by the consent of parents. If there is no consent, the dispute between parents is solved by court, proceeding from the interests of children and taking into consideration the opinion of a child above 10. The court takes into consideration a child's affection towards each of parents, siblings, the age of a child, other ethical and personal features of parents, the relations between each of parents and a child, the possibility to create conditions for the rearing and education of a child (the type of occupation/job of parents, their property and family status etc.).

## ARTICLE 54. REALIZATION OF PARENTAL RIGHTS BY A PARENT LIVING SEPARATELY FROM A CHILD

1. The parent living separately from a child has the right to communicate with the child, participate in his/her rearing, and solve the education issues of the child.

The parent, who the child lives with, should not restrict the communication of the child with the other parent, if this communication does not damage the physical and mental health of a child, his/her moral development.

2. The parents have the right to sign a written agreement on the realization of parental rights by the parent living separately from the child.

If the parents cannot come to an agreement, upon the requirement of both or one of them the dispute is solved by the court with the obligatory presence of the department of custody and guardianship.

3. In case of intended violation of the court's verdict, upon the requirement of the parent living separately from the child the court can make a decision on granting him/her the child, proceeding from the interests of children and taking into consideration the opinion of a child above 10.

4. The parent living separately from a child has the right to get information about his/her child from rearing, medical, population social protection organizations, etc. The giving of information can only be rejected in case of the threat to the health and life of the child by the parent.

## ARTICLE 55. OBLIGATION OF FOSTER-PARENTS TO REAR AND TAKE CARE OF FOSTER-CHILDREN

The foster-parents are obliged to rear and take care of the children born on the previous marriage of their spouses and residing with them (foster-children).

ARTICLE 56. RIGHT OF A CHILD TO COMMUNICATE WITH GRANDPARENTS, SIBLINGS AND OTHER RELATIVES

1. Grandparents, siblings and other relatives of a child have the right to communicate with the child.

2. In case of the rejection of the child's communication with close relatives by both or one of the parents, the department of custody and guardianship can oblige them not to interfere to this communication.

3. If the parents or one of them violate the decision of the department of custody and guardianship, the relatives of the child can apply to the court with the suit to remove the constraints of communication with the child. The court solves the dispute, proceeding from the interests of children and taking into consideration the opinion of a child above 10.

ARTICLE 57. PROTECTION OF PARENTAL RIGHTS

1. The parents can require giving them back the child from the person who keeps the child with him/her without legal basis or court verdict. In case of a dispute the parents can apply to court for the protection of their parental rights.

Taking into consideration the opinion of the child above 10 the court can reject the satisfaction of the parents' suit if it comes to the conclusion that giving the child back to the parents does not proceed from the interests of the child.

2. If it is established by the judicial procedure that neither the parents nor the person the child lives with are capable to provide his/her rearing and development, the court places the child under the care of the department of custody and guardianship.

ARTICLE 58. TAKING OF A CHILD IN CASE OF A DIRECT THREAT TO HIS/HER LIFE AND HEALTH

1. In case of the direct threat to the health and life of a child the department of custody and guardianship is authorized to take the child immediately from the parents (one of them) or the persons under whose care the child is placed.

2. When taking the child the department of custody and guardianship is obliged to provide immediately temporary settlement of the child and apply to court within seven days with the suit to deprive the parents (one of them) of parental rights or restrict their parental rights.

ARTICLE 59. DEPRIVATION OF PARENTAL RIGHTS

Parents or one of them can be deprived of parental rights if they:

a) violate the realization of their parental obligations, particularly, paying alimony;

b) without justifiable reason refuse to take the child from the maternity house or other medical institutions, as well as from rearing, population social protection and other organizations;

c) abuse their parental rights, in particular, make negative impact on the children by their immoral behavior;

d) treat the children cruelly, in particular, exercise physical or mental violence towards them, infringe their sexual inviolability;

e) suffer from chronic drug, alcohol or toxic addiction;

f) committed intended crime against their children.


ARTICLE 60. PROCEDURE OF DEPRIVATION OF PARENTAL RIGHTS

1. Deprivation of parental rights is realized by judicial procedure.

The cases on deprivation of parental rights are considered on the basis of application by one of the parents (lawful representatives), as well as the departments and organizations (departments of custody and guardianship, organizations for orphans etc.), who bear the obligations of the protection of the rights of children.

2. The cases on deprivation of parental rights are considered with obligatory presence of the departments of custody and guardianship.

3. If while the consideration of the case on deprivation of parental rights the court finds features of criminally penalized acts in the deeds of one of the parents, it is obliged to inform about that the relevant judicial departments.

4. Within three days after the entry into force of the court verdict on deprivation of parental rights the court is obliged to send the extract of the verdict to the state Civic Status Registration Department of the child's birth place.


ARTICLE 61. CONSEQUENCES OF DEPRIVATION OF PARENTAL RIGHTS

1. The parents deprived of the parental rights lose all the rights based on the blood relations with the child, with regards of who they were deprived of parental rights (in particular, the rights to get living means from the children, as well as the privileges and state allowances provided for the citizens with children).

2. The deprivation of parental rights does not exempt from the obligation to care about the living of the child.

3. The issue of future common living of the child or parents/one of them, deprived of parental rights is solved by the judicial procedure.

4. In case of deprivation of parental rights of the parent or both of them, the child keeps his/her right to ownership and usage of the accommodation, and in case of the absence of accommodation, in accordance with the Apartment Code, the right to be granted accommodation, as well as the property rights based on the blood relations with parents and other relatives (in particular, the right of inheritance).

5. If it is impossible to give the child to the other parent, or both of the parents are deprived of parental rights, the child is placed under the care of the department of custody and guardianship.

6. In case of deprivation of parents/one of them of parental rights, the adoption of the child is allowed not earlier than six months after the entry into force of the court verdict on deprivation of parental rights.

## ARTICLE 62. RESTORATION OF PARENTAL RIGHTS

1. The parental rights can be restored if the parents or one of them have changed their behavior, living style and/or the attitude towards child's rearing.

2. Parental rights are restored by judicial procedure on the basis of the application of the parent deprived of the parental rights. The cases on the restoration of the parental rights are considered with obligatory presence of the departments of custody and guardianship.

3. Simultaneously with the application to restore parental rights the requirement to give the child back to the parents or one of them can be considered.

4. The restoration of parental rights with regard to the child above 10 is realized taking into consideration the opinion of the child.

The court, taking into consideration the opinion of the child above 10, has the rights to reject the application of restoration of parental rights, if the restoration of parental rights is contrary to the best interests of a child.

The restoration of parental rights is not allowed, if the child is adopted and the adoption has not been cancelled by the established procedure.

## ARTICLE 63. RESTRICTION OF PARENTAL RIGHTS

1. Proceeding from the child's interests, the court can make a decision to take the child from the parents (one of them) without deprivation of parental rights (restriction of parental rights).

2. The restriction of parental rights is allowed if leaving the child with parents or one of them is dangerous for the child because of the circumstances beyond the parents/ one of them (mental or chronic disease, existence of grave circumstances etc.).

The restriction of parental rights is also allowed in cases when despite the fact that leaving the child with the parents is dangerous for the child due to the behavior of the latter, there are no sufficient ground to deprive the parents or one of them of the parental rights. If the parents or one of them do not change their behavior, after six months from the entry into force of the court verdict to restrict the parental rights, the department of custody and guardianship is obliged to apply to the court with a suit on deprivation of parental rights. The department of custody and guardianship can present a suit on deprivation of the parent/parents of parental rights before this term expires proceeding from the child's interests.

3. A suit on restriction of parental rights can be presented by the close relatives of the child, other departments and organizations who bear the obligations of the protection of child's rights, pre-school, educational and other organizations.

4. The cases of restriction of parental rights are considered with the obligatory presence of the department of custody and guardianship.

5. Within three days after the entry into force of the court verdict on restriction of parental rights the court is obliged to send the extract of the verdict to the state Civic Status Registration Department of the child's birth place.


ARTICLE 64. CONSEQUENCES OF RESTRICTION OF PARENTAL RIGHTS

1. The parents, whose parental rights have been restricted by the established procedure, lose the right to rear the child independently, as well as the right of the privileges and state allowances provided for the citizens with children.

