*Dias v. Dias,* 3:24-CV-04471-EMC (N.D. Cal.)

**Expert Rebuttal Report of Ms. Ashkhen Dashyan**

Counterarguments

Mrs. Shirinyan (hereinafter the Expert), being an anthropologist, has attempted to view domestic violence issues exclusively as a social phenomenon, attempting to reveal the causes in the scope of national views and morals. Thus, she has given the issue a social rather than legal assessment, addressing the phenomenon of "domestic violence" from the perspective of public attitudes rather than the state's approach to this issue. Therefore, in such circumstances, the observations made by the expert may not reflect a complete picture of the legal protection measures and existing mechanisms for domestic violence cases in the Republic of Armenia.

II. The expert notes that she conducted her research for 24 months starting from 2012, during which time she was in the Republic of Armenia, i.e., until 2014. In this case, I believe that if certain research findings were collected in the Republic of Armenia regarding any situation, almost 10 years have passed since that study. During these years, great progress has been made in the Republic of Armenia; moreover, a law on domestic violence was adopted in 2017, after which the tools for protection against domestic violence were further strengthened in other Armenian laws. In other words, the findings of the study conducted by the expert in 2012-2014 cannot reflect the situation and legal landscape in the Republic of Armenia from 2014-2024, as 10 years is a long time. The research conducted by the expert does not apply to 2024.

III. In the Republic of Armenia, everyone, including foreigners, regardless of their nationality and whether they are women or children, receives equal protection. Therefore, the argument that children and women in Armenia who are not Armenian will not find appropriate protection is not true.

IV. Regarding the expert's observations on the information provided by the NGO on Ending Violence Against Women, I would like to state:

If the majority of women do not report cases of violence to the police and only do so when there is a serious threat, it is not due to a lack of trust in the Armenian police, but rather due to certain national stereotypes where Armenian women do not want to publicize information about their families. However, this stereotype has also been overcome, as:

"The right to privacy and family life is protected by the RA Law "On Prevention of Domestic and Household Violence and Protection of Persons Subjected to Domestic and Household Violence", specifically by virtue of Article 22 of the same law. Private life details received regarding cases of violence, victims of violence, and alleged victims of violence related to criminal cases are confidential. It is prohibited to disclose or disseminate information through mass media or other means without the consent of the victim of violence. Police officers, support center staff, and shelter staff are prohibited by law from publishing details and violations of the RA law provide for liability and compensation for damages.

Quote from Article 22 of the law:

1. Personal data received by competent authorities regarding cases of domestic and household violence and/or criminal cases related to victims or alleged victims of domestic and household violence are confidential. It is prohibited to publish information through mass media or other means that would allow revealing the identity of victims or alleged victims of domestic and household violence without their consent, unless otherwise provided by the legislation of the Republic of Armenia.

2. Competent police officers, support center and shelter staff are prohibited from disclosing the location of victims of domestic and household violence placed in shelters and persons under their care, or any other information that could reveal their location.

3. Violation of the right to privacy of private or family life entails liability prescribed by law, and damage caused to a person as a result thereof is subject to compensation in the manner prescribed by law.

Therefore, this stereotype has long been overcome, and victims of violence freely report such cases, confident in the protection provided by law to their privacy and personal life.

In the Republic of Armenia, police never rely on the concept of family reconciliation or avoid talking to the parties or children. On the contrary, the police are guided by the authority given to them by law at the time and immediately involve a psychologist if they need to hear a child and initiate measures.

The claim that the police response to domestic violence cases is issuing "warnings" and that they issue many warnings in domestic violence cases rather than other decisions is not true, as this is refuted by the data recorded in the RA Human Rights Defender's 2023 Annual Report, according to which, quote:

"According to information received from the Ministry of Internal Affairs, 508 cases of domestic violence were investigated during 2023, of which: 2 by a domestic partner, 267 by a husband against his wife, 45 by a former husband against his wife, 3 by a wife against her husband, 45 by a parent against a child, 44 by a child against a parent, 102 cases by other family members. Of the 508 recorded cases, 441 were cases of physical violence, 63 of psychological violence, and 4 of sexual violence."

During 2023, special police unit officers made 551 decisions on issuing a warning and 832 decisions on urgent intervention based on domestic violence alerts received by the RA Police.

In other words, according to official data, as we can see, warnings were fewer, while urgent intervention decisions were more frequent - exceeding by almost 40 percent.

According to information received from the Ministry of Internal Affairs, as recorded in the 2023 annual report of the RA Human Rights Defender, quote:

"Out of 551 decisions on issuing a warning made against persons who committed violence, in 26 cases the violence was continuous. In all these cases, the records against the persons who committed violence continued to be kept. Out of 1383 protection measures taken, 132 were violated, of which 45 violations were reported to the police by the person subjected to domestic violence, while 87 were detected by police officers."

This indicates that in general, the number of cases of domestic violence detected by the police is higher than those reported by victims of violence, which suggests that the police independently take measures in this direction, proactively detect such cases and apply measures without limiting themselves to reports from victims of violence or waiting for such alerts.

