

EUROPEAN COURT OF HUMAN RIGHTS
COUR EUROPÉENNE DES DROITS DE L'HOMME

FOURTH SECTION

CASE OF GHAZARYAN v. ARMENIA

(Application no. 30129/21)

JUDGMENT

STRASBOURG

28 November 2023

*This judgment is final but it may be subject to editorial revision.*



**In the case of Ghazaryan v. Armenia,**

The European Court of Human Rights (Fourth Section), sitting as a Committee composed of:

Tim Eicke, *President,*
Branko Lubarda,
Ana Maria Guerra Martins*, judges*,

and Valentin Nicolescu, *Acting Deputy Section Registrar,*

Having regard to:

the application (no. 30129/21) against the Republic of Armenia lodged with the Court under Article 34 of the Convention for the Protection of Human Rights and Fundamental Freedoms ("the Convention") on 2 June 2021 by a Dutch national, Mr Petros Ghazaryan, born in 1975 and living in Kranenburg ("the applicant") who was represented by Mr A. Ghazaryan and Ms A. Dashyan, lawyers practising in Yerevan;

the decision to give notice of the complaints concerning the alleged violation of the principle of equality of arms, the applicant's right to respect for his family life to the Armenian Government ("the Government"), represented by their Agent, Mr Y. Kirakosyan, Representative of the Republic of Armenia on International Legal Matters, and to declare inadmissible the remainder of the application;

the decision of 29 April 2022 to grant priority treatment to the application under Rule 41 of the Rules of Court;

the parties' observations;

Having deliberated in private on 7 November 2023,

Delivers the following judgment, which was adopted on that date:

## SUBJECT MATTER OF THE CASE

1. The case concerns the manner in which the courts in Armenia dealt with the applicant's request for the return of his daughter to her habitual place of residence (Germany) under the Hague Convention on the Civil Aspects of International Child Abduction ("the Hague Convention").

2. In 2012 the applicant and A.S. got married in Armenia.

3. At some point thereafter they moved to the Netherlands where their daughter, L. was born on 14 July 2017.

4. In November 2017 the family moved to Germany.

5. On 16 October 2019, with the applicant's consent, A.S. took L., who was two years and three months old at that time, to Armenia. It was allegedly agreed that they would return to Germany on 10 November 2019, but later A.S. refused to do so. Following their return to Armenia, L. was granted Armenian nationality based on A.S.'s application. Then, A.S. initiated civil proceedings to have L's custody but those proceedings were later discontinued because A.S. had not attended two consecutive court hearings.

GHAZARYAN v. ARMENIA JUDGMENT

6. On 28 November 2019, at the applicant's request, the Ministry of Justice of Armenia instituted administrative proceedings under the Hague Convention which were terminated on 23 March 2020 because the applicant lodged a claim with the court (see paragraph 7 below).

7. On 24 February 2020 the applicant lodged a claim with the Court of General Jurisdiction of Yerevan ("the Yerevan Court") seeking L.'s return. With his claim the applicant submitted, *inter alia* birth and marriage certificates, and information notes about the family's place of residence issued by local authorities in Germany, showing that he was the father of the child, that the couple had been married, and the family had been living together in Germany before the child was taken to Armenia.

8. On 3 March 2020 the Yerevan Court admitted the claim for examination and sent its decision to A.S., giving her five working days from the date of receiving the decision in order to reply to the claim.

9. On 11 March 2020 A.S. received the decision.

10. On 18 March 2020, within the time-limit set, A.S. sent her reply by post to the Yerevan Court and a copy to the applicant. While she stated in her reply that the claim was overall unsubstantiated, A.S. acknowledged that the family had been living together in Germany before she took L. to Armenia. She essentially argued that L.'s transfer back to Germany, which would involve a likely separation between the mother and the daughter, could expose L. to psychological harm within the meaning of Article 13 (b) of the Hague Convention. To her reply A.S. attached, *inter alia*, four documents containing professional opinions, including two specialist opinions issued by a private psychologist and an opinion of an expert psychologist of the "National Bureau of Expertise", a State non-profit organisation, according to which the child was of young age and had, therefore, a strong bond with the mother; she had got used to the Armenian environment; there were tensions between her parents and she would need to adapt to new conditions in case of transfer; as a result, the child's transfer could expose her to psychological harm. A.S. also submitted a note issued by a medical centre where she had received a psychological consultation which stated that L. had a strong emotional bond with the mother and that it was important for her to be in a safe and stable environment to avoid psychological trauma.

11. According to the applicant, he received the copy of A.S.'s reply on 23 March 2020, without the supporting documents.

12. On 24 March 2020 the applicant submitted an application to the Yerevan Court informing it that the annexes of A.S's reply had not been sent to him and requested that he be given access to those documents.

