Kelly J. Shindell DeLacey, Esq. (SBN 236829)
Maria Garrett de Liévano, Esq. (SBN 300521)
DELACEY, RIEBEL & SHINDELL, LLP
180 Montgomery Street, Suite 1900
San Francisco, CA 94104
Tel:  (415) 528-7000
Fax:  (415) 528-7001

Richard Min, Esq. (*pro hac vice*)
Green Kaminer Min & Rockmore LLP
420 Lexington Avenue, Suite 2821
New York, New York 10170
Tel: (212) 681-6400
Fax:  (212) 681-6999

Attorneys for Petitioner
CASIMIRO JOSE CHANHA DAVADO DIAS

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of I.D., N.D., and C.D.: | Case No.  3:24-cv-04471-EMC |
| CASIMIRO JOSE CANHA CAVACO DIAS, | **DECLARATION** |
| Petitioner, | |
| and | |
| RULA NABIL KHOURY CAVACO DIAS | |
| Respondent. | |

ASHKHEN DASHYAN, being duly sworn, deposes and says:

1.  I am an advocate, a member of Chamber of Advocates of the Republic of Armenia and an attorney-partner at "Ara Ghazaryan" Law Office. I have been practicing as an advocate since 2015 and currently have 9 years of experience in this field. Since 2016, I have been

DELACEY, RIEBEL & SHINDELL, LLP
180 MONTGOMERY STREET, SUITE 1900, SAN FRANCISCO, CA 94104
PHONE 415•528•7000 FAX 415•528•7001

an expert of the Human Rights NGO "Rule of Law".

2. Since 2020, I have served as an expert-consultant for the Swedish organisation "GLOBAL to LOCAL" in the field of international protection of children's rights.

3. As part of my professional activity in the field of Family Law, I have dealt with numerous family law cases, including international child abduction, custody issues, recognition of paternity, local and cross-border divorce, division of assets, spousal and child support, parentage, pre-nuptial, post-nuptial, cohabitation contracts and separation agreements, legal advice on surrogacy, inheritance and inheritance disputes, amicable settlements and wills, recognition and enforcement of foreign court orders.

4. In recent years, I have provided my expert opinion in several international family cases, *exempli gratia*:

   a. In the proceedings before the Grand Ducal Court of Luxembourg, I provided an expert opinion on a case involving the illegal transfer of a child from the Republic of Armenia and retention in Luxembourg under the Hague Convention on the Civil Aspects of International Child Abduction (hereafter referred to as "the Hague Convention") proceedings. In a related migration case involving the same parties, I also submitted an expert opinion to the migration authorities of the Grand Duchy of Luxembourg, addressing children's migration issues and corresponding parental rights in accordance with Armenian national law.

   b. In the child custody case in the Grand Duchy of Luxembourg, I provided an expert opinion on the recognition of Armenian Court Orders in Luxembourg.

   c. In an abduction case in the United States between three citizens of the Republic of Armenia, I submitted a Declaration with a brief synopsis of the custody rights pursuant to the Armenian laws and the Hague Convention. With the Court's permission, I also

DeLacey, Riebel & Shindell, LLP
180 Montgomery Street, Suite 1900, San Francisco, CA 94104
Phone 415•528•7000 Fax 415•528•7001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

28

participated in the US trial as a part of the international child abduction proceedings under the Hague Convention.

d. In a case regarding the return of a child to the Republic of Armenia from the United States, I was appointed as a joint expert by the US court and provided my expert opinion on Armenian national legislation and the protection measures available in Armenia in cases of domestic violence.

5. Armenian Family Law is my field of expertise.

6. I am a legal expert in cases concerning children's rights. I have provided legal representation within the scope of Hague Convention in the USA, Luxembourg, France, Austria, Portugal, Germany, Italy, Spain and Norway.

7. In 2020, I served as a national expert in the United States District Court for the District of Massachusetts, representing the interests of citizens of Armenia.

8. On May, 25 2020, I joined a conference in Moscow as an Armenian legal expert, where I presented the Law on Prevention of Violence Within the Family, Protection of Victims of Violence Within the Family and Restoration of Peace in the Family of Armenia. I also talked about how this law is applied in Armenia and got to exchange valuable experience.

9. From 2020 to 2021, I defended the interests of both Armenian and US citizens at the US Department of State.

10. In 2021, I acted as a national expert in the Superior Court of California, County of Los Angeles, representing the interests of Armenian citizens.

11. From 2019 to 2021, I worked as an expert on several studies, conducting comprehensive research related to children's rights, the right to trial within reasonable time, the Hague Convention, access to justice for persons with disabilities, the identification of communication and accessibility issues faced by individuals with physical disabilities.

12. I am a co-author of a 2022 Manual for members of guardianship and trusteeship bodies and commissions, which is entirely dedicated to family law and outlines the functions of these bodies in Armenia concerning child-related disputes, family disputes, ensuring the care and protection of children, detecting and preventing domestic violence, and upholding children's rights to be heard and to express their opinion.

13. On November, 29 2023, I was invited as an expert to conduct training courses for employees of state bodies, including police officers, focusing on the protection of children's rights, safety, the best interest of the child, and the peculiarities of proceedings in domestic violence cases.

14. On March 21, 2024, I was invited as an expert to conduct training courses for employees of state bodies, including guardianship bodies, focusing on the protection of children's rights in judicial and extrajudicial proceedings, and well as all relevant national and international legal regulations.

15. I have not been paid yet by the Father to prepare this expert opinion and will be paid on the basis of 900 EUR hourly rate for the preparation of this expert opinion and for my testimony in this matter.

**Summary of facts**

16. This legal opinion is based on my understanding that Mr. Casimiro Jose Canha Cavaco Dias is the biological father of N███ L███ K███ C███ D██ , I█ Ma███ K███ C███ D██ and C███ A███ K███ C███ D██ (hereinafter "the Children").

17. Attached hereto are accurate translated copies of relevant provisions of the Family Code of the Republic of Armenia (hereinafter "the Family Code") cited in this legal opinion (see Exhibit 1).

18. Article 35 of the Family Code provides that the paternity of a child is determined, *inter alia*,

DeLacey, Ruebel & Shindell, LLP
180 Montgomery Street, Suite 1900, San Francisco, CA 94104
Phone 415•528•7000 fax 415•528•7001

by the state registration of a marriage if a person is married to the child's mother. It stems from the above-cited regulation that Family Code, namely Article 35 § 2, recognises Mr. Casimiro Jose Canha Cavaco Dias as Children's father due to his marriage to the Children's mother – Rula Nabil Khoury Cavaco Dias. Moreover, his paternity is not contested by another party. Besides, Ministry of Foreign Affairs of the Republic of Armenia issued International Organisation Employee/Expert IDs to the Children as Mr. Casimiro Jose Canha Cavaco Dias's daughters and son.

