1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Kelly J. Shindell DeLacey, Esq. (SBN 236829)
Maria Garrett de Liévano, Esq. (SBN 300521)
DELACEY, RIEBEL & SHINDELL, LLP
180 Montgomery Street, Suite 1900
San Francisco, CA 94104
Tel:  (415) 528-7000
Fax:  (415) 528-7001

Richard Min, Esq. (*pro hac vice*)
Green Kaminer Min & Rockmore LLP
420 Lexington Avenue, Suite 2821
New York, New York 10170
Tel: (212) 681-6400
Fax:  (212) 681-6999

Attorneys for Petitioner
CASIMIRO JOSE CANHA CAVACO DIAS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

In the Matter of I.D., N.D., and C.D.:

CASIMIRO JOSE CANHA CAVACO DIAS,

Petitioner,

and

RULA NABIL KHOURY CAVACO DIAS

Respondent.

Case No.  3:24-cv-04471-EMC

**OPPOSITION TO RESPONDENT'S MOTION FOR EVIDENTIARY PRESUMPTIONS AND PRODUCTION OF ARMENIAN COUNSEL/EXPERT MATERIALS**

Petitioner, CASIMIRO JOSE CANHA CAVACO DIAS ("Petitioner"), by and through undersigned counsel, respectfully opposes Respondent RULA NABIL KHOURY CAVACO DIAS' motion for evidentiary presumptions and production of Armenian counsel/expert materials. [ECF No. 128].

DELACEY, RIEBEL & SHINDELL, LLP
180 MONTGOMERY STREET, SUITE 1900, SAN FRANCISCO, CA 94104
PHONE 415•528•7000 FAX 415•528•7001

## I.  <u>INTRODUCTION</u>

Respondent's motion seeks to resolve core issues that must be decided at the trial commencing October 29, 2024. Respondent's instant motion prematurely seeks to have trial issues decided via pre-trial motion.

**Employment:** Respondent would have this Court prejudge key factual issues related to Petitioner's employment – and by extension habitual residence – based solely on the pleadings. The request is premature and prejudicial. The claims require findings of fact that require review of the evidence. Reliance on hearsay declarations and arguments of counsel are insufficient. Petitioner has met and conferred with Respondent regarding the need to amend his Petition to clarify the nuances of his employment terms and provide the necessary color for how those contracts operate in practice. On October 9, 2024, Petitioner proposed amended language to Respondent. Respondent's position that she has been prejudiced by Petitioner's pleading is meritless. Her position that she would be able to prevail on a motion to dismiss based on Petitioner's employment situation in Armenia is unsupported by law. It imposes a categorical requirement on the issue of habitual residence – something that the Supreme Court has expressly rejected in *Monasky v. Taglieri*, 589 U.S. 68, 80 (2020) ("The bottom line: There are no categorical requirements for establishing a child's habitual residence…").

**Evidence:** Likewise, any ruling on Respondent's accusations of spoliation requires a fact-based determination and evidentiary hearing.  It defies logic to allege Respondent's heightened evidentiary burden at trial is transmogrified by Petitioner deleting WhatApp messages prior to any request he preserve them for trial. Respondents must prove her defense on clear and convincing evidence.  22 U.S.C. § 9003(e)(2)(A).  "Grave risk" is a term of art that is narrowly drawn and applies only in the most extreme scenarios.  *Cuellar v. Joyce*, 596 F.3d 505, 508 (9th Cir. 2010).  The fact that Petitioner deleted text messages – the content of Respondent largely does not purport

D<small>E</small>L<small>ACEY</small>, R<small>IEBEL</small> & S<small>HINDELL</small>, LLP
180 M<small>ONTGOMERY</small> S<small>TREET</small>, S<small>UITE</small> 1900, S<small>AN</small> F<small>RANCISCO</small>, CA 94104
P<small>HONE</small> 415•542•8700 | F<small>AX</small> 415•526•7001

to know – does not itself allow for a rebuttable presumption that returning the Children to Armenia will pose a grave risk of harm.

**Privilege**: Respondent's effort to wrest attorney client and work product privileges from Petitioner's relationship with his Armenian counsel is untenable. In this summary proceeding, Petitioner called family counsel in his Armenian proceeding to assist this Court with Armenian family and domestic violence law. Respondent's contention this waived privilege is unsupported by reference to the antitrust, patent infringement, negligence, and legal ethics matters cited in Respondent's brief. Hague cases are expedited and provisional in nature. There is no support for the premise "left behind" parents in a Hague proceeding are stripped of attorney client and work product privileges by calling their family law counsel from the home jurisdiction to testify regarding foreign law. Petitioner's Armenian expert will testify to Armenian law. Her knowledge of Armenian law is not based on privileged information. This is not a situation where Petitioner is relying on using privileged information as both a shield and a sword, such that waiver would be appropriate. *See, e.g. Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981). Privileged information plays no role in the relevant expert testimony. Respondent has also not cited a single Hague Convention case to support her untenable position.

## II. <u>ARGUMENT</u>

### A. <u>Amended Pleading: Respondent is Aware Petitioner is Amending his Pleading</u>

Regarding the initial statements in the Petition [ECF No. 1], without disclosing or waiving any attorney-client privilege, any representations about Petitioner's WHO assignment to Armenia were reasonably based on discussions with Petitioner and his prior work history which included several multi-year assignments in different countries.

As a consequence of the expedited nature of this case, Petitioner's counsel was not in

receipt of any work contracts until shortly before discovery was exchanged.[1] Once Respondent pointed out the discrepancy between Petitioner's work contract and statements related to his employment in Petitioner's court filings, Petitioner agreed to amend the relevant language. Since then, counsel for both parties have exchanged multiple emails and held meet and confers to discuss language and process for amending the statements. Petitioner has been cooperative with Respondent regarding this issue, yet Respondent still saw it necessary to file the instant motion despite the knowledge that Petitioner intends to amend the relevant filings.

