Kelly J. Shindell DeLacey, Esq. (SBN 236829)
Maria Garrett de Liévano, Esq. (SBN 300521)
DELACEY, RIEBEL & SHINDELL, LLP
180 Montgomery Street, Suite 1900
San Francisco, CA 94104
Tel: (415) 528-7000
Fax: (415) 528-7001

Richard Min, Esq. (*pro hac vice*)
Green Kaminer Min & Rockmore LLP
420 Lexington Avenue, Suite 2821
New York, New York 10170
Tel: (212) 681-6400
Fax: (212) 681-6999

Attorneys for Petitioner
CASIMIRO JOSE CANHA CAVACO DIAS

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In the Matter of I.D., N.D., and C.D.: <br><br> CASIMIRO JOSE CANHA CAVACO DIAS, <br><br> Petitioner, <br><br> and <br><br> RULA NABIL KHOURY CAVACO DIAS <br><br> Respondent. | Case No. 3:24-cv-04471-EMC <br><br> **PETITIONER'S DECLARATION IN SUPPORT OF MY OPPOSITION TO RESPONDENT'S MOTION FOR EVIDENTIARY PRESUMPTIONS AND PRODUCTION OF ARMENIAN COUNSEL/EXPERT MATERIALS** |

Petitioner, CASIMIRO JOSE CANHA CAVACO DIAS ("Petitioner") hereby submits a declaration in support of his Opposition to Respondent's Motion for Evidentiary Presumptions and Production of Armenian Counsel/Expert Materials.

**DECLARATION OF CASIMIRO JOSE CANHA CAVACO DIAS**

1. I, Casimiro Jose Canha Cavaco Dias, am over the age of eighteen years and of sound mind to execute my declaration.

2. I am personally familiar with and have first-hand knowledge of all matters hereinafter stated unless stated upon information and belief.

### I.  Petitioner's Length of Employment

3. Through my counsel, I am preparing a motion for leave to amend pleadings and its respective amended filings to submit to the Court. If the Court grants Petitioner's motion for leave to amend, the filings ECF No. 1, ECF No. 52, ECF No. 66, ECF No. 73, and ECF No. 116 will be amended to include the following language:

> "Petitioner received a fixed-term contract for my position in Armenia on November 20th, set to run from November 22, 2023, to November 21, 2024. The World Health Organization (WHO) specifically states in Petitioner's position description that the assignment is "longer term." Petitioner's expectation was that my assignment in Armenia was to last beyond November 2024."

4. My initial statement that my assignment in Armenia was scheduled to last five years was based on my expectation and understanding of my role based on my history at the WHO and discussions I had had with Respondent and my employer that I will testify to at the evidentiary hearing. It was also partly due to the fact that the WHO specifically states in my position description that my fixed-term assignment is "longer term." (See Petitioner's Proposed Trial Exhibit 12 at Page 24).

5. I received a fixed-term contract for my position in Armenia on November 20th, set to run from November 22, 2023, to November 21, 2024, with the possibility of renewal. *Id.*

1

6. Given that I have served with the WHO for 15 years uninterruptedly – often having my previous appointments or renewals follow the conclusion of fixed-term contracts – the expectation was that my assignment in Armenia was to last several years.

7. I have held both fixed-term and temporary appointments with the WHO since 2008. I was assigned to Copenhagen from December 2008 to January 2015. Subsequently, I was in Launda, Angola, from January 2015 to June 2016. I was then assigned to Barbados from June 2016 to December 2018. Subsequently, I was assigned to Jamaica from January 2019 to December 2023.

8. Most recently, I received a fixed-term appointment in Yerevan, Armenia, scheduled to run from November 2023 to November 2024. Due to my history serving for the WHO for 15 years uninterruptedly, I maintained the expectation, and still do to this day, that I would remain in my longer-term position for several years. To that end, Respondent and I discussed staying in Armenia for up to five years and had no plans or agreements for what would come afterwards.

9. Prior to moving to Armenia and since being in Armenia, I have applied to positions within the WHO. Per my understanding, the process for applying and receiving new positions can generally take several years. I do not claim that the move to Armenia was intended to be permanent, but I did expect to stay here in Armenia for several years. I acknowledge, and I do not dispute, that there will be a future relocation with my family, if, and when, I receive a new offer in a different country.

10. There was never any agreement or understanding of where my next assignment would be or where my family would move to in the future.

11. Furthermore, I have not received any job offer in another country, notice of a transfer to another country, or any indication that my position in Armenia has been terminated.

In fact, based on my understanding of conversations with my employer, my contract is currently in the process of being renewed.

12. To this day, I continue to serve in my WHO position, and I have not received any notice of termination, which must be given to fixed-term staff members at least three months before their termination date. (See Petitioner's Proposed Trial Exhibit 103 at Page 75).

