UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASIMIRO JOSE CANHA CAVACO DIAS,<br><br>Plaintiff,<br><br>v.<br><br>RULA NABIL KHOURY CAVACO DIAS,<br><br>Defendant. | Case No.  24-cv-04471-EMC<br><br>**FINAL PRETRIAL CONFERENCE ORDER** |

## I.  TRIAL DATES & LENGTH OF TRIAL

The trial is a bench trial. The trial days are: October 29-31, 2024, and, if necessary, November 4, 2024. Trial days shall begin at 8:30 a.m. and end at 1:30 p.m. Counsel are expected to be present at 8:00 a.m. at least, unless the Court orders otherwise.

Each side shall have seven and a half (7.5) hours to present its case. This includes opening statements, direct and cross-examinations, and closing arguments.

## II.  TRIAL PROCEDURES

A.  Evidence and Objections

The Court imposes the following trial procedures regarding evidence and objections. A party must give the opposing party at least forty-eight (48) hours' notice of witnesses it intends to call, exhibits it intends to use, and/or demonstratives it intends to use. Saturdays and Sundays do not count. Thus, *e.g.*, for a Monday trial day that starts at 8:30 a.m., a party must give the opposing party notice by 8:30 a.m. on Thursday.

If the opposing party has an objection, then it must notify the party by 6:00 p.m. the same day of notice, and the parties shall meet and confer to see if they can resolve their differences. If

they cannot, then they shall file with the Court a joint statement twenty-four (24) hours in advance of the relevant trial day. In short, the Court requires a full day to resolve any objections.

The Court emphasizes that, because this will be a bench trial, it expects objections to be kept to a minimum. As noted at the pretrial conference, the Court intends to apply the Federal Rules of Evidence but will apply the residual hearsay rule under FRE 807 where appropriate.

B. Proposed Findings of Fact

Although each party has already submitted proposed findings of fact and conclusions of law, the Court shall require the parties to file on a rolling basis proposed findings of fact based on the specific evidence that was presented on a given trial day. The parties shall make joint submissions. Citations to the relevant witness testimony and/or exhibit number will be helpful. (The Court understands that a rough transcript of the trial testimony for a given day is typically available that day or shortly thereafter.)[1]

### III.   WITNESSES

The parties are to meet and confer to resolve any issues related to order of witnesses. The Court expects these issues to be resolved without the need for judicial intervention given that this is a bench trial. As noted at the hearing, the Court may take remote witnesses out of order where differences in time zone warrant it.

A. Petitioner's Witnesses

Petitioner may call the following witnesses as part of his case-in-chief:

(1) Petitioner.

(2) Dr. Peter Favaro (expert).

(3) Dr. Ashkhen Dashyan (expert).[2]

(4) Matheus Emmanual Van Tol Guerra (remote).

(5) Pedro Miguel Esteves da Fonseca Corte (remote).

(6) Maria Elisabete Canha Torres Rodrigues (remote).

---

[1] The Court may also order post-trial briefing.

[2] Dr. Dashyan was originally designated as a witness who would testify remotely. At the hearing, Petitioner stated that she would now be appearing live. Respondent did not object.

2

1  B.  Respondent's Witnesses

2  Respondent may call the following witnesses as part of her case-in-chief:

3  (1) Respondent.

4  (2) Michel Khoury.

5  (3) Jane Khoury.

6  (4) Eva Karam (remote).

7  (5) Agnieszka de Witt (remote).

8  (6) Julia Iuliia Geslin (Tenata) (remote).

9  (7) Dr. Laure Petracek (expert).

10  (8) Dr. Tamar Shirinian (remote).

## IV.  PRETRIAL MOTION

Shortly before the final pretrial conference, Respondent filed a motion for sanctions and for production of materials from Petitioner's expert on Armenian law (Dr. Dashyan). *See* Docket No. 128 (motion). The motion raises three issues: (1) whether Petitioner should be sanctioned for including a false allegation in his pleading (related to the length of his job in Armenia); (2) whether Petitioner should be sanctioned for destroying/deleting evidence (specifically, WhatsApp messages with Respondent and/or her family); and (3) whether Petitioner should be compelled to provide communications between him and Dr. Dashyan (in particular, about ameliorative measures or about the Armenian domestic violence proceedings).

