# GIBSON DUNN

Thad A. Davis
Partner
T: +1 212.351.3927
M: +1 415.730.5434
tdavis@gibsondunn.com

March 12, 2025

<u>VIA ECF</u>

Honorable Edward M. Chen
United States District Court
Northern District of California
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

Re:    *Dias v. Dias et al.*
       U.S. District Court, Northern District of California 3:24-cv-04471-EMC

Dear Judge Chen:

Respondent Ms. Dias's counsel respectfully submits this letter to the Court to provide critical updates regarding the Parties' domestic violence proceedings in California Superior Court and to seek relief for Petitioner's conduct and his counsel's abdication. Petitioner Mr. Dias and his counsel (a guest in this Court) continue to waste the Court's and Respondent's resources in having to address these issues—which Respondent understood were noncontroversial as of this Court's November 13, 2024 order dismissing Petitioner's case with prejudice. Attempts to meet and confer have been met with prevarication and bluster. This is a grave issue of physical safety for Respondent and her children as a result. A Domestic Violence Temporary Restraining Order ("TRO") has been issued against Petitioner as of March 5, 2025, and he and his counsel are failing to accept service of it.

Per this Court's November 13, 2024 Order, Petitioner's case was dismissed with prejudice and with certain conduct orders and other conditions attached thereto. Dkt. No. 185. Among this Court's requirements on Petitioner was that "all proceedings related to custody and visitation of the minor children shall be adjudicated exclusively before a California State Court." *Id.* at 2. Under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), California superior courts have jurisdiction over child custody determinations only if the children's home state is California. The children moved to California on April 26, 2024 and have satisfied this requirement, which allows Respondent to request custody orders within her dissolution proceeding. *See* Cal. Fam. Code §§ 3400, 3421. Respondent, Ms. Dias, served Mr. Dias with dissolution papers when he was present in the state of California on November 4, 2024.

Despite this context and Petitioner's agreement and assurances through counsel to the Court, Petitioner has now argued before the Superior Court *multiple* times that California has no

# GIBSON DUNN

Honorable Edward M. Chen                                        March 12, 2025
United States District Court                                          Page 2

jurisdiction over him in relation to domestic violence proceedings or custody proceedings (i.e., dissolution of marriage proceedings) and that he was not properly served.  To wit, Mr. Dias has argued he was not properly served with dissolution papers by Respondent even though a process server served him in person and signed a proof of service under oath.  *See* Ex. C.  He also argues that he was not subject to jurisdiction by California.  These are directly violative of this Court's order and in direct contradiction to what Mr. Dias agreed to before this Court.

Petitioner's counsel, Mr. Min[1] and Ms. Azcona (California state court counsel) have similarly failed to take responsibility or acknowledge what their client agreed to:

- **October 24, 2024**.  Before this Court, Petitioner's counsel, Mr. Min, unequivocally stated that "[w]e want to be clear.  Our client is agreeing that custody and litigation can go forward in California."  Ex. A (10/24/24 Hrg. Tr.) at 4:17–20.  When questioned by this Court whether this meant that Petitioner "would be seeking custodial -- or litigating custodial question and rights, custodial rights, in the California courts and not in Armenia or some other forum," Mr. Min responded, "That is right."  *Id.* at 4:21–25.
- **October 24, 2024**.  Respondent's counsel made clear before this Court that an issue of paramount concern was that "[w]e just don't want any challenges to service or challenges to jurisdiction.  And I don't hear counsel saying there will be, but, you know, trust but verify I think at this point."  Ex. A at 15:17–22 (emphasis added).  In response, this Court confirmed that "I will make sure that if there's going to be a dismissal with prejudice of all the things we talked about, taking Armenia off the table, **submitting to the jurisdiction of the California courts, that can all go forward.  And that will include some kind of service agreement**, however you all want to do that."  *Id.* at 17:9–14 (emphasis added).
- **November 13, 2024**.  This Court granted dismissal of the Hague proceedings with prejudice along with various stipulations, including that "[a]ll proceedings related to the custody and visitation of the minor children . . . shall be adjudicated exclusively before a California State Court" and that "Petitioner shall accept service and cooperate as to service of custody, visitation, and domestic violence proceedings."  Dkt. 185 at 2.
- **December 10, 2024**.  Petitioner's new state court attorney, Leslie Robin Azcona, claimed that because she did not "negotiate" the stipulation attached to Petitioner's dismissal before Your Honor with prejudice and was not his "personal surety," she could not direct him to violate or not violate this Court's orders.  Ex. B at 12.
- **December 11, 2024**.  Mr. Min emailed Respondent's counsel that his client would like to hear from Respondent's counsel directly with regard to the requirements of the federal conduct order and the stipulations attached to the dismissal of Petitioner's Hague petition.