2. The restriction of parental rights does not exempt the parents from the obligation to care about the living of the child.

3. In case of restriction of the parental rights of the parent or both of them, the child keeps his/her right to ownership and usage of the accommodation, and in case of the absence of accommodation, in accordance with the Apartment Code, the right to be granted accommodation, as well as the property rights based on the blood relations with parents and other relatives (in particular, the right of inheritance).

4. In case of restriction of the parental rights the child is placed under the care of the department of custody and guardianship.


ARTICLE 65. COMMUNICATION OF A CHILD WITH A PARENT WITH RESTRICTED PARENTAL RIGHTS

Parents, whose parental rights have been restricted by the established procedure, may be allowed to communicate with a child, if this communication will not have a negative impact on a child. Parents' communication with the child is allowed with the consent of the department of custody and guardianship, foster parents, child's guardian or the head or deputy of the organization of child's placement.


ARTICLE 66. ELIMINATION OF THE RESTRICTION OF PARENTAL RIGHTS

1. If the circumstances on the basis of which parental rights of the parents or one of them were restricted are removed, on the basis of the parent's/parents' application the court may decide to give the child back to the parents/one of them and remove the restrictions stipulated by the given Code.

2. Taking into consideration the opinion of a child above 10, the court may reject satisfaction of the suit if giving the child back to the parents/one of them is contrary to his/her best interests.


ARTICLE 67. PARTICIPATION OF THE DEPARTMENT ON CUSTODY AND GUARDIANSHIP IN THE JUDICIAL CONSIDERATION OF ARGUMENTS ON REARING OF CHILDREN

1. While the consideration of disputes on rearing of the children the court is obliged to invite the department of custody and guardianship, irrespective of who presented a suit on child's protection.

2. The department of custody and guardianship is obliged to conduct life examination of the child and person/persons who have pretensions to the child's rearing, and present in the court the act of examination and the conclusion of the essence of the dispute on the basis of the latter.


PART V


ALIMONY OBLIGATIONS OF FAMILY MEMBERS


CHAPTER 12


ALIMONY OBLIGATIONS OF PARENTS AND CHILDREN


ARTICLE 68. OBLIGATION OF PARENTS TO PROVIDE LIVING MEANS OF CHILDREN

1. Parents are obliged to keep their children.

The procedure and conditions of providing a child with living means parents decide independently.

Parents can conclude an agreement on keeping their children (an alimony paying agreement) in accordance with Chapter 15 of the given Code.

2. If parents do not provide the children with the living means, the means for keeping the latter (alimony) are exacted from parents by judicial procedure.


ARTICLE 69. AMOUNT OF ALIMONY EXACTED FOR CHILDREN BY JUDICIAL PROCEDURE

1. In case of the absence of alimony paying agreement between parents alimony exaction from parents is implemented by judicial procedure by making monthly payments of the following amount:

a) 1/4 of the parents' earnings and/or other income for one child;

b) 1/3 for two children;

c) 1/2 for three and more children.

The amount of the monthly payments for each child stipulated by the given Provision should not be less than the amount of the established minimal salary, and in case of alimony exaction from the unemployed parents, less than 20% of unemployment allowance.

2. The amount of the shares stipulated by Provision 1 of the given Article can be reduced or increased, taking into consideration property and family status of the parties and interests deserving attention.

ARTICLE 70. WAGE AND OTHER EARNING TYPES OF PARENTS, FROM WHICH ALIMONY IS KEPT FOR CHILDREN

Parents' earnings by AMD or currency and/or other types of income, from which, according to Article 69 of the given Code, alimony is kept for children, are established by the RA Legislation.

ARTICLE 71. EXACTION OF ALIMONY FOR CHILDREN BY STABLE SUM

1. In case of the absence of alimony paying agreement between parents, the court has the right to establish the amount of the monthly alimony by stable sum or, simultaneously, by both stable sum and shares.

The norms of paragraph 1 of the given Provision are applied, if the alimony exaction from the earnings or other income of the parents by share ratio is impossible or difficult or essentially damages the interests of any of the recipients, as well as in cases, when the parent obliged to pay alimony for children:

a) receives non-regular or alternating earnings and/or other income;

b) receives earnings and/or other income by products or currency;

c) does not receive earnings and/or other income.

2. The amount of the stable sum is established by court proceeding from the maximal possibility of keeping the previous level of living, taking into consideration property and family status of the parties and interests deserving attention.

3. If each of parents keeps children, the amount of alimony exacted for a parent earning less is established by court according to Provision 2 of the given Article by stable sum subject to monthly exaction.

ARTICLE 72. EXACTION AND USAGE OF ALIMONY FOR THE CHILDREN DEPRIVED OF THE PARENTAL CARE

1. Alimony for children deprived of the parental care is exacted according to Articles 69-71 of the given Code and is paid to a child's guardian.

2. Alimony exacted from parents for children deprived of parental care and placed in rearing, medical, population social protection and other organizations is passed to the account of these organizations, where the alimony is accounted for each child separately.

The mentioned organizations can keep these sums in banks. 50% of the income received from the sum circulation is used for keeping the children in the mentioned organizations. When a child leaves the organization, the latter passes the amount of alimony received by his/her name and 50% of the income received from the sum circulation to the child's bank account.

### ARTICLE 73. ALIMONY RIGHTS OF THE INCAPABLE MAJOR CHILDREN

1. Parents are obliged to provide their vulnerable incapable major children with living means.

2. In case of the absence of alimony paying agreement the amount of the alimony for major incapable children is established by court in stable sum. It is subject to payment each month proceeding from the property and family status of parties and interests deserving attention.

### ARTICLE 74. PARTICIPATION OF PARENTS TO THE ADDITIONAL EXPENSES FOR CHILDREN

1. In case of absence of consent and presence of exceptional circumstances (dangerous disease, neglect of children or vulnerable incapable major children, necessity to pay for special care etc.) each of the parents can be included by the court verdict in bearing additional expenses proceeding from these circumstances.

The procedure of parents' participation in bearing the additional expenses by stable sum and the amount of these expenses is established by court proceeding from the property and family status of the parents and children and interests deserving attention. It is subject to paying each month.

2. The court may oblige the parents to participate as in virtual additional expenses, as in additional expenses in future.

### ARTICLE 75. OBLIGATIONS OF MAJOR CHILDREN TO PROVIDE LIVING MEANS OF PARENTS

1. Major capable children are obliged to keep their incapable vulnerable parents and take care of them.

2. In case of the absence of alimony paying agreement the alimony is exacted for incapable vulnerable parents from their capable major children by judicial procedure.

3. The amount of the alimony exacted from each of children in stable sum is established by court proceeding from the property and family status of the parents and children and interests deserving attention. It is subject to paying each month.

4. While determination of the alimony amount with regard to each major child the court may take into consideration all major capable children of the given parent irrespective of whether the requirement was presented towards one, some or all of them.

5. Children may be exempted from the obligation of meeting the living means of their vulnerable incapable parents, if the court verdict establishes that in past the parents avoided fulfillment of their parental obligations.

Children are exempted from the obligation of paying alimony to their parents deprived of parental rights.


### ARTICLE 76. PARTICIPATION OF MAJOR CAPABLE CHILDREN TO THE ADDITIONAL EXPENSES FOR INCAPABLE PARENTS

1. In case of the absence of care towards incapable parents from major capable children and the presence of exceptional circumstances (dangerous disease of the parents, neglect, necessity to pay for their additional care etc.) they may included in bearing additional expenses proceeding from there circumstances by court verdict.

2. The procedure of major capable children's participation in bearing the additional expenses by stable sum and the amount of these expenses is established by court proceeding from the property and family status of the parents and children and interests deserving attention, and keeping the requirements of Provisions 3-5, Article 75 of the given Code.

3. The procedure of bearing additional expenses and the amount of these expenses may be established by the parties' consent.


### CHAPTER 13

### ALIMONY OBLIGATIONS OF SPOUSES AND EX-SPOUSES

### ARTICLE 77.  OBLIGATION OF SPOUSES TO PROVIDE EACH OTHER'S LIVING MEANS

Spouses are obliged to assist each other materially.