According to information received from the Ministry of Internal Affairs, as recorded in the 2023 annual report of the RA Human Rights Defender, quote:

"Out of 1383 protection measures taken (warnings, urgent intervention decisions), 38 were appealed through higher authorities, of which 21 were left unchanged, 5 were satisfied, 1 was partially satisfied, and for 10 no administrative proceedings were initiated (the appeal deadline set by law was missed), and 1 is in progress. During 2023, criminal proceedings were initiated for 508 cases of domestic violence."

These data indicate that even when appealed, the warning and urgent intervention decisions made by the police are not lifted, and cases of overturning these decisions are fewer. For instance, out of 38 complaints, 21 were left unchanged.

It is also noteworthy that criminal proceedings were initiated for 508 cases of domestic violence registered during 2023, meaning that for all domestic violence cases, not only administrative proceedings and protective sanctions, but also criminal proceedings are initiated in parallel. For example, according to the Human Rights Defender's 2023 annual report, criminal proceedings were initiated for all 508 cases of violence, parallel to administrative proceedings.

According to information received from the Ministry of Internal Affairs, as recorded in the 2023 annual report of the RA Human Rights Defender, quote:

"According to clarifications received from the RA Investigative Committee, during 2023, 1 criminal proceeding was initiated under Article 118 of the RA Criminal Code adopted on April 18, 2003, for which the preliminary investigation is underway. During 2023, 1490 cases of domestic violence were recorded, for which criminal proceedings were initiated (under Articles 155, 44-155, 166-167, 171, 192, 194, 195, 196, 198-201, 239, 241, 243, 247-248, 251, 253, 254, 264, 300, and 507-508 of the RA Criminal Code). Of these criminal proceedings, 307 were sent to court with an indictment, 505 were dismissed, of which 432 were dismissed based on Article 12, Part 1, Clause 1 of the RA Criminal Procedure Code and Article 13, Part 1, Clause 1 of the RA Criminal Procedure Code, 73 were dismissed based on Article 13, Part 1, Clause 3 of the RA Criminal Procedure Code, and in 2 cases the term of criminal prosecution was suspended based on Article 193, Part 2, Clause 1 of the RA Criminal Procedure Code. According to information received from the RA Investigative Committee, during 2023, training courses were conducted within the framework of programs on "Preventing and Combating Violence against Women and Domestic Violence in Armenia" and "Characteristics of Violence against Children and Specifics of Investigation" in which 82 persons holding autonomous positions participated."

These official data suggest that protection measures for domestic violence cases are effective, moreover, training courses are always conducted for police officers, and many cases are sent to court with indictments.

According to the data stated in the RA Human Rights Defender's 2023 Annual Report, quote:

"In 2023, the state undertook improving legislative regulations regarding the protection of rights of persons subjected to domestic violence. Draft packages of amendments and additions to the Law on 'Prevention of Domestic Violence, Protection of Persons Subjected to Domestic Violence, and Restoration of Family Harmony' and related laws have been developed, seeking to regulate several issues, including partner relationships in combating domestic violence, harassment, etc.

In particular, the draft solutions propose that domestic and household violence is considered physical, sexual, psychological or economic violent acts, neglect or harassment committed between family members or partners or former partners. It should be noted that the same package of drafts was adopted in the first reading on February 7 of this year."

It is noteworthy that according to the data contained in the RA Human Rights Defender's 2023 Annual Report, on November 17, 2023, the RA Government adopted the Decision N 1986-N "On Defining the Procedure for Application and Financing of Electronic Monitoring Means, as well as Maintaining the Database of the Electronic Monitoring System and Using the Data," as a result of which it is possible to ensure the effectiveness of protection measures for persons subjected to domestic violence through the use of electronic monitoring means.

According to information received from the Ministry of Labor and Social Affairs, a draft version of the 2024-2028 strategy and action plan for implementing gender policy in the Republic of Armenia was developed in 2023.

In the newly developed strategic document, in addition to the new priorities present in the previous one, a new priority has been added: "Overcoming gender-based violence and discrimination, preventing and overcoming violence against women and girls and domestic violence, and protecting and supporting women and girls subjected to violence," highlighting several sectoral issues and plan of activities aimed at solving them.

A draft decision of the RA Government "On Making Additions and Amendments to the Decision of the Government of the Republic of Armenia N 1381-N of October 10, 2019" has been developed, aimed at implementing an effective electronic system for centralized registration of domestic violence cases.

Regarding the arguments presented by the expert in paragraph 23, they are presented exclusively against a political background and are not of legal nature. They do not reflect the developments taking place in the Republic of Armenia.

Regarding the observations about the "Polygraph" nightclub in 2023, I note that there was an official clarification from the RA Police that the Police actions in the club on that day were related to preventing illegal drug circulation and not gender-related issues. Police Chief V. Ghazaryan also spoke about this in the National Assembly, and the video material is available on the official website of the RA National Assembly.