13. On 31 March 2020 the applicant requested the Yerevan Court to provide him 4 working days in order to submit the Armenian translations of documents received from Germany which he alleged were important for the resolution of the case.

2

14. On 1 April 2020 the Yerevan Court gave the applicant access to the case file and allowed him to take photos of the annexes to A.S's reply to his claim.

15. On 2 April 2020 the Yerevan Court, having examined the case in a special expedited procedure provided for by Article 208 of the Armenian Code of Civil Procedure (CCP) and on the basis of the parties' written submissions, delivered its judgment dismissing the applicant's claim. It found that no evidence had been submitted to prove that L.'s retention in Armenia had been wrongful, that her habitual place of residence had been in Germany, and that the applicant had been exercising custody. Relying on A.S.'s evidence (see paragraph 10 above), it also found that, even if the applicant had proven those facts, L.'s return would expose her to a grave risk.

16. On 6 April 2020, unaware of the Yerevan Court's judgment, the applicant submitted written comments to A.S's reply and the Armenian translations of documents from Germany (see paragraph 13 above), including medical certificates, a note from a childcare provider, statements by family friends and decisions concerning childcare allowance, with which he intended to prove the child's habitual residence in Germany and that he had exercised custody.

17. According to the applicant, on 8 April 2020 his lawyer learned from Datalex (the public online database of judicial acts) that the Yerevan Court had delivered the judgment on 2 April 2020.

18. On 16 April 2020 the applicant lodged an appeal.

19. On 19 May 2020 the Civil Court of Appeal admitted the appeal for examination.

20. On 21 July 2020 the Civil Court of Appeal upheld the judgment reiterating the reasoning of the Yerevan Court. As for the applicant's additional evidence, it noted that the documents in question had been submitted after the delivery of the judgment by the Yerevan Court and that, with respect to the alleged failure to consider the applicant's request to be granted the additional time-limit requested (see paragraph 13 above), the special procedure provided by Article 208 of the CCP imposed the examination of the case within ten days after the time-limit assigned to the respondent to reply to the claim. Moreover, it further noted that in the context of judicial proceedings under the Hague Convention, the domestic legislation did not set out a procedure for making comments on the respondent's submissions.

21. On 24 August 2020 the applicant lodged an appeal on points of law which was declared inadmissible for lack of merit by the Court of Cassation on 2 December 2020.

## THE COURT'S ASSESSMENT

### ALLEGED VIOLATION OF ARTICLE 8 OF THE CONVENTION

22. The applicant complained under Articles 6 and 8 of the Convention that the Armenian courts had failed to examine his evidence and that he had not been given an opportunity to rebut the opposing party's evidence. He further complained under Article 8 about the manner in which the courts evaluated the existence of a "grave risk" within the meaning of the exception provided for under Article 13 (b) of the Hague Convention. The applicant lastly complained that the appeal proceedings were not expeditious. The Court finds it appropriate to examine these complaints solely under Article 8 of the Convention (see, for instance, *Voica v. Romania*, no. 9256/19, § 43, 7 July 2020).

23. The Court notes that these complaints are not manifestly ill-founded within the meaning of Article 35 § 3 (a) of the Convention or inadmissible on any other grounds. They must therefore be declared admissible.

24. The relevant principles concerning the return of a child under the Hague Convention are summarised in *X v. Latvia* ([GC], no. 27853/09, §§ 92-108, ECHR 2013) and have recently been reiterated in *Michnea v. Romania* (no. 10395/19, §§ 35-40, 7 July 2020).

25. The Court observes at the outset that on 2 April 2020 the Yerevan Court dismissed the applicant's claim in a special expedited written procedure before he had an opportunity to submit his comments on A.S.'s reply and his additional evidence.

26. The Yerevan Court concluded that the applicant had failed to submit evidence that L.'s retention in Armenia had been wrongful, within the meaning of Article 3 of the Hague Convention, that her habitual place of residence had been in Germany and that the applicant had been exercising custody. It is not clear, however, why the Yerevan court reached such a conclusion. It had not been disputed by A.S. that L. had been retained in Armenia without the applicant's consent, nor that during the two years before that, she had been raised by both parents living together in Germany (see paragraphs 4, 5 and 10 above). Regardless of the additional evidence that the applicant submitted after the delivery of the judgment, the Court notes that he had submitted with his claim birth and marriage certificates and documents concerning the family's place of residence in Germany (see paragraph 7 above). The Court also observes that, in any event, the applicant was expected to provide only some preliminary evidence that he had taken physical care of the child considering that the Hague Convention is built on a tacit presumption that the person who has care actually exercises custody over the child (see paragraph 73 of the Explanatory Report).