19. Mr. Casimiro Jose Canha Cavaco Dias has joint parental rights and responsibilities towards the Children along with his wife. Particularly, Article 49 of the Family Code stipulates that the parents have equal rights and bear equal responsibilities toward their children. Article 49 entails the absolute equality of the rights and responsibilities of both parents. The domestic legislation provides no restriction on or preference of the rights and responsibilities on the part of one parent towards a child, except for the cases when the rights of a parent(s) are restricted in cases provided for by law.

20. The equality of the rights and responsibilities supposes the parent's mutual decision-making in any question affecting the children, including the issue of place of residence. It follows from the aforementioned that given the existence of the equal rights under Armenian law, mother/father cannot take a child outside the country and transfer to another one for permanent inhabitation (in the impugned case to the United States of America) without other parent's consent.

21. Article 53 of the Family Code provides that both parents, with equal rights and responsibilities, should resolve all disagreements about upbringing through mutual agreement, based on children's interests. If the parents cannot agree they may recourse to the help of judicial and non-judicial bodies seeking the resolution of existing disputes (court or

custody and guardianship body).

22. Given that this legal opinion is provided under Armenian law, and in view of the fact that the events at issue evolve in Armenia, Mr. Casimiro Jose Canha Cavaco Dias holds custody rights by virtue of the fact that he is the parent of the Children.

23. There is no separate concept of a custody right under Armenian law. On the contrary both parents enjoy a "parental" right as long as they are not deprived of them upon a court order.

24. In the present case, Mr.. Casimiro Jose Canha Cavaco Dias has not been deprived of his parental rights towards the Children. Consequently, he holds a custody right.

25. As a result of Ms. Rula Nabil Khoury Cavaco Dias's removing of the Children from the Republic of Armenia, Mr. Casimiro Cavaco Dias did not lose his custody rights and continues to maintain them for the following reasons:

On August 17, 2013 in Lisbon, Portugal, Casimiro Jose Canha Cavaco Dias married Rula Nabil Khouri Cavaco Dias. The marriage took place at the Macedo de Cavaleiros Catholic Church and was registered under No. 10448/2013.

On December 27, 2023, Casimiro Jose Canha Cavaco Dias along with his family - wife Rula Nabil Khoury Cavaco Dias and their minor children - C█████ A███ K█ C████ D██, J██ M██████ K███ C████ D██ and N██ L███ K█ C████ D██, moved to Armenia for permanent residence.

The Republic of Armenia is the country of permanent residence for both the Children and parents, from which the Children were removed.

Given that the parents are married and that the Children were born during the marriage, with their births registered as the birth of Children of individuals in wedlock, these facts collectively confirm that the Children are biological children of Casimiro Cavaco Dias and Rula Nabil Cavaco Dias in accordance with Article 35 §§ 1 and 2 of the Family Code.

DeLacey, Riebel & Shindell, LLP
180 Montgomery Street, Suite 1900, San Francisco, CA 94104
Phone 415•528•7000 Fax 415•528•7001

Under Article 34 of the Family Code the rights and obligations of parents and children are based on the fact of child's origin stipulated by law. The confirmation of the Children's origin/descent establishes that the parental rights of Ms. Rula Cavaco Dias and Mr. Casimiro Cavaco Dias have arisen by virtue of law.

Taking into account that there are no grounds for limiting or depriving Mr. Casimiro Cavaco Dias of parental rights – something that, according to Article 60 § 4 and Article 63 § 5 of RA Family Code, is only possible based on a relevant court judgement – it follows that his custody rights, as established under Article 3 (a) of the Hague Convention, that arose under Armenian law, exist and continue to be preserved.

In particular, according to Article 3 of the Hague Convention the removal or the retention of a child is to be considered wrongful where a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

The rights of custody mentioned in sub-paragraph *a)* above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

According to Article 49 § 1 of the Family Code, parents have equal rights and obligations concerning their children (parental rights). This provision establishes the absolute equality of rights and responsibilities for both parents towards the child. There are no limitations or preferences regarding the rights and responsibilities of either parent, except in the cases defined by Armenian legislation where the rights of one or both parents may

be limited.

Parents have equal rights with respect to the child in matters of child care, upbringing, education and other issues.

Equality of parental rights and responsibilities, in turn, presupposes joint decision-making by the parents on all matters related to the child, including the decisions regarding the child's place of residence.

Therefore, within the Hague Convention at the time of the transfer of the Children, Mr. Casimiro Dias had custodial rights, which arose by virtue of law and the removal of the Children from Armenia without his consent and knowledge resulted in the violation of those custodial rights.

26. Referring to the legal issue of the recognition of the US court acts in the Republic of Armenia, it should be noted that every US court act adopted in proceedings under the Hague Convention is accepted and recognised by the Republic of Armenia by virtue of Article 14 of the Hague Convention. There is extensive judicial practice in this regard in Armenia. This is further supported by the bilateral agreement signed by the United States and Armenia within the framework of the Hague Convention, which has been in effect since 2017.

27. Turning to the existence of protection mechanisms in domestic violence cases in Armenia, it should be noted that **since 2017, the Law on Prevention of Violence Within the Family, Protection of Victims of Violence Within the Family and Restoration of Peace in the Family (**hereinafter referred to as "the Law"**) has been in effect. This law provides a wide range of protective measures for victims of violence, as well as avenues for prevention of violence in general.**

28. According to **Armenian law**, there is a necessary legal framework to ensure the safety and protection of victims of violence, as well as to guarantee their rights and legal interests. This

DeLacey, Riebel & Shindell, LLP
180 Montgomery Street, Suite 1900, San Francisco, CA 94104
Phone 415•528•7000 Fax 415•528•7001

framework not only ensures the safety of family members, but also contributes to the restoration of family solidarity. Additionally, it provides the necessary legal and practical support for psychological, material and social rehabilitation of victims of violence.

29. In Armenia, the Law provides equal legal protection from all types of violence - physical, sexual, psychological, economic and negligence.

30. When implementing the protection of victims of violence in accordance with the Law, state bodies prioritize the best interests of the child, legal equality and the prohibition of discrimination.

31. The Law applies to everyone and provides equal protection regardless of a person's nationality, race, sex, religion, citizenship or any other political views.

32. The Law provides for three protection measures: a warning, emergency intervention order and a protective order.

33. There are no specific timeframes for issuing the orders. The Law specifies that the Police should address the reports on domestic violence immediately and in practice the orders are usually issued on the exact same day.

34. The perpetrator of violence is registered by the Police for preventive purposes. Under this preventive registration, monitoring is conducted for one year.

35. The police officer and the social worker of the local social service center shall meet at least once a month with the registered individuals and the victim of violence as a part of the preventive registration process, conducting explanatory work during these meetings.

36. If the social worker of the local service center detects a risk of recurring violence during the monitoring, they shall immediately inform the Police.

37. In other words, the work of competent domestic authorities is not limited to the issuance of protective order; supervision and monitoring works are carried out regularly.