In fact, in the joint pretrial statement [ECF No. 121], it was stipulated that Petitioner's work contract was initially for one year to conclude in November 2024. This stipulated fact makes clear that Petitioner was correcting his statement and representation to the Court regarding his employment. To be clear, the revised statement regarding Petitioner's employment was not the first notice Respondent had that Petitioner had agreed and intended to modify the subject court filings. Petitioner actively agreed to amend these statements to the Court beforehand. On October 4, 2024, Petitioner informed Respondent that they would amend the pleadings.

In addition, the parties were discussing the process for amending the statements. During a meet and confer on October 7, 2024, Petitioner addressed the process for amending the misstatements made in prior filings. Petitioner suggested a stipulation would be needed to amend since their time to automatically amend had passed. Respondent responded that filing a "Notice" would be sufficient. Petitioner took that to mean that he would file a Notice to the Court with the various filings that would need to be amended. In a show of good faith, Petitioner proposed language to Respondent on October 9, 2024 (See Exhibit D), after having already read the language

---

[1] Respondent's discovery demands were exchanged later than Petitioners due to initial disagreement on discovery deadlines and the entry of new counsel for Respondent. Petitioner's counsel therefore had further condensed time to review Petitioner's discovery documents.

DeLacey, Riebel & Shindell, LLP
180 Montgomery Street, Suite 1900, San Francisco, CA 94104
Phone 415•528•7000 Fax 415•528•7001

to Respondent during a meet and confer that same day.[2] That same day, Respondent sent proposed edits to the amended language for the pleadings. *Id.* Petitioner responded on October 10, 2024, stating that the proposed edits would be reviewed and discussed. *Id.* That same day, Respondent proposed a "solution" to the matter which entailed conceding to "a rebuttable presumption that petitioners employment in Armenia is temporary and does not support a habitual residence finding as to Armenia." *Id.* Petitioner rejected this "solution." *Id.*

While continuing discussions about the amended language, after having already agreed to the simple change in the joint pretrial statement, Respondent, for the first time, on October 11, 2024, demanded that Petitioner file a motion for leave to amend and would not stipulate to any amendments even though they clearly do not oppose it and requested it in the first place (See Exhibit D). This reversal of position was unanticipated although consistent with Respondent's conduct in this litigation thus far. On October 13, 2024, Respondent's counsel requested confirmation that Petitioner would be filing a motion to amend the pleadings and filings. On the same day, Petitioner's counsel confirmed that, as the Notice was no longer deemed acceptable and due to Respondent's refusal to stipulate, a motion for leave to amend the pleadings would be forthcoming. Petitioner also requested clarification as to whether Respondent would oppose the motion to amend. Respondent replied that they would only agree not to oppose the motion if Petitioner adopted Respondent's proposed language edits and if they were given the opportunity to review the motion beforehand. On October 14, 2024, Petitioner informed Respondent that

---

[2] Petitioner made best efforts to discuss these issues in a timely manner. However, considering the time difference between counsel for the parties and especially between both Petitioner's counsel's offices and Petitioner in Armenia, it was not always possible to immediately address these issues. Moreover, there were numerous issues being addressed simultaneously around this time with the Court deadlines and other issues being raised by Respondent, including those not addressed in this motion, that required attention. Petitioner attempted to resolve all of these issues as expeditiously as possible.

DeLACEY, RUEBEL & SHINDELL, LLP
180 Montgomery Street, Suite 1900, San Francisco, CA 94104
Phone 415•528•7000 Fax 415•528•7001

simplified language would be sent for their review. Subsequently, on October 15, 2024, Petitioner provided Respondent with the simplified amended language for their review. As of this filing, Petitioner is actively preparing those filings alongside his opposition to the instant motion.

As to the assertions in Petitioner's Proposed Findings of Fact and Conclusions of Law referenced by Respondent in Footnote 4, the assertions were altered, as mentioned above, after discussions with Respondent.  As to proof of those assertions, that is the point of the evidentiary hearing, which is where these issues properly belong. If Respondent believes that Petitioner is misleading the Court as to the expected length of his assignment, then she can question him on this issue on cross examination and present any evidence she may have to refute that assertion. However, Petitioner has steadfastly stated that he understood his position to be one of longer-term duration to last several years and has stated that the parties discussed the length of their stay in Armenia.

Respondent stating that she does not agree with Petitioner's assertions is not a basis for the Court to find that Petitioner has violated Rule 11. Petitioner previously stated in his petition and a few subsequent court filings that there was a fixed term contract for five years. That was not accurate. However, Petitioner's general point about the parties' intentions and expectations regarding an anticipated extended move to Armenia is now described in Petitioner's accompanying Declaration. (See Petitioner's Declaration at Pg. 1-3).

   B. The substance of the allegation is materially correct even if the wording was not technically accurate.

Petitioner did misstate his employment situation, but not to mislead the Court or take any action to "harass, cause unnecessary delay, or needlessly increase the cost of litigation."  As soon as this issue arose, it was, in good faith, addressed.

However, besides acknowledging the specific error in alleging that there was a fixed term contract for five years in Armenia, rather than one year, the intention of Petitioner in his allegations

DeLacey, Ruebel & Shindell, LLP
180 Montgomery Street, Suite 1900, San Francisco, CA 94104
PHONE 415•523•7000 FAX 415•523•7001

remain the same. Respondent's position that the parties' stay in Armenia was meant to conclude in November 2024, full stop, is meritless and is not supported by the evidence.