13. Respondent asserts in her Motion that my employment at the WHO is the "crux of [my] "habitual residence" claim." [ECF No. 128]. There is objective evidence to support my claim that we planned to live in Armenia for more than a year pursuant to my employment. We had a lease in Armenia until February 2025, which renews automatically thereafter. Our family had international organization ID cards issued by the Ministry of Foreign Affairs of the Republic of Armenia until July 8, 2026. We had all our belongings and personal items shipped from Jamaica to Armenia. (See Petitioner's Proposed Trial Exhibit 42). Despite Respondent's refusal to stipulate to this fact, she admitted that our belongings had arrived in the port of Armenia (See Petitioner's Proposed Trial Exhibit 110). The shipment was dated January 2, 2024. (See Petitioner's Proposed Trial Exhibit 42). The estimated date of delivery was April 18, 2024. Id. Our belongings, including the children's toys, are in Armenia. We would not have shipped our belongings to Armenia, signed a lease until February 2025, received Armenian resident cards until 2026, or enrolled the Children in the middle of the school year and have them start a new school term for only a couple of months, disrupting their entire lives, if this was meant to be a move for less than a year. Therefore, while my initial statement describing the length of my employment at the WHO in Armenia was inaccurate, I still expect that I will be in Armenia for the next few years.

II. **Spoliation of Messages**

14. On October 1, 2024, counsel for Respondent requested that I provide a declaration addressing several questions related to the messages that were deleted during the course of litigation. The following questions were asked:

> "1) The date that Mr. Dias first anticipated litigation of any kind (including in Armenia) relating to Mrs. Dias; 2) The date that Mr. Dias first contacted counsel in Armenia; 3) The date that Mr. Dias first anticipated filing a Hague Petition; 4) The date that Mr. Dias first contacted counsel for the Hague Petition; 5) For each message that Mr. Dias deleted between himself and Respondent: a) the date (or approximate date) the message was deleted, b) the reason why Mr. Dias deleted the message, c) a description of efforts to recover the message, including the status of those efforts, and d) If the message has been recovered, please provide the substance of that message ASAP". (*See* Exhibit C).

15. I here provide the following responses to the questions posed.

16. I first anticipated litigation of any kind relating to Respondent on April 22, 2024.

17. I first contacted my counsel in Armenia on April 22, 2024.

18. I first anticipated filing a Hague Petition on May 15, 2024.

19. I first contacted counsel for the Hague Petition on May 16, 2024.

20. I do not recall when each message was erased. I believe they might have been deleted soon after I sent them.

21. I am not entirely sure why I deleted these messages. However, specifically regarding the messages after April 2024, I was very emotional and frustrated due to the abduction of my children and the lack of contact with them since that time. I did not selectively delete messages to hide any that were abusive or threatening in nature. In fact, I have produced the WhatsApp messages exchanged with Respondent dating back to 2016, which include several that I regret sending. My intention in deleting messages was not to destroy evidence; if that were my goal, I would have deleted many more messages, which I did not do. During that period after the abduction, I was in a highly emotional state, and I acknowledge that some of the messages I

4

deleted since April 2024 were the result of my attempt to provoke a reaction, driven by the pain of being separated from my children.

22. My efforts to recover the messages have included utilizing iCloud backups, WhatsApp backups, WhatsApp Web, and Disk Drill software to recover WhatsApp deleted messages in September 2024. I also attempted using EaseUSmovieSaver to recover WhatsApp deleted messages. In addition, I went to ITPlaza and to TechnoMarket in Yerevan Armenia to obtain technical support for the recovery of WhatsApp deleted messages in September 2024. I purchased UtlData software to recover WhatsApp deleted messages in October 2024. In October 2024, I also reached out to several companies in Armenia that, according to information available online, perform digital forensics. These companies included Digilab, EasyDev Tech, CoDialog, and Direlli. I contacted them via phone and email. I have attached to my declaration proof of my efforts. (*See* Exhibit A).

23. On October 8, 2024, I believed that I was able to retrieve the messages. Upon reviewing the messages, I realized that the deleted messages were not recovered. I attach to this declaration what I retrieved as proof. (*See* Exhibit B). Despite my efforts, I understand that because the messages were not backed up due to insufficient storage on my iPhone, their recovery is not possible.

**VERIFICATION**

I, Casimiro Jose Canha Cavaco Dias, solemnly declare and affirm under the penalty of perjury under the laws of the United States of America that I am the Petitioner in the within action and have read the foregoing declaration and know the contents of the foregoing are true and correct, to the best of my knowledge, except as to those matters alleged upon information and belief.

Executed on October 15, 2024

_____
Casimiro Jose Canha Cavaco Dias