A.  False Allegation in Pleading

Respondent notes that Petitioner's pleading has a false allegation – *i.e.*, that his job in Armenia was scheduled to last for five years when, in fact, it was a one-year position. Respondent argues that, because Petitioner still has not corrected this allegation, the Court should impose a rebuttable presumption that his employment in Armenia was temporary and does not support a habitual residence in Armenia. Respondent asserts this sanction is warranted under Federal Rule of Civil Procedure 11 and/or the Court's inherent authority.

Rule 11 sanctions are not warranted because there is no evidence to indicate that Respondent complied with the rule's safe harbor provision. *See* Fed. R. Civ. P. 11(c)(2) ("The

3

1  motion [for sanctions under Rule 11] must be served under Rule 5, but it must not be filed or be

2  presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or

3  appropriately corrected within 21 days after service or within another time the court sets."). At the

4  hearing, Respondent suggested that she could not comply with the safe harbor provision given the

5  expedited nature of the proceedings before the Court. However, she did not provide any authority

6  to support the position that the requirements of Rule 11 may be disregarded.

7  To the extent Respondent relies on the Court's inherent authority, that requires a showing

8  of bad faith. *See Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021) ("When

9  acting under its inherent authority to impose a sanction, as opposed to applying a rule or statute, a

10 district court must find either: (1) a willful violation of a court order; or (2) bad faith.").

11 Respondent's position that Petitioner has acted in bad faith is not unwarranted: Petitioner never

12 should have made the allegation about a five-year job in his original petition, and, given that the

13 issue of habitual residence was clearly contested at the outset, Petitioner's counsel should have

14 promptly obtained the employment contract and evaluated its terms. Nevertheless, the Court

15 declines to make a finding of bad faith because, in the parties' joint pretrial conference statement,

16 Petitioner agreed as an undisputed fact that his employment contract in Armenia was for just one

17 year with the possibility of renewal. See Jt. PTC St. at 3-4. Furthermore, as P points out, even if

18 he had alleged at the outset that he had only a one-year contract term, that would not have been

19 dispositive since the Supreme Court has held that "a child's habitual residence depends on the

20 totality of the circumstances specific to the case." *Monasky v. Taglieri*, 589 U.S. 68, 71 (2020).

21 The Supreme Court has also stated that the term "habitual" "suggest[s] a fact-sensitive inquiry, not

22 a categorical." Id. at 77.

23 To be clear, however, although the Court is not sanctioning Petitioner, that does not mean

24 that the allegation he made in his petition about a five-year job is irrelevant. Rather, Respondent

25 may cross-examine Petitioner about this allegation to challenge his credibility.

26 B.   Spoliation of Evidence

27 Respondent contends that Petitioner has engaged in spoliation of evidence. Although

28 Petitioner admits he first anticipated litigation "of any kind relating to Respondent" as of April

4

2024 (when the alleged domestic violence incident took place that precipitated Respondent fleeing Armenia), Petitioner's Decl. ¶ 16, he deleted/destroyed a number of WhatsApp messages that he sent to Respondent thereafter. He also deleted/destroyed messages to her family. Respondent has provided examples of messages that she was able to screenshot before Petitioner deleted the messages. The messages include ones that are hostile in tone. According to Respondent, Petitioner began to delete messages starting in April 2024, *i.e.*, after he anticipated litigation with Respondent. Respondent also argues that, even if no duty to preserve kicked in until Petitioner initiated this lawsuit (which he did in June 2024),[3] there are more than 200 messages between June and September 2024 that have been deleted. Respondent contends that Petitioner should be sanctioned for the spoliation of evidence – specifically, the Court should impose a rebuttal presumption that deleted materials establish a finding of grave risk to Respondent and the children. Respondent maintains that this sanction is appropriate pursuant to Rule 37(e) and the Court's inherent authority. The provision of Rule 37(e) on which Respondent relies essentially requires a finding of bad faith – *i.e.*, that Petitioner destroyed evidence to deprive Respondent of the ability to use it. *See* Fed. R. Civ. P. 37(e)(2) (providing that, if ESI that "should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced," then a court may, *e.g.*, "presume that the lost information was unfavorable to the party" upon "finding that the party acted with the intent to deprive another party of the information's use in the litigation").