---

[1] Ms. Shindell DeLacey and her firm withdrew from the state law action on behalf of Petitioner on December 10, 2024, and the federal action as well.

# GIBSON DUNN

Honorable Edward M. Chen                                                                  March 12, 2025
United States District Court                                                                          Page 3

> *See* Ex. B at 8.  We explained to Mr. Min that because he was Mr. Dias's counsel of record, it would be inappropriate to contact Mr. Dias directly.  *See id.* at 7–8.

- **December 22, 2024**.  Mr. Min stated that "Petitioner accepted service of the DVRO which was what was required.  **Whatever arguments he makes in CA state courts afterwards are not relevant to this matter**."  Ex. B at 1 (emphasis added).

- **February 3, 2025**.  Petitioner argued that he was not properly served the dissolution papers and moved to quash the summons related to the dissolution.  *See* Ex. C.  In the same filing, Petitioner argued that he was not subject to California jurisdiction.  *See id.*

- **February 5, 2025**.  At the state court hearing regarding Respondent's DVRO application, Petitioner's family law attorney (Ms. Azcona) stated that she is "specially appearing" and continued to argue that California does not have jurisdiction over Mr. Dias.  *See* Ex. D (2/5/25 Hrg. Tr.) at 1:9–10, 14:4–12.

- **March 5, 2025**.  The California Superior Court for Alameda County found it has jurisdiction over Petitioner, and issued a Domestic Violence TRO.  *See* Ex. E (3/5/2025 TRO Order).

- **March 5, 2025**.  Respondent's counsel asks Ms. Azcona to accept service for her client, per this Court's Order.  *See* Ex. F at 1–2.

- **March 6, 2025**.  Petitioner's family law attorney (Ms. Azcona) emailed Respondent's counsel that she somehow is not Petitioner's attorney, despite not having withdrawn as such.  *See* Ex. F at 1.  She claimed she "specially appeared" as counsel and thus "cannot withdraw."  *Id.*  She provided no citation for this assertion.  *Id.*

- **March 6, 2025**.  Respondent's counsel attempted to meet confer in writing regarding accepting service for Petitioner, and received no response.  *See* Ex. G at 4–5.

- **March 10, 2025**.  Respondent's counsel reached out to Petitioner's counsel again seeking to meet and confer live, and received no response.  *See* Ex. G at 3.

- **March 11, 2025**.  Respondent's counsel reached out to Petitioner's counsel again seeking a response from Petitioner's counsel regarding availability to meet and confer live, urging that a failure to respond will result in Respondent "seek[ing] relief from the Court tomorrow given the circumstances."  *See* Ex. G at 2–3.

- **March 12, 2025.**  Petitioner's counsel finally responded, "What is the point of the meet and confer?  I do not read the order as requiring acceptance of service with regards to any future orders.  As that is the request you are making, I would find any application to the Court in that regard to be frivolous.  I also have no authority to act otherwise."  Ex. G. at 1–2.

This has cost Respondent and her counsel a great deal of time and expense.  It has necessitated at least 100 hours of billable attorney work (both from her family law counsel, Ms. Jacobson-Kwok and her counsel at Gibson Dunn).  Petitioner's lawyers—whether Mr. Min or Ms. Azcona— continue to play a game of whack-a-mole as to who actually represents Mr. Dias, all the while refusing to accept service on his behalf and refusing to acknowledge that Mr. Dias agreed before this Court that California would have jurisdiction over him.  This is not acceptable behavior for

# GIBSON DUNN

Honorable Edward M. Chen                                                                                     March 12, 2025
United States District Court                                                                                            Page 4

members of the State Bar of California nor permitted guests of the bar for the Northern District, as Mr. Min is admitted *pro hac vice* on this matter.