In case of rejection of such assistance and the absence of alimony paying agreement the following persons have the right to require alimony from the spouse by judicial procedure:

a) vulnerable incapable spouse;

b) wife during the pregnancy, as well as the spouse taking care of a common child until the latter becomes 3 years old;

c) vulnerable spouse, who takes care of common disabled child or a major child of the 1st group disability.

### ARTICLE 78. RIGHT TO RECEIVE ALIMONY FROM THE EX-SPOUSE AFTER DIVORCE

1. The following persons have the right to require alimony from the spouse with sufficient material means by judicial procedure:

a) ex-wife during the pregnancy, as well as the spouse taking care of a common child until the latter becomes 3 years old;

b) vulnerable spouse, who takes care of common disabled child or a major child of the 1st group disability;

c) vulnerable incapable spouse, who became disabled before the divorce or within a year after the divorce;

d) vulnerable spouse, who reached pension age within five years after the divorce, if the spouses were married for 15 years and more.

2. The amount of alimony as well as the procedure of paying it to the ex-spouse may be established by the consent of ex-spouses.

### ARTICLE 79. AMOUNT OF ALIMONY EXACTED FROM SPOUSES AND EX-SPOUSES BY JUDICIAL PROCEDURE

In case of the absence of alimony paying agreement between spouses/ex-spouses the amount of the alimony exacted by judicial procedure from the spouse/ex-spouse in stable sum is established by court proceeding from the property and family status of the parents and children and interests deserving attention. It is subject to paying each month.

### ARTICLE 80. EXEMPTION FROM THE OBLIGATION TO TAKE CARE OF THE OTHER SPOUSE OR TEMPORARY RESTRICTION OF THIS OBLIGATION

The court can exempt the spouse from the obligation to provide assistance to the vulnerable incapable spouse or temporary restrict this obligation as during the marriage as after the divorce, if the spouse in need of assistance became incapable:

a) as a consequence of excessive alcohol, drug and toxic addiction or committing an intended crime;

b) within a marriage term less than a year;

c) as a consequence of immoral behavior of the spouse requiring alimony (unfaithfulness, gambling etc.).

CHAPTER 14

ALIMONY OBLIGATIONS OF OTHER FAMILY MEMBERS

ARTICLE 81. OBLIGATION OF SIBLINGS TO TAKE CARE OF THEIR MINOR OR INCAPABLE SIBLINGS

In case of impossibility to receive living means from the parents the minor siblings in need of assistance have the right to receive alimony from their major capable sibling with sufficient means by judicial procedure. The same right is given to the major incapable siblings in need of assistance if they cannot receive living means from their major capable children, spouse/ex-spouse or parents.

ARTICLE 82. OBLIGATION OF GRANDPARENTS TO TAKE CARE OF GRANDCHILDREN

In case of impossibility to receive living means from the parents the minor grandchildren in need of assistance have the right to receive alimony from their grandparents with sufficient means by judicial procedure. The same right is given to the major incapable grandchildren in need of assistance if they cannot receive living means from their spouse/ex-spouse or parents.

ARTICLE 83. OBLIGATION OF GRANDCHILDREN TO TAKE CARE OF GRANDPARENTS

In case of impossibility to receive living means from the major capable children or spouse/ex-spouse the grandparents in need of assistance have the right to receive alimony from their major capable grandchildren with sufficient means by judicial procedure.

ARTICLE 84. OBLIGATION OF CHILDREN TO TAKE CARE OF THEIR VIRTUAL GUARDIANS

1. Vulnerable incapable persons, who realized virtual care of children, have the right to require living means from their major capable children by judicial procedure, if they cannot receive living means from their major capable children or spouse/ex-spouse.

2. The court can exempt children from providing virtual guardians with living means, if the virtual guardians reared and took care of them for less than 5 years, as well as if they reared and took care of children not properly.

3. Obligations stipulated by Provision 1 of the given Article are not put on persons under guardianship, as well as persons reared in guardian families.

ARTICLE 85. OBLIGATION OF FOSTER CHILDREN TO TAKE CARE OF FOSTER PARENTS

1. In case of impossibility to receive living means from the major capable foster-children the incapable foster-mother and foster-father in need of assistance, who reared and kept the foster-children, have the right to receive alimony from their major capable foster-children with sufficient means by judicial procedure.

2. The court can exempt children from the obligation to keep the foster-mother and foster-father, if the latter reared and took care of them for less than 5 years, as well as if they reared and took care of children not properly.

ARTICLE 86. AMOUNT OF ALIMONY EXACTED FOR OTHER FAMILY MEMBERS BY JUDICIAL PROCEDURE

1. The amount and procedure of alimony exaction for the persons mentioned in Articles 81-85 of the given Code can be established by the parties' consent.

2. In case of the absence of the parties' consent the amount of alimony exacted by judicial procedure in stable sum in each case is established by court proceeding from the property and family status of the parents and children and interests deserving attention. It is subject to paying each month.

3. If several persons simultaneously are obliged to take care of an alimony requiring family-member, the court, depending on their property and family status, establishes the share of each of them in fulfilling alimony obligations. While determination of alimony amount the court has the right to take into consideration all the persons obliged to pay alimony irrespective of whether the suit was presented against one, some or all of them.

CHAPTER 15

ALIMONY PAYING AGREEMENT

ARTICLE 87. CONCLUSION OF ALIMONY PAYING AGREEMENT

Alimony paying agreement (on alimony amount, conditions and procedure of paying) is concluded between the person obliged to pay alimony and the guardian, and in case of the person obliged to pay alimony and/or the recipient being incapable, between lawful representatives of these persons. Persons with restricted capability conclude alimony paying agreement with the consent of their lawful representatives.

ARTICLE 88. CONDITION OF ALIMONY PAYING AGREEMENT

Alimony paying agreement is concluded in writing and subject to notary ratification.

ARTICLE 89. PROCEDURE OF CONCLUSION, IMPLEMENTATION, ALTERATION, CANCELLATION AND RECOGNITION INVALID OF ALIMONY PAYING AGREEMENT

1. The norms of Civic Code on conclusion, implementation, alternation, cancellation and recognition invalid of civic-legal deals are applied with regard to conclusion, implementation, alternation, cancellation and recognition invalid of alimony paying agreement.

2. Alimony paying agreement can be alternated or cancelled at any time by the parties' mutual consent.

The condition of alternation or cancellation of alimony paying agreement should correspond to the condition of conclusion of alimony paying agreement.

3. Unilateral alternation or cancellation of alimony paying agreement is prohibited.

4. In case of essential changes in property and family status of parties as well as disagreement on alternation or cancellation of alimony paying agreement the interested party has the right to apply to court with the request of alternation or cancellation of the agreement. While consideration of the issue on alternation or cancellation of alimony paying agreement the court can take into consideration any interest of the parties deserving attention.

ARTICLE 90. RECOGNITION OF ALIMONY PAYING AGREEMENT VIOLATING THE INTERESTS OF THE ALIMONY RECEIVER INVALID

If the provisions stipulated by the alimony paying agreement on providing a child or major incapable family-member with living means essentially violate their interests (particularly, in case of not fulfilling the requirements of Provision 2, Article 91 of the given Code), such an agreement can be recognized invalid by judicial procedure with the requirement of lawful representative of the major incapable family-member, as well as the department of custody and guardianship.

ARTICLE 91. AMOUNT OF ALIMONY PAID BY ALIMONY PAYING AGREEMENT

1. The amount of alimony paid by the alimony paying agreement is established by the parties.

2. The amount of alimony determined for children by the alimony paying agreement cannot be less than the amount of the alimony exacted for them by judicial procedure.

ARTICLE 92. CONDITIONS AND PROCEDURE OF PAYING ALIMONY BY ALIMONY PAYING AGREEMENT

1. The conditions and procedure of alimony paying are determined by alimony paying agreement.

2. Alimony can be paid by ratio share on the earnings and/or other income of a person obliged to pay alimony, stable sum paid periodically, stable sum paid but once, by providing property, as well as other conditions agreed on.