Regarding the expert's claims about the absence of a national hotline, I inform you that on the official website of the Ministry of Labor and Social Affairs of the Republic of Armenia, an announcement is published in a way accessible to everyone, which states that the RA Ministry of Labor and Social Affairs provides support center services to persons subjected to domestic violence. The service provided by the support center may include:

1. Providing consultation through hotline service,

2. Socio-psychological support,

3. Legal consultation,

4. Assistance in employment for the person subjected to domestic violence,

5. Advising the person applying to the support center on their rights, available services, and the procedure for using other protection measures prescribed by law.

The services provided are co-financed by the Ministry of Labor and Social Affairs and outsourced to NGOs. To use the services of support centers, it is necessary to call the hotline number of the support center operating in your preferred location, and a list with corresponding phone numbers is also published. (See this active link https://www.mlsa.am/blockpage/79)

In other words, it has been the state intent and initiative to finance NGOs by delegating the issue of providing support to persons subjected to domestic violence. It is not left solely to NGOs.

Regarding the expert's claims concerning the facts of the case, they are based exclusively on Mrs. Dias's statements and the materials presented.

As for the expert's claim that when the children return to Armenia, Mrs. Dias will have to return to the Republic of Armenia and have contacts with Mr. Dias regarding the issue of sharing custody of the children, I note that in the RA, both in extrajudicial and judicial proceedings, when the court takes up the issue of custody over child, the parties can reside at separate addresses, ask the court for temporary protection measures - for example, the children live with the mother parent until the court resolves the dispute, and Mr. Dias receives a visitation order, which implies interaction between the children and the father without the attendance of the mother parent, at the father's place of residence, as a result of which the parties can minimize their communication with each other as much as possible.

This means that if the children want to actually live with the mother parent, and maintain communication and connection with the father parent, it can be carried out in any way ruled by the court and if any of the parties violates it, legal consequences can be provided for that party for non-compliance with the judicial act.

Regarding the circumstance of the parties being foreigners, it is noteworthy that in the Republic of Armenia, foreigners can have protection on equal grounds with RA citizens. It is stated in the national laws of the RA that foreigners are endowed with rights as well as procedural and protection means on an equal basis with RA citizens.

So the fact that the parties are foreigners and reside in the RA does not in any way constrain either the police or other bodies to assume protection in cases when foreigners apply for protection. A vivid proof of this is Mrs. Dias's report, to which the police responded immediately and even made an urgent intervention decision without hearing Mr. Dias.

Enclosed:

Attachment 1 - The judgment delivered on 28.11.2023 by the European Court in the case of "Ghazaryan v. Armenia" (Application No. 30129/21) in proceedings under the Hague Convention on the Civil Aspects of International Child Abduction, with my participation.

Attachment 2 - The RA Law "On Prevention of Domestic and Household Violence and Protection of Persons Subjected to Domestic and Household Violence".

Attachment 3 - Article 22 of the RA Law "On Prevention of Domestic and Household Violence and Protection of Persons Subjected to Domestic and Household Violence".

Attorney Ashkhen Dashyan (signature)

*I, Varduhi Lavchyan, a professional translator having the knowledge of both Armenian and English languages declare that I am licensed by the Ministry of Justice of the Republic of Armenia (date: June 10, 2013) to perform translations from English into Armenian and vice versa.*
*I have personally translated this document into English and it is a complete, accurate and true translation of the attached document in Armenian.*

*October 3, 2024*

**Varduhi Lavchyan**

Հակափաստարկներ

I. Տիկին Շիրինյանը (այսուհետ՝ Փորձագետ) լինելով, որպես մարդաբան, ընտանեկան բռնությանը վերաբերող խնդիրները փորձել է դիտարկել բացառապես սոցիալական երևույթի, փորձել է պատճառները վեր հանել ազգային հայացքների ու բարքերի ներքո, այդպիսով խնդրին տալով ոչ թե իրավական, այլ սոցիալական գնահատական, անդրադառնալով «ընտանեկան բռնության» երևույթին հանրության վերաբերմունքի տեսակետից և ոչ պետության վերաբերմունքը այդ հարցում, ուստի նման պարագայում փորձագետի կողմից արված դիտարկումներն կարող են ոչ ամբողջական պատկեր արտացոլել ՀՀ-ում ընտանեկան բռնության գործերով իրավական պաշտպանության միջոցների և գործող կառուցակարգերի վերաբերյալ:

II. Փորձագետը նշում է, որ իր հետազոտությունը իրականացրել է 2012թ-ից 24 ամիս, և այդ ընթացքում գտնվել ՀՀ-ում, այսինքն մինչն 2014թ-ը, նման պարագայում, կարծում եմ, որ եթե որոշակի ուսումնասիրության արդյունքներ են հավաքագրվել ՀՀ-ում որևէ իրավիճակի վերաբերյալ, ապա փորձագետի ուսումնասիրությունից անցել է գրեթե 10 տարի, իսկ այդ տարիներին մեծ առաջընթաց է գրանցվել ՀՀ-ում, ավելին ընտանեկան բռնության վերաբերյալ ընդունվել է օրենք 2017թ-ին, որից հետո ՀՀ այլ օրենքներում առավել ամրապնդվել են ընտանեկան բռնության դեմ պաշտպանության գործիքակազմերը: Այսինքն փորձագետի կողմից 2012-2014թ կատարված ուսումնասիրության արդյունքները չեն կարող արտացոլել նաև 2014-2024թ-ի իրավիճակը, իրավական պատկերը ՀՀ-ում, քանի որ 10 տարին երկար ժամանակ է: Փորձագետի կողմից կատարված հետազոտությունը չի վերաբերվում 2024թ-ին:

III. Հայաստանի Հանրապետությունում բոլորը՝ այդ թվում օտարերկրացիները անկախ իրենց ազգությունից և կին/երեխա լինելու հանգամանքից ստանում են հավասար պաշտպանություն, հետևաբար այն փաստարկը, որ Հայաստանում երեխաները և կանայք, ովքեր հայ չեն իրեն համապատասխան պաշտպանություն չեն գտնի, դա այդպես չէ:

IV. Կանանց նկատմամբ բռնության դադարեցման ՀԿ կողմից ներկայացված տեղեկությունների մասով փորձագետի դիտարկումների մասով հայտնեմ,

Եթե կանանց մեծ մասը ոստիկանություն չի դիմում բռնության դեպքերով և դիմում են այն ժամանակ, երբ լուրջ վտանգ է սպառնում, ապա այն ոչ թե պայմանավորված է ՀՀ ոստիկանության նկատմամբ վստահության բացակայությամբ, այլ ազգային որոշակի կրծրատիպերով, երբ հայ կանայք չեն ցանկանում ընտանիքի վերաբերյալ տեղեկությունները հանրայնացնել, սակայն այդ կարծրատիպը ևս հաղթահարվել է, քանի որ

**«Ընտանեկան և կենցաղային բռնության կանխարգելման և ընտանեկան և կենցաղային բռնության ենթարկված անձանց պաշտպանության մասին» ՀՀ օրենքով մասնավոր և ընտանեկան կյանքի անձեռնմխելիության իրավունքը պաշտպանված** է, մասնավորապես նույն օրենքի 22-րդ հոդվածի ուժով և բռնության դեպքերի, բռնության ենթարկվածների և ենթադրաբար բռնության ենթարկվածներին առնչվող հանցագործության դեպքերի վերաբերյալ ստացված մասնավոր կյանքի տվյալները գաղտնի են, արգելվում է առանց բռնության ենթարկված համաձայնության գանգվածային լրատվության միջոցով կամ այլ եղանակով բացահայտել, տարածել, արգելք է սահմանված նաև ոստիկանության աշխատողների, առաջկցության կենտրոնների, ապաստարանի աշխատակիցների համար հրապարակել տվյալներ, իսկ խախտումներն ՀՀ օրենքով նախատեսում է պատասխանատվություն, վնասների հատուցում:

մեջբերում օրենքի 22-րդ հոդվածից

1. Իրավասու մարմինների կողմից ընտանեկան և կենցաղային բռնության դեպքերի և(կամ) ընտանեկան և կենցաղային բռնության ենթարկվածներին կամ ենթադրաբար ընտանեկան և կենցաղային բռնության ենթարկվածներին առնչվող հանցագործության դեպքերի վերաբերյալ ստացված մասնավոր կյանքի տվյալները գաղտնի են: Արգելվում է առանց ընտանեկան և կենցաղային բռնության ենթարկվածի կամ ենթադրաբար ընտանեկան և կենցաղային բռնության ենթարկվածի համաձայնության գանգվածային լրատվության միջոցներով կամ այլ եղանակով նրանց վերաբերյալ այնպիսի տեղեկության հրապարակումը, որը թույլ կտա բացահայտել նրանց ինքնությունը, եթե այլ բան նախատեսված չէ Հայաստանի Հանրապետության օրենսդրությամբ:
2. Ոստիկանության իրավասու ծառայողներին, աջակցության կենտրոնի և ապաստարանի աշխատակիցներին արգելվում է հրապարակել ապաստարանում տեղավորված՝ ընտանեկան և կենցաղային բռնության ենթարկվածների և նրանց խնամքի

տակ գտնվող անձանց գտնվելու վայրը կամ այլ տեղեկություն, որի միջոցով հնարավոր է հայտնաբերել նրանց գտնվելու վայրը:

3. Մասնավոր կամ ընտանեկան կյանքի անձեռնմխելիության իրավունքի խախտումն առաջացնում է օրենքով նախատեսված պատասխանատվություն, իսկ դրա հետևանքով անձին պատճառված վնասը ենթակա է հատուցման՝ օրենքով սահմանված կարգով:

Հետևաբար այդ կարծրատիպը վաղուց հաղթահարված է, իսկ բռության ենթարկված անձինք անկաշկանդ հաղորդում են ներկայացնում նման դեպքերում, համոզված լինելով օրենքով տրված պաշտպանությունը իրենց մասնավոր և անձնական կյանքի անձեռնմխելիությանը:

ՀՀ-ում ոստիկանները, երբեք չեն ապավինում ընտանեկան հաշտեցման ընմբռնմանը և խուսափում կողմերի, երեխաների հետ խոսելուց, այլ հակառակը ոստիկանությունը տվյալ պահին առաջնորդվում է օրենքով իրեն տրված լիազորությամբ և անմիջապես ներգրավում է հոգեբան, եթե երեխային պետք է լսի և նախաձեռնում միջոցներ:

Այն որ իբրև ոստիկանության արձագանքը ընտանեկան բռության դեպքերով «նախազգուշացում» տալն է և  շատ նախազգուշացումներ է տալիս ընտանեկան բռության դեպքերով, քան այլ որոշումներ այդպես չէ, քանի որ նշվածը հերքվում է **ՀՀ Մարդու իրավունքների պաշտպանի 2023թ-ի տարեկան հողորդմամբ արձանագրած տվյալներով,** ըստ որի մեջբերում՝

«Ըստ Ներքին գործերի նախարարությունից ստացված տեղեկությունների՝ 2023 թվականի ընթացքում քննվել է ընտանիքում բռության 508 դեպք, որից՝ կենակցի կողմից 2, ամուսնու կողմից կնոջ նկատմամբ-267, նախկին ամուսնու կողմից կնոջ նկատմամբ-45, կնոջ կողմից ամուսնու նկատմամբ-3, ծնողի կողմից զավակի նկատմամբ-45, զավակի կողմից ծնողի նկատմամբ-44, ընտանիքի այլ անդամների կողմից-102 դեպք: Արձանագրված 508 դեպքից 441-ը՝ ֆիզիկական, 63-ը՝ հոգեբանական, 4-ը՝ սեռական բռության դեպքեր են:

2023 թվականի ընթացքում ՀՀ ՆԳՆ ոստիկանությունում ստացված ընտանիքում բռության վերաբերյալ ահազանգերով ոստիկանության մասնագիտացված

ստորաբաժանման ծառայողները ահազանգով կայացրել են թվով 551 նախազգուշացման, իսկ թվով <u>832-ով՝ անհետաձգելի միջամտության որոշումներ:»</u>

Այսինքն համաձայն պաշտոնական տվյալների ինչպես տեսնում ենք նախազգուշացումները ավելի քիչ են կազմել, իսկ անհետաձգելի միջամտության որոշումներ ավելի շատ՝ գրեթե 40 տոկոսով գերազանցում է:

ՀՀ Մարդու իրավունքների պաշտպանի 2023թ-ի տարեկան հաղորդմամբ արձանագրած տվյալների Ներքին գործերի նախարարությունից ստացված տեղեկությունների համաձայն, մեջբերում

«Բռնություն գործադրած անձի նկատմամբ կայացված թվով 551 նախազգուշացման որոշումներից 26-ի դեպքում բռնությունը կրել է շարունակական բնույթ: Նշված բոլոր դեպքերով բռնություն գործադրած անձանց նկատմամբ հաշվառումները շարունակվել են: Կայացված թվով 1383 պաշտպանության միջոցներից խախտվել են 132-ը, որոնցից՝ 45-ի խախտման մասին ոստիկանությանը հայտնել է ընտանիքում բռնության ենթարկված անձը, իսկ 87-ը՝ հայտնաբերվել է ոստիկանության ծառայողի կողմից:»:

Նշվածը փաստում է, որ առհասարակ ընտանեկան բռնության խախտման դեպքերով ոստիկանության կողմից հայտնաբերված բռնության դեպքերի թիվը ավելի շատ է, քան բռնության ենթարկված անձի կողմից, ինչից հետևում է, որ ոստիկանությունը ինքնուրույն միջոցներ է ձեռնարկում այդ ողղությամբ, իր նախաձեռնությամբ հայտնաբերում նման դեպքերը և կիրառում միջոցներ՝ չսահմանափակվելով բռնության ենթարկված անձանց հաղորդումներով կամ սպասելով նման ահազանգի:

ՀՀ Մարդու իրավունքների պաշտպանի 2023թ-ի տարեկան հաղորդմամբ արձանագրած տվյալների Ներքին գործերի նախարարությունից ստացված տեղեկությունների համաձայն, մեջբերում՝

«Կայացված թվով 1383 պաշտպանության միջոցներից /նախազգուշացում, անհետաձգելի միջամտության որոշում/ վերադասության կարգով բողոքարկվել են 38-ը, որոնցից 21-ը թողնվել են անփոփոխ, 5-ը բավարարվել են, մասնակի բավարարվել է 1-ը, 10-ով վարչական վարույթ չի հարուցվել /օրենքով սահմանված բողոքարկման ժամկետը բաց է թողնվել/ և 1-ը գտնվում է ընթացքի մեջ: 2023 թվականի ընթացքում գրանցված ընտանիքում բռնության թվով 508 դեպքով նախաձեռնվել է քրեական վարույթ:»:

Նշված տվյալները փաստում են, որ ոստիկանության կողմից կայացված նախազգուշացման, անհետաձգելի միջամտության որոշումները  նույնիսկ բողոքարկման ժամանակ այն չի վերացվում և ավելի նվազ են կազմում այդ որոշումների վերացման դեպքերը, օրինակ 38 բողոքներից  թվով 21-ը թողնվել է նույնը:

Նաև հատկանշական է այն, որ 2023 թվականի ընթացքում գրանցված ընտանիքում բռնության թվով 508 դեպքով նախաձեռնվել է քրեական վարույթ, այսինքն ընտանեկան բռնության բոլոր գործերով ոչ միայն նախաձեռնվում է վարչական կարգով վարույթներ և պաշտպանական սանկցաներ, այլն զուգահեռ հարուցվում են քրեական վարույթներ, օրինակ համաձայն Մարդու իրավունքների պաշտպանի 2023թ տարեկան հաղորդման 508 բռնության դեպքով  էլ նախաձեռնվել է քրեական վարույթ վարչական վարույթին զուգահեռ:

ՀՀ Մարդու իրավունքների պաշտպանի 2023թ-ի տարեկան հաղորդմամբ արձանագրած տվյալների Ներքին գործերի նախարարությունից ստացված տեղեկությունների համաձայն, մեջբերում՝

«ՀՀ քննչական կոմիտեից ստացված պարզաբանումների համաձայն՝ 2023 թվականի ընթացքում Հայաստանի Հանրապետության 2003 թվականի ապրիլի 18-ին ընդունված ՀՀ քրեական օրենսգրքի 118-րդ հոդվածով նախաձեռնվել է 1 քրեական վարույթ, որով նախաքննությունը շարունակվում է:2023 թվականի ընթացքում արձանագրվել է ընտանիքում բռնության 1490 դեպք, որոնցով նախաձեռնվել են քրեական վարույթներ (ՀՀ քրեական օրենսգրքի 155-րդ, 44-155-րդ, 166-167-րդ, 171-րդ, 192-րդ, 194-րդ, 195-րդ, 196-րդ, 198-201-րդ, 239-րդ, 241-րդ, 243-րդ, 247-248-րդ, 251-րդ, 253-րդ, 254-րդ, 264-րդ, 300- րդ և 507-508-րդ հոդվածների հատկանիշերով): Նշված քրեական վարույթներից 307-ը՝

մեղադրական եզրակացությամբ ուղարկվել է դատարան, 505-ը՝ կարճվել է, որից 432-ը՝ կարճվել է ՀՀ քրեական դատավարության օրենսգրքի 12 հոդվածի 1-ին մասի 1-ին կետով և ՀՀ քրեական դատավարության օրենսգրքի 13 հոդ. 1 մասի 1 կետի հիմքով, 73-ը՝ կարճվել է ՀՀ քրեական դատավարության օրենսգրքի 13 հոդ. 1 մասի 3 կետի հիմքով, 2-ով կասեցվել է քրեական հետապնդման ժամկետը՝ ՀՀ քրեական դատավարության օրենսգրքի 193-րդ հոդվածի 2-րդ մասի 1-ն կետով: ՀՀ քննչական կոմիտեից ստացված տեղեկությունների համաձայն՝ 2023 թվականի ընթացքում <<Հայաստանում կանանց նկատմամբ բռնության և ընտանեկան բռնության կանխարգելումը ու դրա դեմ պայքարը>> և <<Երեխայի նկատմամբ բռնության բնութագիրը և քննության առանձնահատկությունները>> ծրագրերի շրջանակներում իրականացվել են վերապատրաստման դասընթացներ, որոնց մասնակցել է 82 ինքնավար պաշտոն զբաղեցնող անձ:»:

Նշված պաշտոնական տվյալներից հետևում է, որ ընտանեկան բռնության դեպքերով պաշտպանության միջոցները էֆեկտիվ են /արդյունավետ/, ավելին ոստիկանության աշխատակիցների համար իրականացվում են միշտ դասընթացներ, շատ գործեր մեղադրական դատավճռով ուղարկվում են դատարան:

ՀՀ Մարդու իրավունքների պաշտպանի 2023թ-ի տարեկան հաղորդմամբ արձանագրած տվյալների համաձայն, մեջբերում՝

«2023 թվականի ընթացքում պետության կողմից քայլեր են ձեռնարկվել ուղղված ընտանիքում բռնության ենթարկված անձանց իրավունքների պաշտպանության առնչությամբ օրենսդրական կարգավորումների բարելավմանը: Մշակվել են ««Ընտանիքում բռնության կանխարգելման, ընտանիքում բռնության ենթարկված անձանց պաշտպանության և ընտանիքում համերաշխության վերականգնման մասին» օրենքում փոփոխություններ և լրացումներ կատարելու մասին» օրենքի և հարակից օրենքների փոփոխությունների նախագծերի փաթեթներ, որոնցով փորձ է արվել կարգավորել մի շարք հարցեր, այդ թվում՝ ընտանիքում բռնության դեմ պայքարում գույքնկերային հարաբերությունները, հետամտումը և այլն:

Մասնավորապես, նախագծային լուծումներով նախատեսվում է, որ ընտանիքում և կենցաղային բռնություն է համարվում ֆիզիկական, սեռական, հոգեբանական կամ տնտեսական բռնի արարքը, անտեսումը կամ հետամտումը, որոնք կատարվել են ընտանիքի անդամների կամ զուգընկերների կամ նախկին զուգընկերների միջև։ Հարկ է նկատել, որ նույն նախագծերի փաթեթը սույն թվական փետրվարի 7-ին ընդունվել է առաջին ընթերցմամբ։»


Հատկանշական է այն, որ ՀՀ Մարդու իրավունքների պաշտպանի 2023թ-ի տարեկան հաղորդմամբ արձանագրած տվյալների համաձայն 2023 թվականի նոյեմբերի 17-ին ընդունվել է ՀՀ կառավարության «Էլեկտրոնային հսկողության միջոցների կիրառման և ֆինանսավորման, ինչպես նաև էլեկտրոնային հսկողության համակարգի տվյալների շտեմարանը վարելու, տվյալներից օգտվելու կարգը սահմանելու մասին» N 1986-Ն որոշումը, ինչի արդյունքում հնարավոր է էլեկտրոնային հսկողության միջոցների կիրառմամբ ապահովել ընտանիքում բռնության ենթարկված անձանց պաշտպանության միջոցների կիրառման արդյունավետությունը։


Աշխատանքի և սոցիալական հարցերի նախարարությունից ստացված տեղեկությունների՝ 2023 թվականին մշակվել է ՀՀ-ում գենդերային քաղաքականության իրականացման 2024-2028թթ. ռազմավարության և միջոցառումների ծրագրի նախագծային տարբերակը։


Նոր մշակվող ռազմավարական փաստաթղթում, բացի նախորդում առկա նոր գերակայություններից, ավելացվել է նոր գերակայություն՝ «Գենդերային բռնության և խտրականության հաղթահարում, կանանց և աղջիկների նկատմամբ բռնության և ընտանեկան բռնության կանխարգելում, հաղթահարում և բռնության ենթարկված կանանց և աղջիկների պաշտպանություն և աջակցություն», որտեղ առանձնացված են ուղղային մի շարք խնդիրներ և դրանց լուծման ուղղված միջոցառումների ծրագրեր։


Մշակվել է «Հայաստանի Հանրապետության Կառավարության 2019 թվականի հոկտեմբերի 10-ի N 1381-Ն» որոշման մեջ լրացումներ և փոփոխություններ կատարելու մասին» ՀՀ կառավարության որոշման նախագիծ՝ ուղղված ընտանիքում բռնության

դեպքերի կենտրոնացված հաշվառման արդյունավետ իրականացման էլեկտրոնային համակարգի ներդրումը:»:

Ինչ վերաբերվում է փորձագետի 23-րդ կետում շարադրված փաստարկներին, ապա դրանք բացառապես քաղաքական ֆոնի ներքո են ներկայացվել և չունեն իրավական բնույթ: Դրանք չեն համընկնում ՀՀ-ում տեղի ունեցող զարգացումներին:

Ինչ վերաբերվում է 2023թ «Պոլիգրաֆ» գիշերային ակումբի վերաբերյալ դիտարկումներին, ապա նշեմ, որ ՀՀ ոստիկանության կողմից պաշտոնական պարզաբանում է եղել, որ տվյալ օրը Ոստիկանության գործողությունները ակումբում պայմանավորված են եղել թմրամիջոցների ապօրինի շրջանառությունը կանխելու հետ և ոչ գենդերային, այդ մասին նաև ոստիկանապետ Վ Ղազարյանը ԱԺ-ում ելույթ է ունեցել և հայտնել այդ մասին, տեսանյութը հասանելի ՀՀ Ազգային ժողովի պաշտոնական կայք էջում:

Ինչ վերաբերվում է ազգային թեժ գծի բացակայության վերաբերյալ փորձագետի պնդումներին, ապա հայտնեմ, որ Հայաստանի Հանրապետության աշխատանքի և սոցիալական հարցերի նախարարության պաշտոնական կայք էջում բոլորի համար հասանելի եղանակով հրապարակված է հայտարարություն, ըստ որի ասվում է, որ ՀՀ աշխատանքի և սոցիալական հարցերի նախարարությունը աջակցության կենտրոնների ծառայություններ է տրամադրում ընտանիքում բռնության ենթարկված անձանց: Աջակցության կենտրոնի կողմից տրամադրվող ծառայությունը կարող է ներառել՝

1. թեժ գիծ ծառայության միջոցով խորհրդատվության տրամադրում,
2. սոցիալ-հոգեբանական աջակցություն,
3. իրավաբանական խորհրդատվություն,
4. օժանդակում՝ ընտանիքում բռնության ենթարկված անձին աշխատանքի տեղավորման հարցում,
5. տեղեկացում՝ աջակցության կենտրոն դիմած անձին իր իրավունքների, հասանելի ծառայությունների և այլ օրենքով սահմանված պաշտպանության միջոցներից օգտվելու կարգի մասին:

Ծառայությունները մատուցվում են **Աշխատանքի և սոցիալական հարցերի նախարարության համաֆինանսավորմամբ՝ հասարակական կազմակերպություններին պատվիրակելու միջոցով**: Աջակցության կենտրոնների ծառայություններից օգտվելու համար անհրաժեշտ է զանգահարել Ձեզ նախընտրելի վայրում գործող աջակցության կենտրոնի թեժ գիծ հեռախոսահամարով, նաև հրապարակված է ցանկը՝

համապատասխան հեռախոսահամարներով:/տես այս ակտիվ հղումում https://www.mlsa.am/blockpage/79

Այսինքն պետության կամքն ու նախաձեռնություն է եղել ֆինանսավորել հասարակական կազմակերպություններին պատվիրակելով ընտանեկան բռնության ենթարկված անձանց աջակցության տրամադրման հարցում: Այն չի թողնված բացառապես հասարակական կազմակերպությունների վրա:

Ինչ վերաբերվում է գործի փաստերի վերաբերյալ փորձագետի պնդումներին, ապա այն հիմնված են բացառապես տիկին Դիասի հայտարարությունների և ներկայացված նյութերի հիման վրա:

Ինչ վերաբերվում է փորձագետի կողմից նշված այն պնդմանը, որ  երբ երեխաները վերադառնան Հայաստան, տիկին Դիասը ստիպված է լինելու վերադառնալ ՀՀ և երեխաների խնամակալությունը կիսելու հարցով շփումներ ունենալ Պարոն Դիասի հետ, ապա նշեմ, որ ՀՀ-ում առկա ինչպես արտադատական, այնպես էլ դատական վարույթներով, երբ դատարանը քննության է վերցնում երեխաների խնամակալության հարցը, կողմերը կարող են բնակվել առանձին հասցեներում, դատարանից խնդրել ժամանակավոր պաշտպանության միջոցներ՝ օրինակ երեխաները մինչև դատարանի կողմից վեճի լուծումը բնակվեն մայր ծնողի հետ, իսկ պարոն Դիասը ստանա շփման տեսակցության կարգ, որը ենթադրում է երեխաների և հոր շփում առանց մայր ծնողի մասնակցության, հոր բնակության վայրում, որի արդյունքում կողմերը հնարավորինս նվազագույնի կարող են հասցնել միմյանց հետ շփումը:

Այսինքն, եթե  երեխաները ցանկանում են փաստացի ապրել մայր ծնողի հետ, իսկ հայր ծնողի հետ շփումներ և կապեր պահպանել, կարող են այն դատարանի որոշման հիման վրա ցանկացած եղանակով  իրականացվել, իսկ կողմերից որևէ մեկի կողմից այն խախտելու դեպքում կարող է տվյալ կողմի համար նախատեսվել իրավական հետևանքներ դատական ակտը չկատարելու համար:

 Ինչ վերաբերվում է կողմերի օտարերկրացի հանդիսանալու հանգամանքին, ապա հատկանշական է այն ՀՀ-ում օտարերկրացիները ՀՀ քաղաքացիների հետ հավասար հիմքերով կարող են պաշտպանություն ունենալ, ՀՀ ազգային օրենքներում ամրագրված է այն դրույթը, որ օտարերկրացիները ՀՀ քաղաքացիների հետ հավասար իրավունքներով են օժտված, հավասար դատավարական և պաշտպանության միջոցներով օժտված:

Այսինքն այն փաստը, որ կողմերը օտարերկրացի են և բնակվում են ՀՀ-ում, որևէ կերպ չի կաշկանդում թե ոստիկանությանը և թե այլ մարմիններին ստանձնել պաշտպանություն այն դեպքերում, երբ օտարերկրացիները կդիմեն պաշտպանության, նշվածի վառ ապացույցն է տիկին Դիասի հաղորդումը, որին անհապաղ արձագանք է տվել ոստիկանությունը և նույնիսկ առանց պարոն Դիասին լսելու անհապաղ կայացրել է անհետաձգելի միջամտության որոշում:

Կից ներկայացնում եմ՝

Հավելված 1- Իմ մասնակցությամբ «Երեխայի միջազգային առևանգման քաղաքացիական մոտեցումների մասին» Հաագայի կոնվենցիայի վարույթով Եվրոպական դատարանի կողմից «Ղազարյանն ընդդեմ Հայաստանի» գործով (գանգատ թիվ 30129/21) 28.11.2023թ կայացված վճիռը :

Հավելված 2- «Ընտանեկան և կենցաղային բռնության կանխարգելման ու ընտանեկան և կենցաղային բռնության ենթարկված անձանց պաշտպանության մասին» ՀՀ օրենքը :

Հավելված 3- «Ընտանեկան և կենցաղային բռնության կանխարգելման ու ընտանեկան և կենցաղային բռնության ենթարկված անձանց պաշտպանության մասին» ՀՀ օրենքի 22-րդ հոդված

Փաստաբան Աշխեն Դաշյան