27. More importantly, the Court observes that the Yerevan Court's main ground for refusing the applicant's claim was that L.'s return would expose

4

her to a grave risk. In that connection, the applicant highlighted that he had no opportunity to rebut the evidence submitted by A.S. (see paragraphs 10-12 above). The Court sees no reason to doubt his assertion, not disputed by the Government, that despite his request of 24 March 2020 to be provided with the missing annexes, which were aimed at proving the existence of a grave risk, the applicant was given access to these documents only on 1 April 2020, that is one day before the Yerevan Court delivered its judgment (see paragraphs 14-15 above). As a result, the applicant had practically no time to study the given evidence and make submissions in reply. At the same time, the Civil Court of Appeal did not remedy this shortcoming. Moreover, the latter noted that the domestic law did not prescribe the procedure for making comments on the respondent's submissions and, therefore, the applicant's request to be granted an additional time-limit did not call for a specific reply given the time-limits provided by the expedited written procedure.

28. When examining the overall decision-making process, the Court cannot disregard the fact that the file before the domestic courts contained important and potentially controversial pieces of evidence concerning the risk to which L. would be exposed in case of return. The Court finds that giving the applicant the opportunity to present written submissions in that respect was of paramount importance for ensuring the fairness of the decision-making process (see *Karrer v. Romania*, no. 16965/10, § 53, and compare with *Andersena v. Latvia*, no. 79441/17, §§ 87 et seq. and 124-25, 19 September 2019).

29. The Court notes that it was first of all for the domestic courts to assess any allegations of grave risk while ensuring that the decision-making process was fair and allowed those concerned to present their case fully and that the best interests of the child were defended (*X.*, cited above, § 102). However, as noted above, the applicant was not allowed to present his case fully before the domestic courts. The Court considers that this was a significant procedural flaw which makes it unnecessary for the Court to conduct its own assessment of any risk of psychological harm to the child in case of her transfer from Armenia.

30. In addition, the Court cannot overlook the applicant's argument concerning the excessive length of the proceedings which overall lasted nine months, and that the Government didn't provide a sufficient explanation why the appeal proceedings took almost eight months, during which the Civil Court of Appeal confirmed the Yerevan Court's decision without admitting any new evidence and the Court of Cassation declared the case inadmissible. The result was an overall lapse of time that, in such context, does not sit well with the urgency required by proceedings for the return of the child under the Hague Convention (see, *mutatis mutandis*, *R.S. v. Poland*, no. 63777/09, § 70, 21 July 2015; *K.J. v. Poland*, no. 30813/14, §§ 71-72, 1 March 2016; and, for illustrative purposes, *A. and Others v. Bulgaria*, no. 28383/20, §§ 19-24, 9 May 2023).

GHAZARYAN v. ARMENIA JUDGMENT

31. In view of the foregoing, the Court concludes that the domestic proceedings did not satisfy the procedural requirements inherent in Article 8 of the Convention.

32. There has accordingly been a violation of Article 8 of the Convention.

## APPLICATION OF ARTICLE 41 OF THE CONVENTION

33. The applicant claimed 8,000 euros (EUR) in respect of non-pecuniary damage. He also claimed EUR 1,734 in respect of costs and expenses incurred before the domestic courts and EUR 1,770 for those incurred before the Court.

34. The Government contested those claims.

35. The Court awards the applicant EUR 4,500 in respect of non-pecuniary damage, plus any tax that may be chargeable to the applicant.

36. Having regard to the documents in its possession, the Court considers it reasonable to award EUR 2,500 in respect of all costs and expenses, plus any tax that may be chargeable to the applicant.

## FOR THESE REASONS, THE COURT, UNANIMOUSLY,

1. *Declares* the complaint concerning the applicant's right to respect for his family life admissible;

2. *Holds* that there has been a violation of Article 8 of the Convention;

3. *Holds*
   (a) that the respondent State is to pay the applicant, within three months, the following amounts, to be converted into the currency of the respondent State at the rate applicable at the date of settlement:
      (i) EUR 4,500 (four thousand five hundred euros), plus any tax that may be chargeable, in respect of non-pecuniary damage;
      (ii) EUR 2,500 (two thousand five hundred euros), plus any tax that may be chargeable to the applicant, in respect of costs and expenses;
   (b) that from the expiry of the above-mentioned three months until settlement simple interest shall be payable on the above amounts at a rate equal to the marginal lending rate of the European Central Bank during the default period plus three percentage points;

4. *Dismisses* the remainder of the applicant's claim for just satisfaction.

6

GHAZARYAN v. ARMENIA JUDGMENT

Done in English, and notified in writing on 28 November 2023, pursuant to Rule 77 §§ 2 and 3 of the Rules of Court.

Valentin Nicolescu  
Acting Deputy Registrar

Tim Eicke  
President

7