DeLacey, Riebel & Shindell, LLP
180 Montgomery Street, Suite 1900, San Francisco, CA 94104
Phone 415•528•7000 Fax 415•528•7001

38. There are shelters for victims of violence that provide the beneficiaries with a safe living space, psychological and legal assistance, and social support, involving appropriate specialists if necessary. Victims are also provided with food and clothing, while children receive spaces equipped with furniture and materials necessary for school preparation. With the beneficiaries' consent, access to medical institutions for medical care and services is also ensured.

39. There are also support centers in Armenia that inform the individuals who approach the center, in a language they can understand, about their rights, available services and legal protection measures, along with the procedure for accessing them. These centers organize the provision of necessary and free psychological and legal assistance, as well as other essential social support for victims of violence, and assist in placing individuals in shelters with their consent.

40. The issuance and enforcement of protective orders against perpetrators of domestic violence do not preclude the initiation of a criminal case or the conduct of criminal prosecution.

41. In other words, victims of violence receive extensive protection, as in addition to administrative sanctions – three types of protective measures – a criminal case can also be initiated simultaneously against the perpetrator in the same matter.

42. Within the framework of the criminal case initiated on account of domestic violence, the alleged perpetrator can also be detained as a preventive measure, which offers greater protection for the victims.

43. Moreover, as an additional guarantee for the protection of the rights of the victims of domestic violence new Code of Criminal Procedure of Armenia does not stipulate an opportunity for a victim of domestic violence to withdraw the report and criminal prosecution regarding these cases is public.

44. In any case, in Armenia among the protective orders issued against perpetrators of violence, broad restrictions are applied against the perpetrator of violence. For example, by the emergency intervention order, these restrictions may include immediate and forcible removal of the perpetrator from the victim's residence, prohibiting their return until the deadline established in the order. They may also prohibit the perpetrator from visiting the victim's workplace, school, leisure plaices or any residence where the victim or individuals under their care reside. Additionally, the orders may require the perpetrator maintain a distance from the victim of violence (and, if necessary, those under victim's care), that would not cause the victim to reasonably fear for their personal safety.

45. When enforcing the restriction, the specific distance is determined by the order. Before the expiration of the period defined in the order, any weapons in the perpetrator's possession are taken into safekeeping, and the perpetrator is prohibited from communicating with the victim of violence, and if necessary, with those under their care, by phone, correspondence or other means of communication.

46. These restrictions can be ordered both individually and in combination at the same time.

47. If the person in imminent danger is a minor, the police officer who issued the order immediately sends that decision to the guardianship and trusteeship body responsible for the protection of children's rights in Armenia. This body undertakes the actions provided by law.

48. If the emergency intervention order is issued to the sole legal representative living with the minor, the guardianship and trusteeship body organizes temporary care of the children, guided by their best interests.

**Statistics**

49. According to the Prosecutor's office's Annual report to the National Assembly, in 2021 556 criminal cases were investigated on domestic violence.

50. There is an online platform in Armenia for reporting cases of domestic violence, where every individual can receive free assistance in such situation.

51. According to summary information from Investigative Committee of Armenia regarding the criminal cases of domestic violence in the first half of 2022, 391 criminal cases were investigated under the relevant articles of the Criminal Code of the Republic of Armenia (2003). Among the victims, 296 were recognized, including 32 under the age of 12, 6 aged 12-14 years old, 3 aged 14-16 years old, 17 aged 16-18 years old, 122 aged 18-35 years old, and 116 over the age of 35.

52. According to the Statistics published by RA Investigative Committee, in 2021 556 criminal cases initiated according to relevant articles of the RA Criminal Code on domestic violence have been investigated in the RA Investigative Committee.

53. The 2021 decision of the US court in the case Aram Harutyunyan v. Lilit Khachatryan (no. 20STHC00006) on the return of a child – citizen of the Republic of Armenia – notes in paragraph 14 that there is an effective protection mechanism for domestic violence cases in Armenia, also citing the expert opinion of Ara Ghazaryan (founder of "Ara Ghazaryan" Law Office).

**Summary of court proceedings**

54. When Ms. Rula Nabil Cavaco Dias filed a report on domestic violence, it was solely in her name and she did not report violence concerning the children. The police order was issued only in relation to Ms. Dias. At the time of her report, the children had been living with their father – Mr. Casimiro Dias –no report was made by Ms. Dias to the police regarding them. After submitting her report, Ms. Dias refused the be transferred to a shelter or any other means of support. According to records from "Nairi" Medical Hospital, her condition was assessed

DeLacey, Riebel & Shindell, LLP
180 Montgomery Street, Suite 1900, San Francisco, CA 94104
Phone 415•528•7000 Fax 415•528•7001

as satisfactory and she voluntarily left the hospital. Ms. Dias was provided with legal assistance, specifically through lawyer Zaruhi Mejlumyan, who worked with human rights organizations and represented her interests. However, Ms. Dias did not establish any contact with her lawyer, which the lawyer subsequently informed the judge of the Administrative Court.

55. Considering that the Police issued the order without hearing from Mr. Casimiro Cavaco Dias, he appealed the order to the Administrative Court; however, the appeal was rejected.

Subsequently, the Administrative Court of Appeal quashed the judgement of the Administrative Court. During the court proceedings, the judge undertook all measures to ensure the participation of Ms. Dias and her representative, but the representative informed the court by phone that her client had not contacted her and she had no information about her.

56. An appeal on points of law was lodged against the decision of the Court of Appeal. However, it should be noted that it entered into legal force from the moment of promulgation and currently it is binding.

57. Additionally, criminal case was initiated on account of alleged incident of domestic violence against Ms. Dias. Within the criminal proceedings she was recognised as victim. Mr. Dias was questioned in a capacity of a witness.

Advocate

Ashkhen Dashyan (signature)

*I, Varduhi Lavchyan, a professional translator having the knowledge of both Armenian and English languages declare that I am licensed by the Ministry of Justice of the Republic of Armenia (date: June 10, 2013) to perform translations from English into Armenian and vice versa.*
*I have personally translated this document into English and it is a complete, accurate and true translation of the attached document in Armenian.*

*October 3, 2024*



**Varduhi Lavchyan**

Աշխեն Դաշյան, երդվում եմ և հայտնում․

1. Ես Աշխեն Դաշյանն եմ․ Հանդիսանում եմ ՀՀ Փաստաբանների պալատի անդամ, փաստաբան․ «Արա Ղազարյան իրավաբանական գրասենյակի» գործընկեր-փաստաբան եմ․ Փաստաբանական գործունեություն եմ ծավալում 2015թ-ից և ներկայումս ունեմ 9 տարվա փորձ այս ոլորտում։ 2016թ-ից մինչ օրս հանդիսանում է «Իրավունքի գերակայություն» իրավապաշտպան ՀԿ փորձագետ․

2. 2020թ-ից մինչ օրս հանդիսանում եմ «GLOBAL to LOCAL» շվեդական կազմակերպության փորձագետ-խորհրդատու երեխաների իրավունքների միջազգային պաշտպանության ոլորտում։