Petitioner expects to be in Armenia for long term as the WHO has stated in his position description that his assignment is considered longer term. (See Petitioner's Proposed Trial Exhibit 12 at Pg. 24). Petitioner's basis for this five-year expectation will be his own testimony, his prior work history within the WHO, and conversations with his employer and with Respondent.

Moreover, the parties signed an automatic renewed lease one-year lease agreement that initially expires in February 2025.3 (See Petitioner's Proposed Trial Exhibit 6). The family obtained residence/diplomatic cards from Armenia that expire on July 8, 2026 (See Petitioner's Proposed Trial Exhibit 1, 3, 534). The Respondent had an Armenian phone number. (See Petitioner's Proposed Trial Exhibit 30 at Pg. 17). The Children were enrolled in school in Armenia. (See Petitioner's Proposed Trial Exhibit 18, 20, 44, and 45). None of these facts are consistent with an intention to remain in Armenia until November 2024.

Perhaps most tellingly, the parties shipped their belongings from Jamaica to Armenia. (See Petitioner's Proposed Trial Exhibit 42). Respondent, in refusing to stipulate to this fact in the joint pretrial statement, highlighted the fact that the belongings had not arrived by the time Respondent and the Children left Armenia in April 2024. [ECF No. 121 at 21]. The shipment from Jamaica to Armenia was dated January 2, 2024. (See Petitioner's Proposed Trial Exhibit 42). The estimated date of delivery was April 18, 2024. *Id.* The belongings, including the children's toys, are now in Armenia. (See Petitioner's Declaration at Pg. 3). As stated by Petitioner in his declaration, the parties "would not have shipped [their] belongings to Armenia, signed a lease until February 2025,

DeLacey, Riebel & Shindell, LLP
180 Montgomery Street, Suite 1900, San Francisco, CA 94104
phone 415•523•7000 fax 415•523•7001

---

[3] Petitioner admits that the lease agreement was not for five years as initially stated. Although this was not raised previously by Respondent's counsel, clearly the lease agreement was initially for one year from February 2024 to February 2025.

received Armenian resident cards until 2026, or enrolled the Children in the middle of the school year and have them start a new school term for only a couple of months, disrupting their entire lives, if this was meant to be a move for less than a year." *Id.*

There are sufficient facts to allege that the parties planned to be in Armenia for the foreseeable future and not simply until November 2024, weighs towards it being the children's habitual residence. Further, Petitioner had no prospects for future employment anywhere else in the immediate future. (See Petitioner's Declaration at Pg. 2). Unless Respondent is alleging that Petitioner was simply going to lose his job in November (not based on recent allegations but even when they initially moved in December 2023) and be unemployed, then clearly the expectation was that he would remain in this position until another opportunity or offer came around.

Petitioner, to be clear, has represented and continues to represent that their stay in Armenia was going to last several years. Petitioner recently asked for a continuance of the upcoming evidentiary hearing [ECF No. 116], and Petitioner's counsel argued in sum and substance that if Respondent believes in earnest that Petitioner's employment with the WHO will be terminated in November 2024, then continuing the trial would provide an answer to that question. If Petitioner did lose his job and had to leave Armenia that would have substantial impact on this case. *See e.g., Von Kennel Gaudin v. Remis*, 282 F.3d 1178, 1183 (9th Cir. 2002) (petitioner moving to the United States renders case moot).

Respondent's assertion that termination of Petitioner's employment in Armenia would have mooted this case fundamentally begs the question of why she would not consent to continue the evidentiary hearing if they believed that would come to pass in approximately one month.

    C.  <u>There is No Basis for a Motion to Dismiss</u>

While Respondent takes the position that they earnestly attempted to resolve this issue with Petitioner, the positions they have taken in their emails and during the meet and confers have been

DeLacey, Riebel & Shindell, LLP
180 Montgomery Street, Suite 1900, San Francisco, CA 94104
Phone 415•528•7000 Fax 415•528•7001

extreme and unwarranted which is the reason this issue remains unresolved. Respondent has essentially taken the position that Petitioner must cede the issue of habitual residence and therefore his prima facie case under penalty of sanctions. Respondent's position that Petitioner's misstatement regarding his employment prevented them from filing a successful motion to dismiss is unsupported by the law or facts and they were never prejudiced by Petitioner's misstatement in that regard.

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In the context of a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

 To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." [ ]*Twombly*, 550 U.S. at 570. A plausible claim includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *U.S. v. Corinthian Colls*., 655 F.3d 984, 991 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Only if the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim is dismissal appropriate. *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010).

Filing of a motion to dismiss in this case would have been frivolous even if Petitioner had pled his amended claim regarding his employment situation. Habitual residence cases are highly fact determinative findings and one fact, no matter how relevant, is not determinative of the issue.

In fact, the Supreme Court's holding in *Monasky* case detailed how one factor should not be determinative of habitual residence, in particular whether there was an actual agreement

between the parties as to a move. *Monasky*, 589 U.S. at 68. The Supreme Court stated very clearly that courts must consider a totality of the circumstances when analyzing habitual residence. *Id.*

Here, Respondent seems to suggest that if the parties had only intended to stay in Armenia for one year, then it could not be the Children's habitual residence. First, simply because the contract is initially for one year does not mean that their stay was limited to one year, a material issue of fact which would need to be determined at an evidentiary hearing.