In his opposition to Respondent's motion, Petitioner has provided a declaration in which he admits that he deleted at least some messages, that he may have done soon "soon after I sent them," and that he is "not entirely sure why I deleted [them]." Petitioner's Decl. ¶¶ 20-21. He suggests that he may have done so because he was "very emotional and frustrated due to the abduction of my children and the lack of contact with them" and maintains that he "did not selectively delete messages to hide any that were abusive or threatening in nature. In fact, I have

---

[3] Respondent argues that, at that time, Petitioner's attorneys should have counseled him about the preservation of documents, documents which clearly would have included communications between him and Respondent.

5

1  produced the WhatsApp messages exchanged with Respondent dating back to 2016, which include
2  several that I regret sending." Petitioner's Decl. ¶ 21.  Petitioner also provides information about
3  efforts he made to try to recover the messages.  *See, e.g.*, Petitioner's Decl. ¶ 22.

4  As the Court stated at the hearing, it defers ruling on Respondent's motion.  At trial,
5  Respondent may cross-examine Petitioner about the destruction/deletion of messages, and the
6  Court may assess Petitioner's intent and credibility on that subject matter.  Based on what happens
7  at trial, the Court may or may not find that Petitioner did act in bad faith; if the former, it could
8  impose sanctions under Rule 37(e).

9  C.   Communications Between Petitioner and Dr. Dashyan

10 Respondent argues that Petitioner should be compelled to produce documents from his
11 expert on Armenian law, Dr. Dashyan.  For purposes of the trial, there are two important topics
12 covered by Dr. Dashyan in her expert report: (1) what protection mechanisms are available in
13 domestic violence cases in Armenia (ameliorative measures) and (2) what happened in the
14 Armenian court proceedings related to the domestic violence incident that led to Respondent
15 fleeing Armenia.  According to Respondent, once Petitioner designated Dr. Dashyan his expert on
16 these matters, he waived attorney-client privilege over the same subject matters – which is
17 important because Dr. Dashyan *represented* Petitioner during the domestic violence proceedings
18 in Armenia and *continues* to represent him in those proceedings.  In other words, Respondent is
19 taking the position that any advice that Dr. Dashyan gave to Petitioner as part of the domestic
20 violence proceedings in Armenia should be produced.  Respondent also takes the position that, if
21 Dr. Dashyan gave Petitioner any advice related to ameliorative measures, that should also be
22 produced and be subject to disclosure.

23 The Court does not find waiver with respect to the topic in (2).  The Dashyan expert report
24 does talk about what happened in the Armenian court proceedings (¶¶ 54-57).  However, that is
25 simply a factual recounting.  In this regard, Dr. Dashyan is more like a fact witness rather than a
26 legal expert.  There is no opinion evidence on this point.

27 Topic (1), however, presents a different issue.  Petitioner admits that Dr. Dashyan will not
28 simply identify what legal protections there are for domestic violence victims in Armenia but will

6

1  also opine on the efficacy of those protections.  Here, she is not a mere fact witness, but is offering
2  an opinion.  Because Dr. Dashyan is giving testimony as an expert, Petitioner has an obligation to
3  disclose her opinions as well as what she relied upon or *considered* to arrive at those opinions.
4  *See* Fed. R. Civ. P. 26(a)(2)(B) & 1993 advisory committee notes.  Moreover, if Dr. Dashyan has
5  made statements to Petitioner that are contrary to or conflict with the opinions in her report (*e.g.*,
6  about the efficacy of the legal protections), then Petitioner cannot use the attorney-client privilege
7  as a shield to prevent disclosure of those statements given that he designated Dr. Dashyan as a
8  testifying expert (*i.e.*, a sword) on the same subject matter.  Waiver may be based on subject
9  matter covered by the opinion and may encompass communications which contradict the expert's
10 stated opinion.  *See Herrick Co. v. Vetta Sports*, No. 94 Civ. 0905 (RPP), 1998 U.S. Dist. LEXIS
11 14544, at *7 (S.D.N.Y. Sept. 14, 1998) ("By designating Wolfram as an expert trial witness [on
12 legal ethics], Skadden has opened the door to such discovery, which covers documents other than
13 those directly considered by Wolfram in forming his opinions.  Prior inconsistent opinions by
14 Wolfram on the same subject matter would be highly relevant material."); *id.* at *9 ("Skadden
15 cannot present Wolfram as an expert on legal ethics and then prevent Wolfram's expert testimony
16 from being effectively impeached by claims of privilege.  To do so would be to use Wolfram's
17 status as an expert on matters of legal ethics as both sword and a shield . . . .").