This Court made clear that it would dismiss with prejudice *only* if California courts took over *all* proceedings related to custody and domestic violence orders. Ex. A at 18: 9–15 ("The Court: I'd like you all to work that up into a stipulated order for me to sign, knowing that I will grant the dismissal with prejudice, but making clear that the return to Armenia, adjudicating custody rights in Armenia are not on the table, and that -- **that the hand-off will go to the California courts with respect to both custody and any conditions, restraining order or those sorts of things**.") (emphasis added).[2]

Following argument and hearing on the domestic violence restraining order held on February 5, 2025, Judge Weathers of the Alameda Superior Court granted Ms. Dias a temporary restraining order against Petitioner. *See* Ex. E. The restraining order halts visitations between Petitioner and the three minor children and grants Ms. Dias protection against her husband until a full hearing, scheduled for May 6, 2025. See *id.* The Superior Court also held that California clearly has jurisdiction over Mr. Dias in relation to the domestic violence restraining order as he was properly served and abused his wife while she was a resident in California. Ex. H (3/4/25 General Order). We asked both Ms. Azcona (Petitioner's state law counsel representing him at the February 5 hearing) and Mr. Min to acknowledge the temporary restraining order and to accept service on their client's behalf. Ex. F at 4–5. Ms. Azcona has disavowed Petitioner as her client entirely and continues to state she only "specially appeared" on his behalf. *Id.* at 1. Mr. Min, still counsel of record for Petitioner, has explicitly refused to meet and confer. *See* Ex. G at 1–2.

## Relief Sought

Given the immediate safety risk from Petitioner, we ask the federal conduct order stay in place temporarily, and we respectfully ask this Court to direct Mr. Min to accept service of the domestic violence temporary restraining order against Mr. Dias as was agreed to by him before this Court on multiple occasions or, if Mr. Dias continues to fail to authorize acceptance of service, Respondent will ask for leave to file a motion for order to show cause regarding contempt of a court order, as Petitioner is in violation of this Court's November 13, 2024 Order.[3]

---

[2] As noted above, because the children's home state is California pursuant to UCCJEA, Respondent is allowed to request custody orders within her dissolution proceeding. *See* Cal. Fam. Code §§ 3400, 3421.

[3] We do not wish to take up the Court's time unnecessarily, but Petitioner has also violated several aspects of the federal conduct order entered before this Court as it relates to visitation and communications with Respondent and the children, further necessitating the immediate resolution of all issues relating to the domestic violence restraining order.

# GIBSON DUNN

Honorable Edward M. Chen                                                                     March 12, 2025
United States District Court                                                                         Page 5

Respondent is required to serve Petitioner with the TRO in order to move to the next stage of proceedings, which will provide her the opportunity to obtain a permanent restraining order, and therefore, permanent protections. *See* Cal. Code Civ. Proc. § 580(b)(4). Mr. Min agreed before this Court that Petitioner's attorneys would effectuate service of pleadings and other papers and that his client would not challenge California jurisdiction. Yet, Mr. Dias has done so multiple times. Further, Petitioner agreed to service of the DVRO in any case. *See* Ex. A at 18:4–8. Mr. Min continues to waste the Court's (where he is a pro hac vice guest) time repeatedly, and not observe his duties in appearing here and local ethical and procedural rules.

Further, given the state court has granted Ms. Dias's restraining order and granted her sole physical and legal custody, she is entitled to be in possession of the children's identification documents, including birth certificates and all passports currently in the district court's possession. *See* Ex. E at 13 (granting sole legal and physical custody to Ms. Dias).

Respectfully Submitted,

GIBSON, DUNN & CRUTCHER LLP

Thad A. Davis
Partner