3. Combination of different conditions on paying alimony can be stipulated by alimony paying agreement.

ARTICLE 93. INDEXATION OF THE PAID ALIMONY BY ALIMONY PAYING AGREEMENT

Indexation of the amount of the paid alimony is realized in accordance with alimony paying agreement. If the procedure of indexation is not stipulated by alimony paying agreement, the indexation is realized in accordance with Article 105 of the given Code.

CHAPTER 16

PROCEDURE OF ALIMONY PAYING AND EXACTION

ARTICLE 94. ALIMONY EXACTION BY JUDICIAL PROCEDURE

In case of the absence of alimony paying agreement family-members mentioned in Articles 68-86 of the given Code can apply to court with requirement of alimony exaction.

ARTICLE 95. TERMS OF APPLICATION FOR RECEIVING ALIMONY

1. A person having the right to receive alimony can apply to court for alimony exaction irrespective of the period passed from the emergence of alimony right, if in past alimony was not paid by alimony paying agreement.

2. Alimony is provided from the moment of court application. Alimony for the passed period can be exacted only for three years preceding court application, if the court establishes, that prior to court application measures were undertaken for receiving living

means, however, the alimony was not received as a consequence of an obliged person avoiding to pay alimony.

ARTICLE 96. ALIMONY EXACTION BEFORE THE SOLUTION OF THE ARGUMENT BY COURT

1. On the case of alimony exaction the court can make a decision on alimony exaction until the entry into force of the court verdict on alimony exaction, and in case of alimony exaction for children, until making a verdict on alimony exaction.

2. The amount of the exacted alimony is determined by court proceeding from property and family status of the parties. The amount of alimony exacted for children is determined in accordance with Article 69 of the given Code.

ARTICLE 97. OBLIGATION OF ADMINISTRATION OF ORGANIZATION KEEPING ALIMONY

The staff of the working place (organization) of a person obliged to pay alimony on the basis of alimony paying agreement or court order is obliged to keep alimony from the salary and/or other income of this person each month and pay or pass it to alimony recipient within no later than three days from the moment of paying salary and/or other income to the person obliged to pay alimony.

ARTICLE 98. KEEPING ALIMONY ON THE BASIS OF ALIMONY PAYING AGREEMENT

On the basis of alimony paying agreement keeping of alimony can be also applied in case if by this agreement or court order the total sum of the keepings exceeds 50% of earnings and other income of the person obliged to pay alimony.

ARTICLE 99. OBLIGATION OF A PERSON OBLIGED TO PAY ALIMONY TO INFORM ABOUT THE CHANGE OF WORKING PLACE

1. The staff of the organization keeping alimony on the basis of alimony paying agreement or court verdict is obliged to inform the bailiff of the alimony exaction verdict area and the alimony recipient on fining the person obliged to pay alimony, as well as on the new working or residence place, if this information is available, within three days.

2. A person obliged to pay alimony has to inform the bailiff of the alimony exaction verdict area and the alimony recipient on the new working or residence place, and in case of paying alimony to children also on having additional earnings and/or income, within the period mentioned in Provision 1 of the given Article.

3. In case of not providing the information mentioned in Provisions 1 and 2 of the given Article with unjustifiable excuses the guilty persons are liable by the procedure established by law.

ARTICLE 100. APPLICATION OF EXACTION ON THE PROPERTY OF THE PERSON OBLIGED TO PAY ALIMONY

1. Alimony exaction by the amount established by the alimony paying agreement or court order, as well as the exaction of alimony debt is applied to the earnings and/or other income of the person obliged to pay alimony. In case of insufficiency of earnings or income alimony is kept from the financial means of the person obliged to pay alimony kept in banks and other lending organizations, as well as financial means passed by contracts to trade and non-trade organizations, except for the ones that create transmission of property right. In case of insufficiency of these means exaction is applied to any other property, to which exaction can be applied by law, of the person obliged to pay alimony.

2. Application of exaction to the financial means kept on bank accounts and the property of the person obliged to pay alimony is realized in accordance with the procedure established by the Civic Procedure Code.

ARTICLE 101. DETERMINATION OF ALIMONY DEBT

1. Alimony exaction for the passed period on the basis of alimony paying agreement or court order is realized within a 3-year period preceding the submission of alimony paying agreement or court order.

2. If the alimony keeping by court order or alimony paying agreement was not realized because of the fault of the person obliged to pay alimony, alimony exaction is realized by judicial procedure for the whole period irrespective of a 3-year period established by Provision 2, Article 95 of the given Code.

3. The amount of alimony debt is determined by bailiff proceeding from the alimony amount determined by court verdict.

4. The amount of alimony debt paid for children in accordance with Article 69 of the given Code is determined proceeding from the earnings and/or other income of a person obliged to pay alimony for the period during which alimony exaction was not realized. If the person obliged to pay alimony did not work in that period, or is the documents proving his/her earnings and/or other income are not submitted, alimony debt is determined proceeding from the double minimal salary established by the RA law at the period of its exaction. If such determination of alimony debt essentially violates the interest of one of the parties, the party whose interests have been violated has the right to apply to court. The court, proceeding from the property and family status of the parties and interests deserving attention, determines alimony debt by stable sum.

ARTICLE 102. EXEMPTION FROM PAYING ALIMONY DEBT

1. In case of alimony payment on the basis of the party consent exemption from or diminishing of alimony debt is possible by the mutual consent of the parties, except for the cases of paying alimony to children.

2. Court can exempt a person obliged to pay alimony upon his/her request if it establishes that not paying of alimony was due to the illness or other justifiable reasons, and the property and family status of the person does not allow paying of the accumulated alimony debt.

ARTICLE 103. LIABILITY FOR NOT PAYING ALIMONY IN TIME

1. In case of emergence of debt as a fault of the person obliged to pay alimony by the alimony paying agreement the guilty person is liable by the procedure stipulated by the agreement.

2. In case of emergence of debt as a fault of the person obliged to pay alimony by the court verdict the guilty person pays fine of 0.05% of alimony amount to the alimony recipient for each day of delay.

The alimony recipient can also present an exaction requirement for not paying alimony in time from the guilty person for the share of damages caused by the delay of fulfillment of alimony obligations that are not covered by the fine.

ARTICLE 104. INADMISSION OF BY-ACCOUNTING AND ADJOURNING OF ALIMONY

1. Alimony cannot be by-accounted by other opposite requirements.

2. Sums paid as alimony cannot be required back unless:

a) the court verdict on alimony exaction has been eliminated for the reason of providing false information or false documents by the alimony recipient;

b) alimony paying agreement has been recognized invalid for the reason of being concluded under the lie, threat or violent actions of the recipient;

c) court verdict has established the fact of falsification of the court verdict, alimony paying agreement or court order, on the basis of which alimony was paid.

3. If the actions stipulated by Provision 2 of the given Article have been performed by the representative of a child or a major incapable alimony recipient, alimony exaction is not applied, and the sums of the paid alimony are exacted from the guilty representative by the suit of the person obliged to pay alimony.

ARTICLE 105. ALIMONY INDEXATION

Alimony amount for the purpose of indexation is established by court by stable sum corresponding to a particular number of minimal salaries.

ARTICLE 106. ALIMONY PAYING IN CASE OF A PERSON OBLIGED TO PAY ALIMONY LEAVING FOR A FOREIGN STATE FOR PERMANENT RESIDENCE

1. A person, leaving for a foreign state for permanent residence, can conclude alimony paying agreement with the family members who he/she is obliged to provide with living means in accordance with Articles 87, 88, 91 and 92 of the given Code.

2. In case of not conclusion of an agreement an interested person can apply to court for determination of alimony amount by stable sum and paying alimony but once, or for provision of particular property as alimony or paying alimony by other ways.

ARTICLE 107. ALTERNATION OF ALIMONY SUM ESTABLISHED BY COURT AND EXEMPTION FROM PAYING ALIMONY

1. If in case of the absence of alimony paying agreement after determination of alimony amount by judicial procedure the property or family status of one of the parties has changed, the court can alter the established alimony amount upon the requirement of any party or exempt the person obliged to pay alimony from its paying. While alternation of alimony amount or exaction from paying alimony the court can take into consideration interests of parties deserving attention.