3. Ընտանեկան իրավունքի ոլորտում իմ մասնագիտական գործունեության շրջանակներում ես զբաղվել եմ ընտանեկան իրավունքի բազմաթիվ գործերով, այդ թվում՝ երեխաների միջազգային առևանգման վարույթներ, խնամակալության, հայրության ճանաչման, ազգային և միջազգային ամուսնալուծության, գույքի բաժանման, ամուսնուն և երեխային ապահովելու, ծնողական, միջանձնանական, ամուսնական և համատեղ բնակության պայմանագրեր և բաժանման համաձայնագրերի կնքում, փոխնակ մայրության վերաբերյալ իրավաբանական խորհրդատվություն, ժառանգության և ժառանգության վերաբերյալ վեճեր, հաշտության համաձայնություններ և կտակներ, օտարերկրյա դատարանների որոշումների ճանաչում և կատարում։

4. Վերջին տարիներին եմ մի քանի միջազգային ընտանեկան գործերով ես ներկայացրել եմ իմ փորձագիտական կարծիքը, մասնավորապես․

   a. Լյուքսեմբուրգի Մեծ Դքսության դատարանում քննվող դատավարությամբ ներկայացրել եմ փորձագիտական կարծիք՝ համաձայն «Երեխայի միջազգային առևանգման քաղաքացիական մոտեցումների մասին» Հաագայի Կոնվենցիայի, (հետայսու՝ Հաագայի Կոնվենցիա) ՀՀ-ից երեխայի անօրինական տեղափոխման և պահման վերաբերյալ վարույթով, ինչպես նաև դատավարության նույն կողմերի միջև ծագած մեկ այլ վարույթի՝ միգրացիոն վարույթի շրջանակում ներկայացրել եմ փորձագիտական կարծիք Լյուքսեմբուրգի Մեծ Դքսության միգրացիոն մարմնին ՀՀ-ն ազգային օրենսդրության, երեխաների միգրացիոն հարցերի, այդ հարցերում ծնողների իրավունքների վերաբերյալ։

b. Լյուքսեմբուրգի Մեծ Դքսության դատարանում ներկայացրել եմ փորձագիտական կարծիք երեխայի խնամակալության հարցով ՀՀ դատարանի որոշման ճանաչման վարույթով:

c. ԱՄՆ-ում ՀՀ երեք քաղաքացիների միջև գործով, ներկայացրել եմ հայտարարություն ՀՀ ազգային օրենսդրության և Հաագայի Կոնվենցիայի շրջանակներում խնամակալության իրավունքների վերաբերյալ: Դատարանի թույլտվությամբ մասնակցել եմ նաև ԱՄՆ դատավարությանը երեխայի միջազգային առևանգման Հաագայի վարույթի շրջանակում:

d. ԱՄՆ անօրինական տեղափոխված և պահվող երեխային ՀՀ վերադարձնելու վարույթով ԱՄՆ դատարանի կողմից ես նշանակվեցի որպես համատեղ փորձագետ և տրամադրեցի իմ փորձագիտական կարծիքը ՀՀ ազգային օրենսդրության, ընտանեկան բնույթի գործերով ՀՀ-ում առկա պաշտպանության միջոցների մասին:

5. Հայաստանում ընտանեկան իրավունքը իմ նեղ մասնագիտական ոլորտն է:

6. Ես իրավական փորձագետ եմ երեխաների իրավունքներով, ես Հաագայի Կոնվենցիայի շրջանակում իրավական ներկայացուցչություն եմ իրականացրել այս երկրներում՝ ԱՄՆ-ում, Լյուքսեմբուրգի Մեծ Դքսությունում, Ֆրանսիայում, Պորտուգալիայում, Գերմանիայում, Իտալիայում, Իսպանիայում, Նորվեգիայում, Ավստրիայում:

7. 2020 թվականին հանդես եմ եկել ԱՄՆ Մասաչուսեթսի շրջանային դատարանում որպես ազգային փորձագետ՝ ներկայացնելով ՀՀ քաղաքացիների շահերը,

8. 25.05.2020թ-ին մասնակցել եմ Մոսկվայում կայացված կոնֆերանսին, որպես ՀՀ փորձագետ ներկայացրել եմ «Ընտանիքում բռնության կանխարգելման, ընտանիքում բռնության ենթարկված անձանց պաշտպանության և ընտանիքում համերաշխության վերականգնման մասին» ՀՀ օրենքը։ Ներկայացրել եմ նաև, թե ինչպես է այդ օրենքը գործում ՀՀ-ում և արժեքավոր փորձի փոխանակում եմ կատարել:

9. 2020-2021թթ ԱՄՆ պետդեպարտամենտում հանդես   եմ եկել ինչպես ՀՀ քաղաքացիների, այնպես էլ ԱՄՆ քաղաքացիների շահերի պաշտպանությամբ:

10. 2021թ-ին որպես ազգային փորձագետ տրամադրել եմ իրավական կարծիք ԱՄՆ Կալիֆորնիա նահանգի Լոս Անջելես շրջանի գերազգույն դատարանում՝ ներկայացնելով ՀՀ քաղաքացիների շահերը:

11. 2019-2021թթ որպես փորձագետ աշխատել է մի շարք հետազոտությունների վրա, իրականացրել համապարփակ հետազոտություններ՝ երեխաների իրավունքների, ողջամիտ ժամկետում դատաքննության իրավունքի, Հասցայի կոնվենցիայի, հաշմանդամություն ունեցող անձանց արդարադատության մատչելիության, ֆիզիկական հաշմանդամություն ունեցող անձանց կողմից բախված հաղորդակցության և մատչելիության խնդիրների բացահայտման առնչությամբ:

12. 2022թ-ին իմ համահեղինակությամբ հրատարակվել է Խնամակալության և հոգաբարձության մարմինների և հանձնաժողովների անդամների համար նախատեսված ձեռնարկ, որը նվիրված է ամբողջապես ընտանեկան իրավունքին, ՀՀ-ում Խնամակալության և հոգաբարձության մարմինների գործառույթներին կապված երեխաների վերաբերյալ վեճերին, ընտանեկան վեճերին, երեխաների խնամքի և պաշտպանության ապահովմանը, ընտանեկան բռնության դեպքերի բացահայտմանը և կանխարգելմանը, երեխաների լավագույն լինելու, կարծիք արտահայտելու իրավունքներին:

13. 29.11.2023թ-ին պետական մարմինների աշխատակիցների՝ այդ թվում ոստիկանության ծառայողների համար կազմակերպված դասընթացներին որպես փորձագետ հրավիրվել եմ վերապատրաստելու իրենց՝ երեխաների իրավունքների պաշտպանության ապահովման, անվտանգության, երեխայի լավագույն շահի, ընտանեկան բռնության գործերով վարույթների առանձնահատկությունների վերաբերյալ:

14. 21.03.2024թ-ին պետական մարմինների աշխատակիցների՝ այդ թվում երեխաների իրավունքների պաշտպանությամբ զբաղվող խնամակալության մարմինների համար կազմակերպված դասընթացներին, որպես փորձագետ հրավիրվել եմ վերապատրաստելու իրենց՝ երեխաների իրավունքների պաշտպանությունը դատական և արտադատական վարույթներում թեմաներով, ներկայացրել ազգային և միջազգային իրավական կարգավորումները:

15. Փորձագիտական կարծիք կազմելու համար հայրը դեռևս չեմ վճարվել հոր կողմից և պետք է վճարվեմ 900 եվրո ժամավճարով՝ այս փորձագիտական կարծիքը կազմելու և այս հարցի շուրջ իմ վկայության համար:

Փաստերի համառոտագիր

16. Սույն իրավական կարծիքը հիմնված է իմ ընկալման վրա, որ պարոն Կազիմիրո Խոսե Կանհա Կավկլո Դիասը Նուրիա Լյուսիա Խորի Կավկլո Դիասի, Ինես Մադալենա Խորի Կավկլո Դիասի և Կազիմիրո Աֆոնսո Խորի Կավկլո Դիասի (այսուհետ՝ Երեխաներ) կենսաբանական հայրն է:

17. Կցվել են սույն փորձագիտական կարծիքում մեջբերված՝ ՀՀ ընտանեկան օրենսգրքի (այսուհետ՝ Ընտանեկան օրենսգիրք) համապատասխան հոդվածների պատշաճ թարգմանությունների պատճենները (տես Հավելված 1):

18. Ընտանեկան օրենսգրքի 35-րդ հոդվածը սահմանում է, որ երեխայի հայրությունը որոշվում է, ի թիվս այլոց, ամուսնության պետական գրանցմամբ, եթե անձը ամուսնացած է երեխայի մոր հետ: Վերոհիշյալ կանոնակարգից բխում է, որ Օրենսգիրքը, մասնավորապես՝ 35-րդ հոդվածի 2-րդ մասը, պարոն Կազիմիրո Խոսե Կանհա Կավկլո Դիասին ճանաչում է որպես երեխաների հայր՝ երեխաների մոր՝ Ռուլա Նաբիլ Խորի Կավկլո Դիասի հետ ամուսնության ուժով: Ավելին, մյուս կողմը նրա հայրությունը չի վիճարկում: Բացի այդ, Հայաստանի Հանրապետության արտաքին գործերի նախարարությունը երեխաներին տրամադրել է Միջազգային կազմակերպության աշխատակցի/փորձագետի վկայականներ՝ որպես պարոն Կազեմիրո Խոսե Կանհա Կավկլո Դիասի դուստրեր ու որդի:

19. Պարոն Կազեմիրո Խոսե Կանհա Կավկլո Դիասը և իր կնոջ երեխաների նկատմամբ ունեն համատեղ ծնողական իրավունքներ և պարտականություններ: Մասնավորապես, Օրենսգիրքի 49-րդ հոդվածը սահմանում է, որ ծնողներն ունեն հավասար իրավունքներ և կրում են հավասար պարտականություններ իրենց երեխաների նկատմամբ : 49-րդ հոդվածը ենթադրում է երկու ծնողների իրավունքների և պարտականությունների բացարձակ հավասարություն: Ներպետական օրենսդրությունը չի նախատեսում որևէ ծնողի՝ երեխայի նկատմամբ իրավունքների և պարտականությունների սահմանափակում կամ նախապատվություն, բացառությամբ այն դեպքերի, երբ ծնողի (ծնողների) իրավունքները սահմանափակվում են օրենքով նախատեսված դեպքերում:

20. Իրավունքների և պարտականությունների հավասարությունը ենթադրում է երեխաներին առնչվող ցանկացած հարցի շուրջ ծնողների կողմից որոշումների համատեղ կայացում, այդ թվում՝ բնակության վայրի կապակցությամբ: Վերոգրյալից հետևում է, որ ՀՀ օրենսդրությամբ նախատեսված՝ ծնողների հավասար իրավունքների պայմաններում մայրը/հայրը չի կարող երեխային երկրից դուրս տանել և երեխային մշտական բնակության (վիճարկվող դեպքում՝ Ամերիկայի Միացյալ Նահանգներ) տեղափոխել առանց մյուս ծնողի համաձայնության:

21. Օրենսգիրքի 53-րդ հոդվածը սահմանում է, որ երկու ծնողները, ունենալով հավասար իրավունքներ և պարտականություններ, երեխաների դաստիարակությանը վերաբերող բոլոր տարաձայնությունները պետք է լուծեն փոխադարձ համաձայնությամբ` ելնելով երեխաների շահերից: Եթե ծնողները չեն կարողանում համաձայնություն գալ, ապա նրանք կարող են դիմել դատական և ոչ դատական մարմիների օգնությանը` ձգտելով լուծել առկա վեճերը (դատարան կամ խնամակալության և հոգաբարձության մարմին):

22. Հաշվի առնելով, որ այս իրավական կարծիքը տրված է Հայաստանի օրենսդրության վերաբերյալ, ինպես նաև հաշվի առնելով այն փաստը, որ խնդրո առարկա իրադարձությունները զարգանում են Հայաստանում, ապա պարոն Կազիմիրո Խոսե Կանհա Կավակո Դիասն ունի խնամակալության իրավունք` հիմք ընդունելով Երեխաների ծնողը լինելու հանգամանքը:

23. Հայաստանի օրենքով չկա խնամակալության իրավունքի առանձին կոնցեպտ: Ընդհակառակը, երկու ծնողներն էլ ունեն «ծնողական» իրավունք, քանի դեռ դատարանի որոշմամբ դրանցից չեն զրկվել:

24. Այս դեպքում պարոն Կազեմիրո Խոսե Կանհա Կավակո Դիասը չի զրկվել Երեխաների նկատմամբ իր ծնողական իրավունքներից: Հետևաբար, նա ունի խնամակալության իրավունք:

25. Տիկին Ռուլա Նաբիլ Կավակո Դիասի կողմից երեխաներին ՀՀ սահմաններից դուրս հանելու արդյունքում պարոն Կազիմիրո Կավակո Դիասը չի կորցրել իր խնամակալության իրավունքը և շարունակում է պահպանել հետևյալ պատճառաբանությամբ`

17.08.2013թ-ին  Պորտուգալիայի Լիսաբոն քաղաքում Կազիմիրո Խոսե Կանհա Կավակո Դիասը ամուսնացել է Ռուլա Նաբիլ Խուրի Կավակո Դիասի հետ, ամուսնությունը Մասեդո դե Կավալերյոս կաթոլիկ եկեղեցում, ստացել  թիվ  10448/2013 գրանցումը:

27.12.2023թ-ին Կազիմիրո Խոսե Կանհա Կավակո Դիասը իր ընտանիքի հետ` կնոջ Ռուլա Նաբիլ Խուրի Կավակո Դիասի և երեխաների` անչափահասներ Կազիմիրո Աֆոնսո Խուրի Կավակո Դիասի,  Ինես Մաղալենա Խուրի Կավակո Դիասի, Նուրիա Լյուսիա Խուրի Կավակո Դիասի հետ տեղափոխվել է ՀՀ մշտական բնակության:

Հայաստանի Հանրապետությունը հանդիսանում է երեխաների և ծնողների մշտական բնակության երկիրը, որտեղից երեխաները տեղափոխվել են:

Հաշվի առնելով այն հանգամանքը, որ երեխաների ծնողները գտնվում են ամուսնության մեջ, իսկ երեխաները ծնվել են ամուսնության ժամանակ և երեխաների ծնունդը գրանցվել է, որպես ամուսնության մեջ գտնվող անձանց երեխաների ծնունդ՝ նշված փաստերը ՀՀ ընտանեկան օրենսգրքի 35-րդ հոդվածի 1-ին և 2-րդ մասերի ուժով հաստատում են երեխաների՝ Կազիմիրո Կավալկո Դիասից և Ռուլա Նաբիլ Կավալկո Դիասից սերված լինելու փաստը:

Ընտանեկան օրենսգրքի 34-րդ հոդվածի համաձայն ծնողների և երեխաների իրավունքներն ու պարտականությունները հիմնվում են երեխաների՝ օրենքով սահմանված կարգով հաստատված սերման փաստի վրա:  Երեխաների սերված լինելու հաստատումով հիմնավորված է, որ երեխաների նկատմամբ տիկին Ռուլա Կավալկո Դիասի և Կազիմիրո Կավալկո Դիասի ծնողական իրավունքները առաջացել են օրենքի ուժով:

Հաշվի առնելով նաև այն հանգամանքը, որ բացակայում է պարոն Կազիմիրո Կավալկո Դիասի ծնողական իրավունքները սահմանափակելու կամ ծնողական իրավունքներից զրկելու մասին հիմքերը՝ որոշումներ, որոնք Օրենսգրքի 60-րդ հոդվածի 4-րդ մասին և 63-րդ հոդվածի 5-րդ մաս ուժով պետք է լինեն դատարանի համապատասխան վճռի առկայության դեպքում, հետևաբար «Երեխայի միջազգային առևանգման քաղաքացիական մոտեցումների մասին» Հաագայի Կոնվենցիայի 3-րդ հոդվածի ա/ կետի հիմքով խնամակալության իրավունքները, որոնք առաջացել են ՀՀ օրենքի ուժով առկա են և շարունակվում են պահպանված մնալ:

Մասնավորապես Կոնվենցիայի 3-րդ րդ հոդվածի համաձայն՝ երեխայի տեղափոխումը կամ պահելը անօրինական է դիտվում, եթե. ա) դրանով խախտվում են խնամակալության իրավունքները, որոնք միասնական կամ անհատական կերպով շնորհված են որևէ անձի, հաստատության կամ այլ մարմնի՝ այն Պետության օրենսդրության համաձայն, որտեղ երեխան սովորաբար բնակվել է տեղափոխվելուց կամ պահվելուց անմիջապես առաջ, և բ) տեղափոխման կամ պահելու պահին միասնական կամ անհատական կերպով այդ իրավունքներն արդյունավետորեն իրականացվել են կամ կիրականացվեին, եթե չլիներ տեղափոխումը կամ պահելը:

«ա» կետում նշված խնամակալության իրավունքները կարող են առաջանալ, մասնավորապես, օրենքի ուժով կամ դատական կամ վարչական որոշման կամ տվյալ Պետության օրենսդրությանը համապատասխան իրավական ուժ ունեցող համաձայնությանն արդյունքում:

Ընտանեկան օրենսգրքի 49-րդ հոդվածի 1-ին մասի համաձայն ծնողներն ունեն հավասար իրավունքներ և կրում են հավասար պարտականություններ իրենց երեխաների նկատմամբ (ծնողական իրավունքներ): Նշված դրույթում ամրագրված է երեխայի նկատմամբ երկու ծնողների իրավունքների և պարտականությունների բացարձակ հավասարության մասին: Որևէ սահմանափակում կամ նախապատվություն ծնողներից մեկի կողմից երեխայի նկատմամբ իրավունքների և պարտականությունների վերաբերյալ նախատեսված չէ, բացառությամբ ՀՀ օրենսդրությամբ սահմանված այն դեպքերի, երբ ծնողի կամ ծնողների իրավունքները սահմանափակվում են:

Երեխայի նկատմամբ ծնողները ունեն հավասար իրավունք երեխայի խնամքի, դաստիարակության, կրթության և այլ հարցերի կազմակերպման հարցերում:

Ծնողական իրավունքների և պարտականությունների հավասարությունը իր հերթին ենթադրում է ծնողների համատեղ որոշման կայացում երեխայի հետ կապված ցանկացած հարցի կապակցությամբ, այդ թվում երեխայի բնակության վայրի որոշման:

Հետևաբար երեխաների տեղափոխման պահին պարոն Կազիմիրոն Հասագլի կոնվենցիայի շրջանակներում ուներ խնամակալության իրավունքներ, որոնք օրենքի ուժով էին առաջացել, և առանց իր համաձայնության և գիտության ՀՀ-ից երեխաների դուրս բերումը հանգեցրել է այդ խնամակալության իրավունքների խախտման:

26.    Անդրադառնալով ԱՄՆ դատական ակտերի ՀՀ-ում ճանաչման իրավական հարցին, պետք է նշել, որ Հասագլի Կոնվենցիայով հարուցված վարույթով կայացվող յուրաքանչյուր ԱՄՆ դատական ակտ ՀՀ կողմից ընդունվում և ճանաչվում է Հասագլի Կոնվենցիայի 14-րդ հոդվածի ուժով: Առկա է մեծ դատական պրակտիկա այդ մասով ՀՀ-ում: Նշվածը նաև պայմանավորված է ԱՄՆ և ՀՀ կողմից Հասագլի Կոնվենցիայի շրջանակում կնքված երկկողմ պայմանագրով, որը գործում է 2017թ-ից:

27. Անդրադառնալով ընտանեկան բռնության գործերով ՀՀ-ում պաշտպանության գործիքակազմի առկայությանը, պետք է նշել, որ 2017թ-ից **գործում է «ԸՆՏԱՆԻՔՈՒՄ ԲՌՆՈՒԹՅԱՆ ԿԱՆԽԱՐԳԵԼՄԱՆ, ԸՆՏԱՆԻՔՈՒՄ ԲՌՆՈՒԹՅԱՆ ԵՆԹԱՐԿՎԱԾ ԱՆՁԱՆՑ ՊԱՇՏՊԱՆՈՒԹՅԱՆ ԵՎ ԸՆՏԱՆԻՔՈՒՄ ՀԱՄԵՐԱՇԽՈՒԹՅԱՆ ՎԵՐԱԿԱՆԳՆՄԱՆ ՄԱՍԻՆ» օրենքը** (այսուհետ՝ Օրենք): Այս օրենքը պաշտպանության լայն գործիքակազմ է նախատեսում բռնությունից տուժած անձանց, ինչպես նաև ընդհանրապես բռնության կանխարգելման ուղիների համար:

28. **ՀՀ օրենքով** բռնությունից տուժած անձանց անվտանգության և պաշտպանության, նրանց իրավունքների և օրինական շահերի ապահովման համար անհրաժեշտ իրավական կառուցակարգեր են առկա, որոնք    ապահովում են ընտանիքի անդամների անվտանգությունը և նպաստում ընտանիքում համերաշխության վերականգնմանը, ապահովում են բռնության ենթարկվածներին հոգեբանական, նյութական և սոցիալական աջակցության տրամադրման և նրանց սոցիալական վերականգնման համար  անհրաժեշտ իրավական և պրակտիկ կառուցակարգեր:

29. ՀՀ-ում հավասարապես օրենքով պաշտպանված են անձանց պաշտպանությունը բոլոր տեսակներից՝ ֆիզիկական, սեռական, հոգեբանական, տնտեսական, անտեսման:

30. Այդ օրենքով բռնությունից տուժած անձանց պաշտպանություն իրականացնելիս պետական մարմինների կողմից կարևորվում է երեխայի լավագույն շահերի առաջնահերթությունը, իրավահավասարության ապահովումը, խտրականության արգելքը:

31. ՀՀ օրենքը կիրառվում է յուրաքանչյուր անձի նկատմամբ և տալիս հավասար պաշտպանություն՝ անկախ անձի ազգությունից, ռասայից, սեռից, կրոնից, քաղաքացիությունից կամ քաղաքական որևէ այլ հայացքներից:

32. Օրենքը 3 պաշտպանության միջոց է նախատեսում՝ նախազգուշացում, անհետաձգելի միջամտության որոշման և պաշտպանական որոշման կայացման հնարավորություն:

33. Որոշումների կայացման առանձին ժամկետներ չկան: Օրենքը ընդգծում է, որ Ոստիկանությունը պետք է անհապաղ արձագանքի ընտանեկան բռնության հաղորդումներին, և պրակտիկայում որոշումները սովորաբար կայացվում են նույն օրը:

34. Բռնություն գործադրած անձը ոստիկանության կողմից վերցվում է հաշվառման կանխարգելիչ նկատառումներով: Այս կանխարգելիչ հաշվառման շրջանակում մշտադիտարկում է իրականացվում մեկ տարի:

35. Ոստիկանության ծառայողը և տարածքային սոցիալական ծառայության կենտրոնի սոցիալական աշխատողը որպես կանխարգելիչ հաշվառման մաս ամսական առնվազն մեկ հանդիպում պետք է ունենան հաշվառման վերցված և բռնության ենթարկված անձանց հետ՝ բացատրական աշխատանքներ իրականացնելով այս հանդիպումների ընթացքում:

36. Եթե ծառայության տարածքային կենտրոնի սոցիալական աշխատողը մշտադիտարկման ընթացքում բռնության կրկնման վտանգ է հայտնաբերում, ապա այդ մասին պետք է անհապաղ տեղեկացնի ոստիկանությանը:

37. Այսինքն միայն պաշտպանական միջոցների կայացմամբ չի ավարտվում իրավասու ներպետական մարմինների աշխատանքները. պարբերաբար իրականացվում են հսկողության և մշտադիտարկման աշխատանքներ:

38. Բռնությունից տուժած անձանց համար առկա են ապաստարաններ, որոնք շահառուներին անհատույց տրամադրում են ապահով բնակելի տարածք, հոգեբանական և իրավաբանական օգնություն, սոցիալական աջակցություն` անհրաժեշտության դեպքում ներգրավելով համապատասխան մասնագետներին: Զոհերն ապահովվում են սննդով և հագուստով, իսկ երեխաներին` նաև դասապատրաստման անհրաժեշտ կահավորմամբ և պիտույքներով                                                 տարածությամբ: Շահառուների համաձայնությամբ ապահովվում նաև առողջապահական հաստատություններ դիմելը` բժշկական օգնության և սպասարկման ծառայությունների համար:

39. ՀՀ-ում առկա են նաև աջակցության կենտրոններ, որոնք աջակցության կենտրոն դիմած անձանց նրանց համար իրենց հասկանալի լեզվով տեղեկացնում են նրանց իրավունքների, հասանելի ծառայությունների և օրենքով նախատեսված պաշտպանության միջոցների և դրանցից օգտվելու կարգի մասին: Այս կենտրոնները կազմակերպում են բռնության ենթարկվածներին անհրաժեշտ և անհատույց հոգեբանական և իրավաբանական օգնության և այլ անհրաժեշտ սոցիալական ծառայությունների տրամադրումը, և օգնում են անձանց ապաստարանում տեղավորելու հարցում` նրանց համաձայնությամբ:

40. Ընտանիքում բռնություն գործադրած անձի նկատմամբ կայացած պաշտպանական որոշումների կայացումը և կիրառումը չի խոչընդոտում նաև քրեական գործ հարուցելուն և քրեական հետապնդում իրականացնելուն:

41. Այսինքն լայն պաշտպանություն է տրվել բռնությունից տուժած անձանց, և կատարողի նկատմամբ բացի վարչական կարգով կիրառվող սանկցիաներից` պաշտպանության թվարկված այդ երեք միջոցներից, նաև միաժամանակ նույն դեպքով կարող է հարուցվել քրեական գործ:

42. Բռնության փաստով հարուցված քրեական գործի շրջանակում բռնություն գործադրած անձի նկատմամբ կարող է նաև կայացվել կալանքը որպես խափանման միջոց, որը առավել մեծ պաշտպանություն է տալիս զոհերին:

43. Ավելին` որպես ընտանեկան բռնության զոհերի իրավունքների պաշտպանության լրացուցիչ երաշխիք ՀՀ նոր քրեական դատավարության օրենսգիրքը չի նախատեսում ընտանեկան բռնության զոհերի կողմից հաղորդումից հրաժարվելու հնարավորություն և այս գործերով քրեական հետապնդումը հանրային է:

44. Ամեն դեպքում, ՀՀ-ում բռնություն կիրառող անձանց նկատմամբ կայացվող պաշտպանական որոշումների շարքում լայն սահմանափակումներ են կիրառվում բռնություն գործադրած անձի նկատմամբ։ Օրինակ,  անհետաձգելի միջամտության որոշմամբ այս սահմանափակումները կարող են ներառել բռնություն գործադրած անձին զոհի բնակության տարածքից անհապաղ և հարկադրաբար հեռացում՝ արգելելով նրա վերադարձը մինչ որոշմամբ սահմանված վերջնաժամկետի լրանալը։ Դրանք կարող են բռնություն գործադրած անձին արգելելու այցելել տուժողի աշխատանքի, ուսման, հանգստի կամ բնակվելու վայրեր, որտեղ բնակվում են տուժողը կամ նրանց խնամքի տակ գտնվող անձինք։ Ավելին, որոշումները կարող են բռնություն գործադրած անձից պահանջել բռնության զոհից պահել այնպիսի հեռավորություն (անհրաժեշտության դեպքում՝ նաև նրա խնամքի տակ եղած անձանց), որը զոհի նրա մեջ ողջամտորեն չի հարուցի իր անձնական անվտանգության մասին հիմնավոր վախ։