Second, even if it were for one year (Petitioner refutes this), there is simply no basis to extrapolate that one fact as dispositive of the issue of habitual residence.  In the recent *Goldstein v. Simon*, No. 24-12098, 2024 WL 4284921, at *3 (11th Cir. Sept. 25, 2024), the Eleventh Circuit affirmed the district court's finding that children's habitual residence changed from Israel to Florida in approximately four months when the parents agreed to stay in Florida for six months to a year.

As Petitioner has stated in his Proposed Findings of Fact and Conclusions of Law, the Children had no other home in the world in April 2024, when habitual residence must be determined. *Monasky*, 140 S. Ct. at 726 ("The place where a child is at home, at the time of removal or retention, ranks as the child's habitual residence.") Respondent's position amounts to the Children having no home in April 2024.

Habitual residence is not determined in November 2024 or anytime in the future. The operative date is therefore April 2024 and not November 2024 or beyond. Even if the parties had not intended to remain in Armenia forever, the fact that they lived in Armenia in April 2024 is in and of itself evidence that Armenia is the Children's habitual residence. *See. e.g. Adkins v. Adkins*, No. 19-CV-05535-HSG, 2019 WL 4933571, at *6 (N.D. Cal. Oct. 7, 2019) citing *Mozes v. Mozes*, 239 F.3d 1067, 1074 (9th Cir. 2001) ("[the habitual residence] does not necessarily need to be where the parties intended to live forever or 'leave [their] bones.'").

DeLacey, Riebel & Shindell, LLP
180 Montgomery Street, Suite 1900, San Francisco, CA 94104
PHONE 415•528•7000 FAX 415•528•7001

As of April 2024, the Children were going to school in Armenia and their lives were centered there.  (See Petitioner's Proposed Trial Exhibit 18, 20, 44, and 85). The parties had no expectation or plan as to where they would go after their stay in Armenia, whether that was going to be in November 2024 or in 2028.  Respondent has offered no possibility of where the family was going to go after November 2024 nor has she asserted that there was an actual plan to leave Armenia. Even assuming arguendo that the parties wanted to leave Armenia, that contingent desire does not preclude Armenia from being the Children's habitual residence. *See Koch v. Koch*, 450 F.3d 703, 715 (7th Cir. 2006); (the parents' "shared intent to someday return to a prior place of residence does not answer the primary question of whether that residence was effectively abandoned and a new residence established by the shared actions and intent of the parents coupled with the passage of time."). Note that here Respondent does not allege that the parties had a set intention to move back to a prior habitual residence, or anywhere at all for the matter.

Armenia was not transitory in the sense of the Hague case law whereby a move is transitory before the parties return to a home country. *See. e.g. Pesin v. Rodriguez*, 77 F.Supp.2d 1277, 1285 (S.D. Fla. 1999) (settled purpose of family trip was a vacation of finite duration); *Brennan v. Cibault*, 227 A.D.2d 965, 965, 643 N.Y.S.2d 780 (N.Y. App. Div. 1996) (mother agreed that child should remain with father in New York for six months, but expected her to return to France); *Watts v. Watts*, 935 F.3d 1138, 1144–45 (10th Cir. 2019) (no change in habitual residence where "family intended to remain in Australia for 'a highly specific purpose which by its nature had a limited duration'").

As applicable here, if the family had always lived in the U.S. and had moved to Armenia for one year with a set plan to move back, then certainly that could be a finding that the move was temporary and transitory until they returned to their home in the U.S. However, when a family simply moves from one country to another with no expectation of returning to a prior home, then

the new country must, for all intents and purposes, be considered the Children's habitual residence, almost immediately, until the next move occurs. *Grano v. Martin*, 443 F. Supp. 3d 510, 537 (S.D.N.Y. 2020), aff'd, 821 F. App'x 26 (2d Cir. 2020). (finding that the child's habitual residence was where the family intended to relocate indefinitely). To that point, "[w]hen the child moves to a new country accompanied by both parents, who take steps to set up a regular household together, the period need not be long [to establish a new habitual residence]." *Shah v. Federbush*, No. 19-CV-4485 (VEC), 2019 WL 5060496, at *9 (S.D.N.Y. Oct. 9, 2019) (quoting *Mozes*, 239 F.3d at 1078); *Norinder v. Fuentes*, 657 F.3d 526, 534 (7th Cir. 2011).

Here, that would be Armenia. According to Respondent's legal theory, each move that this family made was transitory until the next work assignment, resulting in the Children NEVER having a habitual residence. Taken further, each parent would therefore be free to abduct the Children to wherever they so desired. By her own logic, Petitioner would have been well within his rights to abduct the Children from Armenia to anywhere in the world at any point since their arrival as they had no habitual residence. This is a legally untenable argument which subverts the purpose of the Hague Convention.

As a result, Respondent was in no way prejudiced by Petitioner's misstatement about his work contract. This issue was, at most, relevant to have been brought up during cross examination. That fact surrounding his contract would have inevitably been brought to the Court's attention and would be a relevant consideration in this Court's determination of a fact intensive question but in no way would it be the only relevant fact.

As to Petitioner's job search, he is essentially always looking for jobs and opportunities within the WHO. (See Petitioner's Declaration at Pg. 2). He did so before and after his move to Armenia. *Id.* As he stated, this process can take several years so the fact that he was looking for jobs while in Armenia is not indicative of his expectation or desire to stay in Armenia or leave.

Moreover, as Respondent did not specifically ask for his job applications in any discovery demand even though Respondent had such evidence at her disposal, as soon as they did seek it informally on October 9, 2024, after discovery was turned over, Petitioner has complied and continues to comply. (See Exhibit E). Petitioner produced his job applications and a summary of his applications within the WHO to Respondent a few hours later that same day. (See Exhibit F). Petitioner also advised as to no objection to Respondent adding these applications to their exhibit list. *Id.*

  D. <u>Sanctions are Not Warranted</u>

  In *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990), the Supreme Court stated that "the central purpose of Rule 11 is to deter baseless filings in District Court and thus, consistent with the Rule Enabling Act's grant of authority, streamline the administration and procedure of the federal courts." Thus, sanctions are "reserve[d] for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Engineers Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988).