18 Notably, at the hearing, Petitioner essentially conceded that he could not claim privilege
19 over communications he had with Dr. Dashyan about ameliorative measures.  That being the case,
20 the Court ordered the parties to meet and confer so that any communications about that subject
21 matter will be produced to Respondent.  In that regard, the scope of Respondent's document
22 request must be narrowed accordingly.

### V.     EXHIBITS

A.  Federal Rules of Evidence

25 The parties acknowledged that the use of the Federal Rules of Evidence in Hague
26 Convention proceedings such as the instant case have varied among courts to some degree.  *See,*
27 *e.g.*, *Nisbet v. Bridger*, No. 3:23-CV-00850-IM, 2023 U.S. Dist. LEXIS 190589, at *4 (D. Or. Oct.
28 24, 2023) ("Both Parties agreed to substantially relax the rules of evidence, and this Court

7

accepted all exhibits that were submitted or read into evidence."); *Farr v. Kendrick*, No. CV-19-08127-PCT-DWL, 2019 U.S. Dist. LEXIS 104011, at *4-5 (D. Ariz. June 21, 2019) ("[T]he Court did not strictly apply the Federal Rules of Evidence . . . . The law requires courts in ICARA cases to apply a relaxed standard when it comes to questions of authenticity and taking judicial notice of foreign law. Moreover, Rule 1101(d)(3) of the Federal Rules of Evidence provides that the Rules of Evidence 'do not apply' to 'miscellaneous proceedings such as . . . extradition and rendition,' and an ICARA proceeding is – in the Court's view – similar to an extradition proceeding. For these reasons, coupled with Father's status as a *pro se* litigant, the Court concluded the 'most speedy' and 'most expeditious' procedure would be to apply a relaxed admissibility standard during the hearing and then discount the evidentiary value of any dubious evidence during the fact-finding process."), *aff'd* 824 F. App'x 480, 482-83 (9th Cir. 2020); *Avendano v. Smith*, No. Civ 11-0556 JB/CG, 2011 U.S. Dist. LEXIS 88710, at *2 (D.N.M. Aug. 1, 2011) ("The cases the Court has found suggest that the Federal Rules of Evidence apply in a court's consideration of a petition for return of children."); *Jacquety v. Baptista*, 538 F. Supp. 3d 325, 339 n.8 (S.D.N.Y. 2021) ("Courts have held or suggested that the Federal Rules of Evidence generally apply in ICARA cases."). As noted above, at the hearing, the Court indicated that it would apply the Federal Rules of Evidence but that, especially as this is a bench trial, hearsay objections may be assessed against, *inter alia*, the residual hearsay exception – *i.e.*, the Court's primary concern is whether the evidence is reliable in determining admissibility. The parties agreed with this approach.

B.   Specific Exhibits

The Court also discussed with the parties some of the exhibits that were in dispute based on the parties' joint exhibit list.

   1.   Petitioner's Exhibits 58-59

Description[4]: Audio recordings of an unidentified person(s) seeking legal advice before Respondent left Armenia.

---

[4] Descriptions of exhibits are based on the parties' characterization of the documents.

8

1    Ruling: Respondent had initially asserted that production of the recordings was
2    inadvertent. However, at the hearing, Respondent stated that she had reviewed the exhibits and
3    determined that there was no privilege to protect. Thus, any dispute regarding these exhibits is
4    now moot.