2. The court can reject alimony exaction for a major capable person, if it is established that he/she committed an intended crime against the person obliged to pay alimony or the major capable person behaved immorally in the family.

ARTICLE 108. SUSPENSION OF ALIMONY OBLIGATIONS

1. Alimony obligations established by alimony paying agreement are suspended in case of death of one of the parties, by termination of the application term of the agreement or other grounds stipulated by the agreement.

2. Alimony exaction by judicial procedure is suspended in case of:

a) a child attaining majority or obtaining full capability before reaching majority;

b) adoption of a child for whose living alimony was exacted;

c) restoration of capability of alimony recipient or termination of vulnerability;

d) conclusion of a new marriage of an incapable, vulnerable and alimony recipient former spouse;

e) death of an alimony recipient or a person obliged to pay alimony.

PART VI

REARING METHODS OF CHILDREN DEPRIVED OF PARENTAL CARE

CHAPTER 17

REVELATION AND PLACEMENT OF CHILDREN DEPRIVED OF PARENTAL CARE

ARTICLE 109. PROTECTION OF RIGHTS AND INTEREST OF CHILDREN DEPRIVED OF PARENTAL CARE

1. Protection of rights and interests of children in case of parents' death, their deprivation of parental rights, restriction of parental rights, recognition of parents incapable, avoidance of parents of rearing of children and protection of their rights and interests (particularly, refusal of parents to take their children from rearing, medical, population social protection and other organizations), as well as the absence of parental care and other cases is put on the departments of custody and guardianship.

Departments of custody and guardianship reveal the children deprived of parental care, register these children, and, proceeding from certain aspects of being deprived of parental care, choose the ways of placement of these children.

The activity on placement of the children deprived of parental care by legal and natural persons besides the departments of custody and guardianship is prohibited, except for the cases stipulated by the RA Legislation.

2. The departments of custody and guardianship are bodies of local self-governance.

Under the departments of custody and guardianship commissions of custody and guardianship are created, the staff of which is presented by the head of community and approved by the community council.

The charters of the departments of custody and guardianship are approved by the RA Government.

(Amended per HO-144-N Law dated 08.07.2005).

ARTICLE 110. REVELATION AND REGISTRATION OF CHILDREN DEPRIVED OF PARENTAL CARE

1. The establishment officials (preschool educational, educational, medical and other organizations) who have information on the children mentioned in Provision 1, Article 109 of the given Code, are obliged to inform about that the departments of custody and guardianship of the virtual location of children.

Within three days after getting such information the department of custody and guardianship is obliged to implement examination of living conditions of a child and in case of revelation of the absence of care by parents or relatives provide protection of rights and interests of a child until the solution of his/her placement issue.

2. The heads of rearing, medical, population social protection and other organizations (where children deprived of parental care are placed), within seven days from the day when they learned that a child can be given to a family for rearing are

obliged to inform about that the department of custody and guardianship of the location of the given organization.

3. Within 3 days after the receipt of information stipulated by Provisions 1 and 2 of the given Code the department of custody and guardianship sends this information to the marz administration (Yerevan municipality), as well as provides the placement of a child.

Within 3 days after the receipt of such information on children the marz administration (Yerevan municipality) implements registration of children and informs about that the body authorized by the RA Government, as well as provides the protection of rights and interests of these children.

The body authorized by the RA Government implements centralized registration of children deprived of parental care, and assists to further placement of these children in families.

The procedure of centralized registration of children deprived of parental care is approved by the RA Government.

4. The heads and officials of the organizations mentioned in Provisions 2 and 3 of the given Code are liable by the procedure established by law for not fulfillment of their obligations, presenting unconcealed false information, as well as performance of such activities that are directed to concealing a child from giving to a family for rearing.

(Amended per HO-144-N Law dated 08.07.2005).


ARTICLE 111. PLACEMENT OF CHILDREN DEPRIVED OF PARENTAL CARE

1. Children deprived of parental care are subject to giving for rearing to a family (adoption), guardian or foster family, and in case of absence of such possibility, all kinds of organizations (rearing, medical, population social protection etc.) for children deprived of parental care.

While placement of a child his/her ethnic origin, certain religious or culture belonging, native tongue, possibilities of providing continuity of rearing and education should be taken into consideration.

2. Until placement of children deprived of parental care in families or organizations mentioned in Provision 1 of the given Code, the fulfillment of obligations of a child's guardian are temporary put on the department of custody and guardianship.

3. The list of organizations provided for the accommodation of orphans or children deprived of parental care as well as the procedure of accommodation is established by the RA Government. (recognized invalid per HO-144-N Law dated 08.07.2005)

(Amended per HO-144-N Law dated 08.07.2005).


CHAPTER 18


CHILDREN ADOPTION

ARTICLE 112. CHILDREN SUBJECT TO ADOPTION

1. Adoption is a legal act according to which adopters and adopted obtain rights and obligations stipulated by law for parents and children.

Adoption is considered a most preferable way of placement of children deprived of parental care.

2. Adoption is allowed only with regard to children and proceeding from their interests, keeping the requirements of paragraph 2, Provision 1, Article 111 of the given Code, as well as taking into consideration the possibilities of complete physical, mental, spiritual and moral development of children.

3. Adoption of siblings by different persons is prohibited, except for the cases when such adoption proceeds from a child's interests.

4. Adoption of children of the RA citizenship by foreign citizens and stateless persons, as well as RA citizens residing out of the RA territory is allowed only in cases if it is impossible to give these children for rearing to the families of the RA citizens permanently living in the RA territory or adopt children by their relatives. Information on children subject to adoption is given to foreign citizens and stateless persons, as well as RA citizens residing out of the RA territory after three months of centralized registration of the mentioned children.

(Amended per HO-144-N Law dated 08.07.2005).


ARTICLE 113. PROCEDURE OF CHILDREN ADOPTION

1. Adoption is implemented by court on the basis of an application from a person wishing to adopt a child. The consideration of a case on approval of adoption is conducted by special course in accordance to the procedure established by the Civic Procedure Code.

The court conducts the cases on approval of adoption with the obligatory presence of the department of custody and guardianship and a person wishing to adopt.

2. For child adoption the conclusion of the RA marz administrations (Yerevan municipality) on the grounds of adoption and correspondence of adoption to the interests of an adopted child, mentioning information on the facts of personal contacts between the adopted child and adopter/adopters, is necessary.

The control over child adoption as well as the conditions of life and rearing of children in the families of adopters in the RA territory is realized in accordance with the procedure established by law.

3. Rights and obligations of an adopted child and adopter/adopters emerge after the entry into force of the court verdict on adoption.

Within three days after the entry into force of the court verdict on adoption approval, the court is obliged to send the extract of the verdict to the state Civic Status Registration Department of the area of the verdict adoption.

Child adoption is subject to state registration in accordance with the procedure established by the RA Law "On Civic Status Acts".

(Amended per HO-144-N Law dated 08.07.2005).

ARTICLE 114. REGISTRATION OF CHILDREN SUBJECT TO ADOPTION AND PERSONS WISHING TO ADOPT

1. Registration of children subject to adoption is realized in accordance with the procedure established by Provision 3, Article 110 of the given Code.

2. Registration of persons wishing to adopt is realized in accordance with the procedure established by the RA Government.

Registration of foreign citizens and stateless persons, as well as RA citizens residing out of the RA territory wishing to adopt a child of the RA citizenship is realized by the body authorized by the RA Government.

(Amended per HO-144-N Law dated 08.07.2005).


ARTICLE 115. INADMISSION OF AN INTERMEDIARY ACTIVITY TO CHILDREN ADOPTION

1. Intermediary activity to child adoption (i.e. any activity directed to child selection and presenting for adoption realized by other persons on behalf of the persons wishing to adopt and according to their interests) is prohibited. The activity of the departments of custody and guardianship, the marz administration (Yerevan municipality) and the body authorized by the RA Government is not considered as such.

2. Persons wishing to adopt can participate to the process of adoption individually or through their lawful representative.