45. Սահմանափակումը կիրառելիս որոշմամբ սահմանվում է հեռավորության կոնկրետ չափը։ Մինչև որոշմամբ սահմանված ժամկետի լրանալ, ի պահ են վերցվում բռնություն գործադրած անձի տիրապետման տակ գտնվող զանկացած զենք, և արգելվում է բռնություն գործադրած անձին հեռախոսային, նամակագրական կամ կապի այլ միջոցներով հաղորդակցվել բռնության ենթարկվածի, իսկ անհրաժեշտության դեպքում՝ նաև նրա խնամքի տակ եղած անձանց հետ։

46. Այս սահմանափակումները կարող են կիրառվել ինչպես առանձին, այնպես էլ համակցության մեջ միաժամանակ բոլորը։

47. Եթե անմիջականորեն սպառնացող վտանգի տակ գտնվող անչափահաս է, ապա որոշումը կայացրած ոստիկանության ծառայող այդ որոշումն անհապաղ ուղարկում է խնամակալության և հոգաբարձության մարմնին, ով պատասխանատու է ՀՀ-ում երեխաների իրավունքների պաշտպանության համար։ Այս մարմինը ձեռնարկում է օրենքով նախատեսված գործողություններ։

48. Եթե անհետաձգելի միջամտության որոշումը կիրառվում է անչափահաս անձի հետ համատեղ բնակվող միակ օրինական ներկայացուցչի նկատմամբ, ապա երեխաների ժամանակավոր խնամքը կազմակերպում է խնամակալության և հոգաբարձության մարմինը՝ առաջնորդվելով նրա շահերով։

Վիճակագրություն

49. Ազգային ժողովին դատախազության տարեկան զեկույցի համաձայն՝ 2021թ ընտանեկան բռնության մասով քննվել է 556 քրեական գործ:

50. ՀՀ-ում առկա է ՀՀ ընտանեկան բռնության դեպքերի հաղորդման առցանց հարթակ, որտեղ յուրաքանչյուր անձ կարող է այդ իրավիճակում անվճար օգնություն ստանալ:

51. ՀՀ քննչական կոմիտեից ընտանեկան բռնության գործերի վերաբերյալ ամփոփ տեղեկատվության համաձայն՝ 2022 թվականի առաջին կիսամյակի ընթացքում 391 քրեական գործ է քննել Հայաստանի Հանրապետության քրեական օրենսգրքի (2003թ.) համապատասխան հոդվածներով: Այս տուժողներից 296 անձ ճանաչվել է որպես տուժող, ներառյալ՝ 32-ը՝ մինչև 12 տարեկան, 6-ը՝ 12-14 տարեկան, 3-ը՝ 14-16 տարեկան, 17-ը՝ 16-18 տարեկան, 122-ը՝ 18-35 տարեկան, 116-ը՝ 35-ից բարձր:

52. ՀՀ քննչական կոմիտեի հրապարակած վիճակագրության համաձայն՝ 2021 թվականին ընտանեկան բռնությանը վերաբերող՝ ՀՀ քրեական օրենսգրքի համապատասխան հոդվածներով հարուցված 556 քրեական գործ է քննել ՀՀ քննչական կոմիտեում:

53. Երեխայի վերաոդարձի վերաբերյալ Արամ Հարությունյանն ընդդեմ Լիլիթ Խաչատրյան գործով ԱՄՆ դատարանի 2021 թվականի որոշումը 14-րդ պարբերությունում նշում է, որ ՀՀ-ում ընտանեկան բռնության դեպքերով առկա է պաշտոպանության արդյունավետ գործիքակազմ՝ նաև մեջբերելով Արա Ղազարյանի փորձագիտական կարծիքը («Արա Ղազարյան» իրավաբանական գրասենյակի հիմնադիր):

**Դատական գործընթացների համառոտագիր**

54. Տիկին Ռուլա Նաբիլ Կավալկ Դիասը, ընտանեկան բռնության վերաբերյալ հաղորդում ներկայացնելիս, այն բացառապես իր մասով է տրվել և երեխաների վերաբերյալ որևէ հաղորդում չի ներկայացրել: Ոստիկանության կողմից որոշումը կայացվել է բացառապես տիկին Դիասի վերաբերյալ: Իր հաղորդումը տալու ժամանակ երեխաները բնակվել են իրենց հոր՝ պարոն Կացմիրո Դիասի հետ, և որևէ հաղորդում տիկին Դիասի կողմից նրանց վերաբերյալ չի ներկայացվել ոստիկանություն: Հաղորդում ներկայացնելուց հետո տիկին Դիասը հրաժարվել է ապաստարան տեղափոխվելուց և աջակցության որևէ այլ միջոցից: «Նաիիրի» բժշկական կենտրոնից ստացված փաստաթղթերի համաձայն՝ նրա վիճակը գնահատվել է բավարար և նա կամովին հեռացել է հիվանդանոցից: Տիկին Դիասին տրամադրվել իրավական օգնություն, մասնավորապես իրավաբան Ջարուհի Մեջլումյանի կողմից, ով աշխատում էր իրավապաշտպան կազմակերպությունների հետ և ներկայացնում է նրանց շահերը: Սակայն, տիկին Դիասը որևէ կապ չի հաստատել իր փաստաբանի հետ, որի մասին հետագայում փաստաբանը հայտնեց Վարչական դատարանի դատավորին:

55. Նկատի ունենալով, որ ոստիկանությունը առանց Կազմիր Կավակը Դիասին լսելու էր կայացրել որոշումը, նա բողոքարկել էր որոշումը Վարչական դատարանում, որը սակայն բողոքը մերժվել էր: Հաջորդիվ, Վերաքննիչ վարչական դատարանը բեկանել է Վարչական դատարանի վճիռը: Դատավարության ընթացքում դատավորը ձեռնարկել է բոլոր միջոցները ապահովելու տիկին Դիասի և իր ներկայացուցչի մասնակցությունը, սակայն ներկայացուցչիը հեռախոսակապի միջոցով հայտնել է, որ իր վստահորդը իր հետ կապ չի հաստատել և նա որևէ տեղեկություն չունի իր մասին:

56. Վճռաբեկ բողոք է ներկայացվել Վերաքննիչ վարչական դատարանի որոշման դեմ: Սակայն, պետք է նշել, որ այն օրինական ուժի մեջ է մտել հրապարակման պահից և ներկա պահին այն վերջնական է:

57. Տիկին Դիասի նկատմամբ ընտանեկան բռնության ենթադրյալ դեպքի առթիվ նախաձեռնվել է քրեական վարույթ: Քրեական վարույթի շրջանակներում նա ճանաչվել է տուժող, մինչդեռ պարոն Դիասը հարցաքննվել է վկայի կարգավիճակով:

Փաստաբան

Աշխեն Դաշյան