  Petitioner's filing was not baseless, legally unreasonable or brought for an improper purpose. The family moved to Armenia and set up a home there. Respondent removed the subject children from Armenia without Petitioner's consent. This is the precise situation the Hague Convention covers. Respondent asserts that, had Petitioner plead his employment situation in Armenia with greater accuracy, then he could not sustain an action as a matter of law because Armenia could not have been the children's habitual residence. Respondent's position is legally incorrect, and Petitioner makes out a viable claim that Armenia was the children's habitual residence as of the date they were removed to the United States by virtue of the fact that the children lived in Armenia prior to their wrongful removal.

  Rule 11 provides two independent bases for the imposition of sanctions: one if a pleading is frivolous and another if it has been filed for an improper purpose. *See Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830–32 (9th Cir. 1986). The instant Petition was neither frivolous nor filed

DeLACEY, RIEBEL & SHINDELL, LLP
180 Montgomery Street, Suite 1900, San Francisco, CA 94104
Phone 415•528•7000 fax 415•528•7001

for improper purpose. It was filed as Petitioner's proper legal recourse to remedy a clear cut instance of international child abduction.

When a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel*, Inc., 286 F.3d 1118, 1127 (9th Cir.2002) (internal quotations and citation omitted). The Ninth Circuit uses the word "frivolous" as shorthand for this test "to denote a filing that is both baseless and made without a reasonable and competent inquiry." *Moore v. Keegan Mgmt. Co (In re Keegan Mgmt. Co., Sec. Litig.*), 78 F.3d 431, 434 (9th Cir. 1996). The frivolousness clause of Rule 11 requires that "to the best of the signer's knowledge, information, and belief formed after reasonable inquiry [the pleading, motion, or other paper] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed.R.Civ.P. 11.[4]

Further, "Rule 11 permits sanctions only where the pleading as a whole is frivolous." *Community Elec. Serv. of Los Angeles, Inc. v. National Elec. Contractors Ass'n, Inc*., 869 F.2d 1235, 1242–43 (9th Cir.), cert. denied, 110 S.Ct. 236 (1989). "A complaint is factually frivolous if a competent attorney, after reasonable inquiry, could not form a reasonable belief that the complaint was well founded in fact." *Greenberg v. Sala*, 822 F.2d 882, 887 (9th Cir.1987). "We have imposed Rule 11 sanctions where some error or admission by a litigant undermined his entire case at a stroke." *Id.*

The Ninth Circuit has declined to apply Rule 11 sanctions on grounds of factual issues that have yet to be decided. For example, in *Does 1-60 v. Republic Health Corp*., 669 F. Supp. 1511,

---

[4]  Rule 11 also applies to defenses raised and Respondent has raised the defenses that Petitioner did not have custody rights under Armenian law and was not exercising his custody rights. [ECF No. 57 at 15]. The idea that as the Children's father Petitioner was devoid of custody rights under Armenian law was a frivolous position to take.  Similarly, that Petitioner was not exercising those rights in April 2024 when he was living with the Children is also a frivolous position.  Both of these arguments are meritless on the law and facts on their face and Respondent's counsel has since represented that they will not pursue those defenses, but they have not amended their Answer to reflect their representations.

DeLacey, Ruebel & Shindell, LLP
180 Montgomery Street, Suite 1900, San Francisco, CA 94104
Phone 415•528•7000 fax 415•528•7001

1519 (D. Nev. 1987), the plaintiffs sought Rule 11 sanctions on grounds that the defendants carried on an advertising campaign in Nevada and the alleged fact that one of the defendants was operating a hospital unit in Nevada. Though the plaintiffs submitted convincing evidence of the defendants' connections to Nevada, the court found that there still existed a question of fact regarding whether the defendants can be said to have carried on advertising or conducted business in Nevada. *Id.* at 1519. The court held that sanctions could not be levied on against the defendants on the basis of such factual issues, for "[t]he issue is close enough that sanctions should not be levied against defendants for their contesting it." *Id.*

The second prong of the rule tests improper purpose, but where a complaint is in question, "a non-frivolous complaint cannot be said to be filed for an improper purpose." *Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir.1987) (per curiam). Once frivolousness is found, the court may inquire into improper purpose. *Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156, 1162 (9th Cir.1988) However, in the context of a complaint, pleadings must first be determined to be frivolous before they are determined to have been filed for an improper purpose. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 832 (9th Cir.1986). *See Westlake N. Prop. Owners Ass'n v. City of Thousand Oaks*, 915 F.2d 1301, 1307 (9th Cir. 1990) (since petition was not frivolous, court did not need to get into the analysis of whether it was maintained for an improper purpose.)

In the instant circumstances, because the Petition was not frivolous, the Court need not reach the improper purpose test. However, it should be noted that the Hague petition was not filed for an improper purpose. On the contrary, it was filed for the purpose contemplated by the Hague Convention – to obtain an order returning Petitioner's abducted children to their country of habitual residence.