5    2.   Respondent's Exhibits 371-76

6    Description: Call recordings with Petitioner, Respondent, Maggie Khoury, and Nabil
7    Khoury, January 2024 (Trs. are Exs. 657, 655, 653, 651, 649, 647).

8    Ruling: Petitioner objects that the recordings are only partial recordings, *i.e.*, they are not
9    complete. The objection is overruled. Respondent affirmed that the call recordings are not
10   "snippets" of longer conversations nor have they been edited. Furthermore, it appears that
11   Petitioner was a part of or present during the conversations, and thus he is in a position to give
12   context to the calls or fill in any gaps.

13   3.   Respondent's Exhibit 377

14   Description: Women's Support Center Domestic Violence Victim Certification, 4/25/2024.

15   Ruling: Initially, Petitioner made a hearsay objection. At the hearing, however, Petitioner
16   indicated that he may withdraw the objection at trial. Thus, the Court reserves ruling. As noted
17   above, if the Court is persuaded the document is reliable, then it will, at the very least, be
18   admissible under the residual hearsay exception.

19   4.   Respondent's Exhibit 379

20   Description: Armenian news article titled "The adviser of the World Health Organization
21   was beaten in Armenia," 4/25/2024.

22   Ruling: Petitioner has made a hearsay objection. The Court reserves ruling but is skeptical
23   that the document is admissible. At the hearing, Respondent suggested that she intended to use
24   the document to show that WHO (Petitioner's employer in Armenia) was aware of the domestic
25   violence incident involving Petitioner. Respondent indicated that there is evidence that WHO has
26   an open investigation into Petitioner, but that does not necessarily demonstrate the agency's
27   knowledge of the article.
28

1     5.    <u>Respondent's Exhibit 395</u>

Description: Domestic violence referral sheet – 4/23/2024.

Ruling: Petitioner's objection states: "subject to translation."  See the analysis below.

6.    <u>Respondent's Exhibits 398, 413, 416-17, 419</u>

Description: Portuguese foreign language documents (unknown content, appears to include a police report for "disappearance of person" or medical appointment receipt or prescription receipt).

Ruling: Petitioner's objection for each states: "subject to translation."  At the hearing, Petitioner asked for a date certain by which Respondent would provide translations for any exhibits she intends to use for trial.  Respondent agreed to provide translations by October 22, 2024.  It is so ordered.

7.    <u>Respondent's Exhibits 661-661A</u>

Description: April 2022 call transcript, M. Khoury and Domestic Violence Center.

Ruling: Petitioner has objected only on the basis that the transcript is incomplete.  The objection is overruled.  There does not appear to be any completeness concern in that the entire recording has been provided, not a snippet, and no edits have been made.  The Court also notes that, at the hearing, Respondent stated she intended to use the call primarily to show that domestic violence was a concern back in 2022.  There may be a hearsay exception applicable.

## VI.    MISCELLANY

The following matters were discussed at the hearing.

- Petitioner gave notice that he will be arriving in California on Saturday, October 19, 2024, for an in-person visit with the children on Sunday, October 20, 2024.  The Court shall not deem this a violation of its access order.  *See* Docket No. 106 (order).
- Petitioner shall immediately clarify for Respondent whether he intends to stay in California after the Sunday visit – *e.g.*, whether he will stay in the state through trial.
- Petitioner need not disclose to Respondent the exact hotel(s) or other residence(s)

where he is staying but shall provide sufficient specifics so that Respondent is aware of his general location while he is in California (*e.g.*, city and street).  This information is Attorneys' Eyes Only.  Given that Petitioner shall be arriving on Saturday, this information shall be disclosed immediately.

- Petitioner shall diligently work to retrieve any child's passport (purportedly in Portugal) even if the passport(s) is expired.  The passport(s) must be surrendered to the Clerk of the Court before the first day of trial.
- Interpreters may appear at trial in person or remotely.
- The Court continues to urge the parties to resolve their dispute through mediation.

**IT IS SO ORDERED**.

Dated: October 18, 2024

_____
EDWARD M. CHEN
United States District Judge

11