3. Persons conducting intermediary activity to child adoption are liable in accordance with the procedure established by law.

(Amended per HO-144-N Law dated 08.07.2005).


ARTICLE 116. PERSONS WHO HAVE THE RIGHT TO ADOPT

1. Major persons can become adopters except for:

a) the persons recognized incapable or restrictedly capable by court;

b) spouses, one of who is recognized incapable or restrictedly capable by court;

c) persons deprived of parental rights by judicial procedure or with restricted parental rights;

d) persons discharged from the obligations of a guardian for the reason of not fulfilling properly the obligations put on them by law;

e) former adopters, if adoption was terminated by their fault;

f) the persons who cannot implement parental rights because of health reasons.

The list of diseases in case of which a person cannot adopt a child, take him/her for guardianship, take into family for rearing, is approved by the RA Government;

g) persons, who at the moment of adoption do not have sufficient income to provide minimal living needs of a child;

h) persons, who do not possess permanent place of residence, as well as an accommodation which corresponds to the established sanitary and technical requirements;

i) persons who at the moment of adoption have convictions for grace or particularly grave crimes against a human being or public order and morality.

2. Unmarried persons cannot jointly adopt the same child.

3. If several persons simultaneously wish to adopt the same child preference right is given to the relatives and foster-parents of a child with the condition that the requirements stipulated by Provisions 1 (except for points "g" and "h") and 2 of the given Article and the interests of an adopted child will be taken into account.

(Amended per HO-144-N Law dated 08.07.2005).

ARTICLE 117. AGE DIFFERENCE BETWEEN THE ADOPTER AND ADOPTED CHILD

1. Age difference between the unmarried adopter and an adopted child should not be less than 18 years.

2. In case of child adoption by a foster-father/foster-mother age difference restriction established by Provision 1 of the given Article is not applied.

ARTICLE 118. PARENTS' CONSENT FOR CHILD ADOPTION

1. Written consent of parents in necessary for child adoption. The consent of parents or guardians of minor parents is also necessary for adoption of their child, and in case of the absence of parents or guardians, the consent of the department of custody and guardianship.

The parents' consent for child adoption should be presented by an application verified by a notary procedure or by the head of organization, where a child deprived of parental care is accommodated, as well as the consent can be expressed directly during adoption case consideration in court.

2. Parents can take back their consent for child adoption before the court verdict on child adoption enters into force.

3. Parents can give consent for child adoption by a certain person or without mentioning a certain person. Consent for child adoption can be given only after the birth of a child.

(Amended per HO-144-N Law dated 08.07.2005).

ARTICLE 119. CHILD ADOPTION WITHOUT PARENTS' CONSENT

Parents' consent for child adoption is not required in the following cases:

a) they are unknown or the court has recognized them missing;

b) the court has recognized them incapable;

c) the court has deprived them of parental rights;

d) they do not live with the child for more than a year by the reasons recognized by court unjustifiable and avoid rearing and keeping the child.

ARTICLE 120. CONSENT FOR CHILD ADOPTION OF GUARDIANS AND FOSTER PARENTS IN WHOSE FAMILY A CHILD DEPRIVED OF PARENTAL CARE RESIDES

1. For adoption of children under the care of guardians the consent of guardians is necessary.

For adoption of children residing in foster families the consent of the foster family is necessary.

2. The court can make a verdict on a child adoption without the consent of the persons mentioned in Provision 1 of the given Article proceeding from the child's interests.

ARTICLE 121. CONSENT OF AN ADOPTED CHILD FOR ADOPTION

1. Consent of a child above 10 is necessary for his/her adoption.

2. If before submission of an adoption application a child lived in the family of the adopter and considers him/her a parent, as an exception adoption can be realized without child's consent.

ARTICLE 122. CONSENT OF AN ADOPTER'S SPOUSE FOR ADOPTION

1. Written consent of a spouse is necessary for a child adoption by the other spouse, if the child is not being adopted by both spouses.

2. Written consent of the second spouse for child adoption is not necessary if the spouses have terminated marriage relations, do not live together for more than one year and the residence place of the second spouse is not known.

ARTICLE 123. NAME, FAMILY NAME AND PATRONYMIC OF AN ADOPTED CHILD

1. For an adopted child his/her name, family name and patronymic can be kept.

2. Patronymic of an adopted child is determined by the adopter's name of the adopter is male, and if the adopter is female, by the name of a person mentioned by her as a child's father.

3. Upon the adopter's request the adopted child is given the adopter's family name, as well as the name mentioned by him/her.

4. If the family names of adopter spouses are different, the adopted child is given the family name of one of the spouses by their consent.

5. In case of child adoption by an unmarried person upon his/her request the name, family name and patronymic of a child's father/mother is registered in the state birth register by the adopter's direction.

6. Alternation of the name, family name and patronymic of an adopted child above 10 can be realized only with his/her consent, except for the cases stipulated by Provision 2, Article 121 of the given Code.

7. The fact of alternation of an adopted child's name, family name and patronymic is mentioned in court verdict on his/her adoption.


ARTICLE 124. ALTERNATION OF BIRTH PLACE AND BIRTH DATE OF AN ADOPTED CHILD

1. With the purpose of provision of adoption secret the birth date (not more than by 3 months) and the birth place of an adopted child can be altered upon the adopter's request.

Alternation of birth date of an adopted child is allowed only in case of adoption of a child under 1 year old.

2. The fact of alternation of an adopted child's birth date and/or place is mentioned in court verdict on his/her adoption.


ARTICLE 125. REGISTRATION OF ADOPTERS AS PARENTS OF AN ADOPTED CHILD

1. Upon the request of the adopters the court can make a decision on registration of the adopters as the child's parents in the state birth register.

2. The child's consent is necessary for making such a registration with regard to a child above 10, except for the cases stipulated by Provision 2, Article 121 of the given Code.

3. The necessity to register as the parents of the adopted child is mentioned in court verdict on his/her adoption.


ARTICLE 126. LEGAL CONSEQUENCES OF CHILD ADOPTION

1. The adopted children and their descendants with regard to the adopters and their relatives, as well as the adopters and their relatives with regard to the adopted children and their descendants are equated with the relatives by origin in their personal property and non-property rights and obligations.

2. The adopted lose personal property and non-property rights with regard to their parents (relatives) and are exempted from obligations.

3. In case of a child adoption by a single person the personal property and non-property rights and obligations can be kept by mother's wish if the adopter is male and by father's wish if the adopter is female.

4. If one of the parents of the adopted child has died, by the request of a dead parent (child's grandmother or grandfather) the personal property and non-property rights and obligations can be kept with regard to the relatives of the dead parent, if it corresponds to the child's interests.

The right of the relatives of the dead parent to communicate with an adopted child is realized in accordance with the procedure established by Article 56 of the given Code.

5. The fact of keeping relations between the adopted child and one of the parents or the relatives of the dead parent is mentioned in court verdict on his/her adoption.

6. The legal consequences of child adoption stipulated by Provisions 1 and 2 of the given Article emerge irrespective of registration of the adopter in the birth act registration paper of the child.

7. A woman who adopts an infant has the right to maternity leave established by the RA Labor Code and other established privileges.


ARTICLE 127. KEEPING THE PENSION RIGHT OF AN ADOPTED CHILD

A child, who at the moment of adoption had the right of pension for the reason of parents' death, keeps this right also after the adoption.

(Amended per HO-144-N Law dated 08.07.2005).


ARTICLE 128. SECRET OF CHILD ADOPTION

1. The secret of child adoption is protected by law.

The judges making a verdict on child adoption or the head and the staff of the body of Civic Status Registration Department realizing state registration of adoption, as well as other persons aware on adoption are obliged to keep the secret of child adoption.

2. Persons, mentioned in Provision 1 of the given Article who publicize the secret of child adoption contrary to the will of the adopters, are liable in accordance with the procedure established by law.


ARTICLE 129. CANCELLATION OF CHILD ADOPTION

1. Child adoption is cancelled by judicial procedure.

2. The case on cancellation of child adoption is considered with obligatory participation of the departments of custody and guardianship.