Respondent argues that if Petitioner had accurately stated that his WHO work contract was for one year rather than five years, the Petition would have been moot or unsustainable. However, sanctions are "reserve[d] [] for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Engineers Pension Tr. v. A-C Co*., 859 F.2d 1336, 1344 (9th Cir. 1988) ("Rule 11 must not be

DeLacey, Riebel & Shindell, LLP
180 Montgomery Street, Suite 1900, San Francisco, CA 94104
Phone 415•526•7000 fax 415•526•7001

construed so as to conflict with the primary duty of an attorney to represent his or her client zealously [and] [f]orceful representation often requires that an attorney attempt to read a case or an agreement in an innovative though sensible way."). Notwithstanding the evidence to suggest that the parties planned to remain in Armenia for more than a year, Petitioner's one year contract as an isolated fact is not dispositive of habitual residence which is a fact sensitive rather than a categorical inquiry. *See Monasky*, 589 U.S. at 77.

Respondent's motion for Rule 11 sanctions is also procedurally defective. Rule 11(c)(2) provides in part that a motion for sanctions "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." This is referred to as the "safe harbor" provision of Rule 11. See Fed. R. Civ. P. 11; Adv. Comm. Notes, 1992 Amend. This provision requires that a motion for sanctions be served on the opposing party 21 days before it is filed in court. *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 789 (9th Cir. 2001). Respondent has not complied with the notice provision before filing the instant motion. Moreover, Petitioner intends to file a motion to amend the petition within the 21 day safe harbor period. *See Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am., LLC*, 339 F.3d 1146, 1150 (9th Cir. 2003) ("The safe harbor provision gives an attorney the opportunity to withdraw or correct a challenged filing by requiring a party filing a Rule 11 motion to serve the motion 21 days before filing the motion.").

As discussed below, the misstatements will be corrected and therefore no sanctions should be awarded as it will be corrected well within the 21 day timeframe.

E.   Spoliation

Petitioner did not have reasonable notice that he must preserve his WhatsApp messages until Respondent's counsel sent a letter regarding the preservation of these messages on September 12, 2024. Even if Petitioner should have reasonably known to preserve that information, at the very earliest it was when Respondent filed her opposition to the Motion for Access on September 11, 2024 [ECF No. 85], which, for the first time, made specific allegations against Petitioner

DeLacey, Riebel & Shindell, LLP
180 Montgomery Street, Suite 1900, San Francisco, CA 94104
Phone 415•528•7000 / Fax 415•528•7001

regarding abuse outside of what allegedly occurred in April 2024, rather than the general allegations contained in the Answer. [ECF No. 57]. Until then, Petitioner was under the impression that Respondent's allegations were focused on her allegations concerning the events surrounding April 2024. Petitioner addresses the deletion of messages in his accompanying Declaration.

If Petitioner was making a concerted effort to delete all of the messages which reflect poorly upon him, he clearly did not succeed. Respondent does not represent what the content of those deleted messages were, with the exception of having exchanged about four messages that were previously deleted. Why she is in possession of those messages and not others remains unexplained. She may have preserved some messages because they reflected poorly on Petitioner while she did not preserve others that were more innocuous.

Sanctions are available under Rule 37(e) when "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." If the moving party proves the necessary elements, then:

> Two categories of sanctions exist. First, where the district court finds that the loss of information has prejudiced the moving party, the district court may order "measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Second, where the district court finds that the offending party "acted with the intent to deprive another party of the information's use in the litigation," the district court may require an adverse evidentiary presumption, dismiss the case, or enter default judgment. Fed. R. Civ. P. 37(e)(2).

*Newberry v. Cnty. of San Bernardino*, 750 F. App'x 534, 537 (9th Cir. 2018).

Respondent's "compromise" offered during meet and confers and requested relief herein is unwarranted. Under Ninth Circuit precedent, appropriate sanctions for spoliation of evidence include excluding evidence and giving an adverse inference instruction. *See, e.g., Glover v. BIC Corp.*, 6 F.3d 1318, 1417 (9th Cir. 1993) (adverse inference); *Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp.*, 982 F.2d 363, 369 (9th Cir. 1992) (exclusion of evidence). Even if this

DeLacey, Riebel & Shindell, LLP
180 Montgomery Street, Suite 1900, San Francisco, CA 94104
Phone 415•523•7001 Fax 415•523•7001

Court were to draw a negative inference (Petitioner herein argues that such a negative inference should not be drawn) that Petitioner's deleted messages were of the same nature as the ones that Respondent provided, that still would not be a determinative of the issue of grave risk of harm.

Respondent seemingly seeks to avoid an evidentiary hearing where this case is resolved on its merits.  The issue of ameliorative measures plays a large role in whether a grave risk of harm exists as do many other factors, including to what extent Respondent's allegations are found to be true.  If, for example, the deleted messages were the sole evidence for a finding of grave risk, it would be difficult to imagine that it could constitute a basis for such a finding.

However, even if they do support such a finding, that finding is available to the Court after a full evidentiary hearing where Respondent can confront and question Petitioner about the deleted messages and other evidence.

### F.   Armenian counsel and Privilege

Foreign attorneys are regularly called as experts in Hague Convention cases to testify regarding foreign law. *See, e.g., Radu v. Shon*, 62 F.4th 1165, 1170 (9th Cir. 2023) (respondent calls German-licensed attorney as an expert regarding ameliorative measures); *Saada v. Golan*, 712 F. Supp. 3d at 368 (petitioner calls Italian attorney as expert); *Munoz v. Diaz*, No. 4:22-CV-9, 2023 WL 139732, at *1 (S.D. Ga. Jan. 9, 2023) (Mexican attorneys testify as competing experts on parental legal rights in Mexico)