3. Adoption terminates after the entry into force of the court verdict on cancellation of child adoption.

Within three days after the entry into force of court decision on cancellation of child adoption the court is obliged to send the extract of the verdict to the state Civic Status Registration Department of the area of state registration of adoption.


ARTICLE 130. GROUNDS FOR CANCELLATION OF CHILD ADOPTION

1. Child adoption can be cancelled if the adopters avoid the fulfillment of the parental obligations put on them, overdo parental rights, treat an adopted child cruelly, suffer from chronic alcohol, drag or toxic addiction, as well as in case of the appearance

of a parent recognized dead or missing by court, reconsideration of the relevant verdict of the court, restoration of capability of the parents recognized incapable by their request.

ARTICLE 131. PERSONS WHO HAVE RIGHT TO REQUIRE CANCELLATION OF ADOPTION

The child's parents, adopters, department of custody and guardianship, as well as the adopted child over 18, in cases stipulated by Article 133 of the given Code, have the right to require cancellation of adoption.

ARTICLE 132. CONSEQUENCES OF CANCELLATION OF CHILD ADOPTION

1. In case of cancellation of adoption by judicial procedure the mutual rights and obligations of the adopted child and adopters (their relatives) are removed, and the mutual rights and obligations of he child and his/her parents are restored if the child's interests require the latter.

2. In case of cancellation of adoption the child is given to the parents by the court verdict. If the parents are absent or giving the child to the parents contradicts to his/her interests, the child is given to the department of custody and guardianship.

3. Simultaneously with the case on cancellation of adoption the court considers the issue of keeping the name, family name and patronymic given to the child at the time of adoption, as well as the changed data on birth place and date.

Alternation of the name, family name and patronymic of the child above 10 is possible with the child's consent.

ARTICLE 133. INADMISSION OF CANCELLATION OF ADOPTION WHEN AN ADOPTED CHILD ATTAINS MAJORITY

The cancellation of adoption is prohibited in case a requirement to cancel the adoption is submitted when the adopted child has attained majority, except for the cases when there is a mutual consent of the adopter, adopted child and the child's parents, if the parents are alive, not deprived of parental rights, or the court has not recognized them incapable.

CHAPTER 19

CUSTODY AND GUARDIANSHIP TOWARDS A CHILD

ARTICLE 134. CHILDREN WITH REGARD TO WHO CUSTODY AND GUARDIANSHIP IS ESTABLISHED

1. Custody and guardianship is established with regard to the children who are deprived of parental care with the purpose of keeping, rearing and educating children, as well as protection of their rights and interests.

2. Custody and guardianship is established and removed by the procedure established by the Civic Code.

ARTICLE 135. GUARDIANS OF CHILDREN

1. Only the major capable persons can be appointed guardians of children with their consent.

2. While the appointment a child's guardian ethical and other personal features of the guardian, his/her ability to fulfill obligations, relations between the child and the guardian, attitude of the guardian's family members toward the child, as well as the child's will, if it is possible, are taken into consideration.

3. Persons chronically alcohol, drug and toxic addicted, persons who committed intended crimes against life and health, persons exempted from guardian obligations, persons exempted of parental rights, persons with restricted parental rights, former adopters, if the adoption was cancelled as their fault, as well as persons who cannot fulfill the obligations of a child's rearing because of weak health, are not appointed guardians.

ARTICLE 136. GUARDIANSHIP TOWARDS CHILDREN IN REARING, MEDICAL, POPULATION SOCIAL PROTECTION AND OTHER ORGANIZATIONS

1. A guardian is not appointed towards a child in rearing, medical, population social protection and other organizations under full state care. Fulfillment of his/her obligations is put on the organization.

Temporary placement of a child by a guardian in these organizations does not remove the rights and obligations of a guardian towards the child.

2. A guardian mentioned in Provision 1 of the given Article does not have the right to restrict a child's communication with parents and other close relatives, except for the cases when this communication contradicts to the child's interests.

3. Civic rights and obligations of a guardian are established by the Civic Code.

4. Guardians fulfill the guardian obligations towards a child under guardianship without remuneration.

CHAPTER 20

FOSTER FAMILY

ARTICLE 137. AGREEMENT ON GIVING A CHILD TO A FAMILY FOR REARING

1. Rearing of a child/children can be implemented in a foster family on the basis of an agreement on giving a child to a family for rearing.

A foster family is one of the ways of placement of a child (children) deprived of parental care with rearing purposes.

The citizens (spouses or separate persons) who have expressed a wish to take a child (children) deprived of parental care for rearing are considered foster parents. A child (children) given to a foster family for rearing is considered a foster child, and a family consisting of foster parents and foster children is considered a foster family.

An agreement on giving a child to a family is concluded between the department of custody and guardianship and the foster parents (spouses or separate citizens, who wish to take a child to their family with rearing purposes).

2. The Charter on foster family is approved by the RA Government.

3. Child/children are given to a foster family for rearing for a period stipulated by an agreement until he/she/they attain majority.

4. The terms of a child's living, rearing and education, rights and obligations of foster parents, obligations of a department of custody and guardianship towards the foster family, as well as the grounds and consequences of termination of an agreement, should be stipulated by an agreement on giving child/children to a family.

The amount of remuneration of foster parents for care and rearing of foster children is established by the RA Government.

5. An agreement on giving a child to a family for rearing can be cancelled prior to expiry by the initiative of foster parents in case of good reason (disease, alternation of family or property status, absence of mutual understanding with child/children, clashes between children etc.), as well as by the initiative of the department of custody and guardianship in case of emerging of poor conditions for keeping, rearing and educating child/children in a foster family, or giving child/children back to the parents, as well as in case of adoption.

(Amended per HO-144-N Law dated 08.07.2005).


ARTICLE 138. FOSTER PARENTS

1. Major RA citizens residing in the RA territory can be appointed foster parents, except for:

a) persons recognized by court incapable or partly capable;

b) spouses, one of who is recognized by court incapable or partly capable;

c) persons deprived of parental rights by judicial procedure or with restricted parental rights;

d) persons removed from their obligations of guardians for the reason of non-proper fulfillment of the obligations put on them by law;

e) former adopters, if the adoption was cancelled by court because of their fault;

f) persons who cannot realize parental rights for the reason of poor heath;

g) persons whose income at the moment cannot meet the minimal living conditions of a child; (recognized invalid per HO-144-N Law dated 08.07.2005)

h) persons who do not have permanent place of residence, as well as an accommodation which corresponds to the established sanitary and technical requirements;

i) persons who at that moment have conviction for a grave or particularly grave crime against a person or public order and morality.

2. Selection of foster parents is implemented by the departments of custody and guardianship keeping the requirements stipulated by Provision 2, Article 135 of the given Code.

3. Foster parents obtain rights and obligations of a guardian with regard to child/children given for rearing.

(Amended per HO-144-N Law dated 08.07.2005).


ARTICLE 139. CHILD/CHILDREN GIVEN TO A FOSTER FAMILY FOR REARING

1. Child/children deprived of parental care (including children in rearing, medical, population social protection and other organizations) are given to a foster family for rearing.

Children suffering from acute or chronic infectious disease cannot be given to a foster family for rearing, unless the foster family insists on the contrary.

2. Preliminary selection of child/children for giving to a foster family is realized by the persons wishing to take a child in family for rearing, with consent of the department of custody and guardianship.

Giving siblings to different foster families is prohibited, except for the cases when it proceeds from their interests.

3. Giving child/children to a foster family is realized taking into consideration the opinion of a child above 10.

4. Child/children given to a foster family keep the alimony, pension rights, as well as the right of ownership and usage of accommodation, and in case of the absence of accommodation, the right to be granted accommodation.

Child/children given to a foster family also obtain rights stipulated by Articles 42-44 of the given Code.

5. Adoption of a child given to a foster family for rearing is realized by general terms, in accordance with the procedure established by the given Code. An agreement on giving a child to a family for rearing expires at the moment of adoption.

(Amended per HO-144-N Law dated 08.07.2005).