In Hague cases, which are typically expedited, parties have also utilized their own foreign lawyers as experts in foreign law as it is often onerous for left behind parents to hire or find qualified experts in addition to their own personal counsel. *See Saavedra v. Montoya*, No. 21-CV-5418(EK)(VMS), 2023 WL 2910654, at *11 (E.D.N.Y. Apr. 12, 2023) (petitioner calls his Colombian lawyer as expert regarding Columbian legal system); *Baz v. Patterson*, No. 23 C 5017, 2023 WL 8622056, at *6 (N.D. Ill. Dec. 13, 2023), aff'd, 100 F.4th 854 (7th Cir. 2024) (petitioner's

German lawyer and expert testifies regarding custody rights under German law); *Farr v. Kendrick*, No. CV-19-08127-PCT-DWL, 2019 WL 2568843, at *9 (D. Ariz. June 21, 2019), aff'd, 824 F. App'x 480 (9th Cir. 2020) ("Father's other expert witness was … a Mexican attorney who has represented him in various legal proceedings in Mexico."); *Saada*, 712 F. Supp. 3d at 368) (respondent submits opinions from her Italian lawyers). Petitioner has not found a single case to support Respondent's position that utilization of a party's foreign lawyer in a Hague Convention case waives attorney client privilege. In the undersigned experience, no such waiver of privilege has ever been found in such a scenario. As a general concept, left behind parents (and responding parents for that matter) should not be forced to hire attorneys in the United States to prosecute their Hague Case, an attorney in their own country to litigate custody, and then a third attorney to act as an expert in foreign law.

To that point, none of the cases Respondent cites are Hague Convention cases. *Aspex Eyewear, Inc. v. E'Lite Optik, Inc*., 276 F. Supp. 2d 1084 (D. Nev. 2003) is a patent infringement case where this issue commonly arises and there is an established body of case law. It involves the extent of the waiver of the attorney-client privilege and work-product immunity in the context of reliance on legal advice as a defense to willfulness – not to an expert's knowledge of foreign law.

*Herrick Co. v. Vetta Sports, Inc*., No. 94 CIV. 0905 (RPP), 1998 WL 637468 (S.D.N.Y. Sept. 17, 1998) is also distinguishable. There, defendant Skadden Arps designated an expert witness on the subject of legal ethics that was to opine on whether Skadden formed an attorney-client relationship with the plaintiffs and then withheld documents that expert had previously prepared for them on the general subject matter of his testimony which could have been used to impeach his testimony, claiming attorney-client privilege. The court ordered these documents to be turned over. This is an altogether different issue than the one here, where Petitioner seeks to use his attorney to testify to Armenian law.

DeLacey, Riebel & Shindell, LLP
180 Montgomery Street, Suite 1900, San Francisco, CA 94104
Phone 415•528•7001 Fax 415•528•7001

Another case which is distinguishable is *Union Pac. R.R. Co. v. Loran Maint. of Way, Inc.*, 2006 WL 8459287, at *6 (D. Utah Feb. 1, 2006). In this case, the plaintiff initiated an action seeking indemnification from the defendant for the settlement amount paid in a previous case. The expert witness served as plaintiff's trial counsel and played a significant role in the settlement negotiations of the prior lawsuit, directly influencing the circumstances leading to the current litigation. The attorney was asked to give his expert opinion "regarding the reasonableness of the settlement" of that very litigation. *Id* at *1. The plaintiff in this case put the advice and the thought processes of its attorneys directly at issue. In contrast, an Armenian lawyer's role is purely advisory, based on their knowledge of the law, without being directly tied to the parties involved.

Furthermore, *Multiform Dessicants, Inc. v. Stanhope Prods. Co., Inc*., 930 F. Supp. 45, 47 (W.D.N.Y. 1996) is also not comparable. This is another patent infringement case where the patentee appointed its patent attorney as an expert witness, and this action was reasoned to have waived the attorney-client privilege regarding all communications related to the patent prosecution. Although Ms. Dashyan provided a summary of the Armenian proceedings in her expert report, the central focus of her testimony concerns ameliorative measures in Armenia, and therefore her role as counsel in the Armenian proceedings is not directly at issue here.

Similarly, *In re Witt*, No. ADV. L-09-00061-8-AP, 2010 WL 3219471 (Bankr. E.D.N.C. Aug. 10, 2010), the defendants intended to proffer an attorney as a lead witness, despite her having represented one of the defendants in previous transactions that led to the present action. This case is distinguishable because the substance of the attorney's testimony related to privileged information.

The types of facts to which Ms. Dashyan will testify – like whether orders of protection are available in Armenia, what protections are available for victims of alleged domestic violence and the procedure for obtaining those protections, and whether Armenian courts can order things

like supervised visitation – have no nexus with privileged information. It is impossible to conceive of any privileged information that she could have exchanged with Petitioner that would be relevant to her testimony regarding the Armenian family law's statutory provisions and legal availability of things like orders of protection.

Respondent is on an extreme fishing expedition as they can draw absolutely no connection between the substance of Ms. Dashyan's anticipated testimony and privileged communications. Respondent's statement that privilege was waived because Ms. Dashyan stated (likely undisputed) facts about Armenian legal proceedings also misses the mark. Her statements are based on Armenian legal documents and speak for themselves. Her testimony in that regard is more akin to that of a fact witness than of an expert opinion.

In the cases cited by Respondent, the issue is generally that a party's own lawyer in the case in question is called to testify as an expert, not a foreign lawyer representing the party in a totally distinct case. As such, the cases cited are distinguishable.