ARTICLE 140. TAKING CARE OF CHILD/CHILDREN GIVEN TO A FOSTER FAMILY

1. For keeping each child a foster family receives monthly payments by the procedure and amount established by the RA Government.

The provision of means for keeping of each child, as well as remuneration for the work of foster parents is made at the expense of the RA state budget, as well as other means non-prohibited by the Legislation.

2. The department of care and guardian ship is obliged to provide a foster family with necessary assistance, promote creation of necessary facilities for child/children's life and rearing, as well as monitor fulfillment of obligations put on foster parents.

(Amended per HO-144-N Law dated 08.07.2005).


PART VII


APPLICATION OF FAMILY CODE WITH REGARD TO FAMILY RELATIONS WITH FOREIGN CITIZENS AND STATELESS PERSONS


ARTICLE 141. MARRIAGE CONCLUSION IN THE TERRITORY OF THE REPUBLIC OF ARMENIA

Marriage between foreign citizens and stateless persons in the RA territory is concluded in accordance with the procedure established by the RA Legislation.


ARTICLE 142. MARRIAGE CONCLUSION IN CONSULATES

1. Marriage of the RA citizens residing out of the RA territory is concluded in the RA consulates.

2. Marriages of foreign citizens concluded in the foreign consulates in the Republic of Armenia are valid on reciprocal basis.


ARTICLE 143. RECOGNITION OF MARRIAGES CONCLUDED OUT OF THE TERRITORY OF THE REPUBLIC OF ARMENIA

1. Marriages between the RA citizens, and RA and foreign citizens or stateless persons, concluded out of the RA territory in accordance with the legislation of a relevant state, are valid in the Republic of Armenia in case of consular legalization.

2. Marriages between foreign citizens, concluded out of the RA territory in accordance with the legislation of a relevant state, are valid in the Republic of Armenia in case of consular legalization.


ARTICLE 144. INVALIDITY OF MARRIAGES CONCLUDED IN OR OUT OF THE TERRITORY OF THE REPUBLIC OF ARMENIA

Invalidity of marriages concluded in or out of the RA territory is determined by the legislation, which was applied during the marriage conclusion.

### ARTICLE 145. MARRIAGE CANCELLATION

1. Marriage cancellation between the RA and foreign citizens or stateless persons, as well as the foreign citizens is realized in the Republic of Armenia in accordance with the procedure established by the RA Legislation.

2. Divorces between the RA citizens, and RA and foreign citizens or stateless persons, concluded out of the RA territory in accordance with the legislation of a relevant state, are valid in the Republic of Armenia in case of consular legalization.

3. Divorces between foreign citizens, concluded out of the RA territory in accordance with the legislation of a relevant state, are valid in the Republic of Armenia in case of consular legalization.

### ARTICLE 146. PERSONAL NON-PROPERTY AND PROPERTY RIGHTS AND OBLIGATIONS OF SPOUSES

1. Personal non-property and property rights ad obligations of spouses are established by the legislation of the state, at the territory of which they possess common place of residence, and in case of the absence of common place of residence, by the legislation of the state, at the territory of which they possessed the last common place of residence. Personal non-property and property rights and obligations of spouses who do not possess common place of residence are established by the RA Legislation.

2. Spouses who do not possess common place of residence or common citizenship, during concluding marriage contracts or alimony paying agreement can choose the legislation to be applied for determination of their rights and obligations by marriage contract or alimony paying agreement. If the spouses do not choose the legislation to be applied, the norms established by Provision 1 of the given Article are applied with regard to marriage contract or alimony paying agreement.

### ARTICLE 147. DETERMINATION AND CONTESTING OF PATERNITY/MATERNITY

Determination and contesting of paternity/maternity in the RA territory is realized in accordance with the procedure established by the RA Legislation. In cases, if determination of paternity/maternity is lawful in the state Civic Status Registration Departments, parents of a child who live out of the RA territory and at least one of who is recognized a RA citizen, can apply with paternity/maternity determination request to the RA consulates.

ARTICLE 148. RIGHTS AND OBLIGATIONS OF PARENTS AND CHILDREN

Rights and obligations of parents and children (in particular, obligation of parents to provide living means of children), are established by the legislation of the state, at the territory of which they possess common place of residence. In case of the absence of common residence place of parents and children, rights and obligations of parents and children are determined by the legislation of the state of citizenship of the child. Upon applicant's request with regard to alimony obligations and other relations between parents and children the legislation of the state in the territory of which the child permanently resides can be applied.

ARTICLE 149. ALIMONY OBLIGATIONS OF MAJOR CHILDREN AND OTHER FAMILY MEMBERS

Alimony obligations of major children in favor of parents, as well as alimony obligations of other family members are determined by the legislation of the state, at the territory of which they possess common place of residence. In case of the absence of common place of residence, such obligations are determined by the legislation of the state of citizenship of a person to receive alimony.

ARTICLE 150. ADOPTION

1. Adoption by foreign citizens or stateless persons or RA citizens residing out of the RA territory, as well as cancellation of adoption in the RA territory, is realized in accordance with the procedure established by the RA Legislation.

Adoption of a child, citizen of the RA, by foreign citizens and stateless persons or RA citizens residing out of the RA territory is realized by the decision of the RA Government, in case of preliminary agreement.

In case of adoption of a foreign citizen child by the RA citizens in the RA territory, it is necessary to receive the agreement of a lawful representative of the child and the authorized body of the citizenship state of the child, as well as the agreement for adoption of a child above 10, if it is required by the legislation of the mentioned state.

2. If as a consequence of adoption the rights of a child stipulated by the RA Legislation and the RA international treaties may be violated the adoption cannot be realized regardless of the adopter's citizenship, and the implemented adoption is subject to cancellation by judicial procedure.

3. Protection of the rights and interests of a child with the RA citizenship adopted out of the RA territory by foreign citizens or stateless persons, within the limits of the allowed norms of international law is implemented by the RA consulates, where the mentioned children are registered until they attain majority, if nothing else is stipulated by the RA international treaties.

(Amended per HO-144-N Law dated 08.07.2005).

The procedure of registration of children with the RA citizenship adopted out of the RA territory by foreign citizens or stateless persons in the RA consulates is approved by the RA Government.

4. Adoption of a child with the RA citizenship and residing out of the RA citizenship, which was realized by the authorized body of the state of citizenship of the adopter, is valid in the Republic of Armenia by the decision of the RA Government, in case of preliminary agreement.

## ARTICLE 151. ASCERTAINING OF THE NORMS OF FOREIGN FAMILY LAW

1. While the application of the norms of foreign family law the court, Civic Status Registration Department and other departments ascertain the contents of those norms in the relevant state, in accordance with their official interpretation and application practice.

With the purpose of ascertaining the contents of foreign family law norms the court, Civic Status Registration Department and other departments can apply by the established procedure to the RA or foreign authorized bodies for getting the relevant ascertaining, or invite experts.

The interested persons have the right to present the documents certifying the contents of foreign family law norms, which they present as grounds for their requirements and reservations, or in other words, have the right to assist the court, Civic Status Registration Department and other departments in ascertaining the contents of foreign family law norms.

2. If by the measures undertaken according to Provision 1 of the given Article the contents of a foreign family law norm is not ascertained within reasonable terms, the RA Legislation is applied.

## ARTICLE 152. RESTRICTION OF APPLICATION OF FOREIGN FAMILY LAW

The norms of foreign family law are not applied if such application contradicts to the law and order (public order) of the Republic of Armenia. In such cases the RA Legislation is applied.

## PART VIII

### CONCLUSIVE AND TRANSITIONAL PROVISIONS

## ARTICLE 153. ENTRY INTO FORCE OF THE GIVEN CODE

1. The given Code enters into force three months after the official publication.

Within a year after the day of entry into force it is necessary to bring the laws and other legal acts including norms of Family Code into line with the Code.

Until bringing the laws and other legal acts including norms of Family Code into line with the Code they are applied unless they contradict the Code.

2. After the entry of the given Code into force the RA Family and Marriage Code (18.07.1969) and the decree of the RA Supreme Council Presidency on "Putting the RA Family and Marriage Code into Application" (27.11.1969) are recognized invalid.

8.12.2004
HO-123-N