Moreover, the expert lawyers in the cases cited were relying on privilege information to formulate their opinions whereas here, Ms. Dashyan is not relying on any privilege communications and is relying on Armenian filings that were exchanged well before discovery officially commenced in this case. (See Petitioner's Proposed Trial Exhibit 24, 25, 26, 63, 64). Those filings made clear that Ms. Dashyan was Petitioner's lawyer in Armenia, a fact no one attempted to hide and which should not be characterized as a surprise to Respondent. The information contained in the Armenian filings are not privileged information and are not strictly pertinent to her opinion.[5]

---

[5] To this extent, if the Court is inclined, over the objection of Petitioner, Ms. Dashyan can simply not rely on any of the Armenian proceedings in her testimony at trial. The Armenian filings and the information contained therein speak for themselves. Her opinion is based on Armenian law

DeLacey, Ruebel & Shindell, LLP
180 Montgomery Street, Suite 1900, San Francisco, CA 94104
Phone 415-638-7000 fax 415-638-7001

As Ms. Dashyan's opinion is based on her experiences and on Armenian law, any privileged communications certainly have no bearing on her opinions.  Respondent contends that "Ms. Dashyan opined on the Armenian Proceedings as part of her expert report on ameliorative measures. See Ex. 87 at ¶¶ 54–57." Ms. Dashyan does not "opine" on the Armenian proceedings. Rather she simply states what happened in those proceedings based on a review of the documents.

Respondent states that she "should be able to question Ms. Dashyan on the scope of his attorney-client relationship, including about how much Petitioner has paid Ms. Dashyan in the Armenian litigation and whether Petitioner has retained Ms. Dashyan for future litigation should the Children be returned to Armenia." [ECF No. 128 at Pg. 15].  "The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, ... as well as an attorney's advice in response to such disclosures." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). Certainly, Respondent is free to ask those questions of Ms. Dashyan at any evidentiary hearing as they do not seek to elicit legal advice or Petitioner's statements in relation to seeking legal advice. The questions posed by Respondent are typical cross examination questions for any expert that have no bearing on privileged information.

 Furthermore, Respondent asserts that Petitioner did not object to producing Ms. Dashyan's documents based on burden, nor did Petitioner produce a privilege log. Respondent's second request for the production of documents sought: "All COMMUNICATIONS between [Petitioner] and each and every witness identified in [his] initial disclosures dated September 5, 2024." [ECF

---

and procedures.  However, she should be permitted to opine on any facts testified to at trial or presented by the attorneys.

Respondent seeks extreme relief that the Armenian litigation and its findings, which clearly cut against Respondents' allegations, cannot even be raised in this case.  Respondent seeks  to prevent a full exploration of the relevant evidence in order to prevent the possibility of any adverse conclusions the Court could draw against her.

No. 128-2]. Ms. Dashyan was indeed included in Petitioner's initial disclosures. [ECF No. 128-7]. Nonetheless, Petitioner's preliminary statement in his responses and objections to Respondent's request for production of documents states the following (*See* Exhibit G):

> Nothing contained herein is intended to be, nor shall in any way be construed as, a waiver of any attorney-client privilege, work-product protection, right to privacy, or any other applicable privilege, immunity, or protection. Any inadvertent inspection and subsequent production of any privileged information shall not constitute a waiver of any of the rights or privileges of Petitioner, and Petitioner reserves the right to demand the return of any such document and all copies thereof. To the extent that any Document Request may be construed as calling for disclosure of documents or information protected by any privilege, immunity, or protection, a continuing objection is hereby interposed.

Paragraph 13 of Petitioner's General Objections states the following:

> Petitioner objects to any Document Request that, by its terms, is (1) unduly burdensome in scope; (2) calls for Respondent to speculate as to the information in which might come within the scope of the Document Request; (3) ***calls for the production of privileged or confidential material and*** (4) purports or attempts to impose obligation beyond those set forth in the Federal Rules of Civil Procedure.

Moreover, Petitioner specifically objected to Respondent's second request seeking all communications between Petitioner and every witness identified in his initial disclosures based on burden, contrary to Respondent's assertions in her motion. Petitioner's response to Respondent's second request stated the following:

> Petitioner incorporates his General Objections, Objections to Definitions, and Objections to Instructions in their entirety into this response. Petitioner specifically objects to this Request on the grounds that it is not limited by any time frame and, as written, could be understood to require the production of documents, recordings, or information regardless of when they were created or whether they are relevant or proportional to the needs of the case. This Request is vague, ambiguous, overbroad, and unduly **burdensome.**

Therefore, Petitioner did raise objections over privilege and that the request was unduly burdensome even though Respondent states otherwise in her motion. [ECF No. 128 at Pg. 15]. After Respondent further raised this issue for the first time on October 5, 2024 (*See* Exhibit D), the parties engaged in meaningful, if fruitless, meet and confers.   Ultimately, Respondent's

DeLacey, Riebel & Shindell, LLP
180 Montgomery Street, Suite 1900, San Francisco, CA 94104
Phone 415•523•7000 fax 415•523•7001

expansive request for all privileged communications concerning the Armenian proceedings between Petitioner and his Armenian attorney, was not acceptable.

## III. CONCLUSION

For the foregoing reasons, it is respectfully requested that Respondent's motion be denied in its entirety.

Dated: October 15, 2024

Respectfully submitted,

*/s/ Kelly J. Shindell DeLacey*
Kelly J. Shindell DeLacey
DeLacey, Riebel, Shindell, LLP
180 Montgomery Street
Suite 1900
San Francisco, CA 94104
415-528-7000
Email: kelly@drsfamilylaw.com

*/s/Richard Min*
Richard Min (*pro hac vice*)
Green Kaminer Min & Rockmore LLP
420 Lexington Avenue, Suite 2821
New York, New York 10170
Telephone:  (212) 681-6400
Fax:  (212) 681-6999
rmin@gkmrlaw.com

*Attorneys for Petitioner*
*Casimiro Jose Canha Cavaco Dia*s